**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

ROBERT EMERT,

Plaintiff-Appellant,

v.

ANDREA SCHUCK, et al.,

Defendants-Appellees.

**No. 24-5856**

**D.C. No. 3:24-cv-00002-AGS-AHG**

**NOTICE OF COMPLIANCE WITH CIRCUIT COURT ORDER AND RESPONSE TO DISTRICT COURT'S REVOCATION OF IFP STATUS**

Pursuant to this Court's order of October 21, 2024 requiring the filing of an amended notice of appeal following the district court's ruling on pending motions, Appellant Robert Emert hereby submits:

1. Notice that the district court has now ruled on November 12, 2024;

2. Confirmation that an amended notice of appeal has been filed with the district court as required;

3. The attached detailed statement explaining why this appeal should proceed and why IFP status should be maintained ( an IFP request to this court has already been provided), including:

  - Substantial evidence of constitutional violations

  - Clear errors in district court's analysis

  - Strong legal authority supporting claims

  - Demonstration that appeal is not frivolous

- District Court of Southern CA only revoked a valid IFP status after the clerk of the 9th Circuit requested a "referral" from the District Court who had already denied my appeal so of course they are going to try to deny any subsequent review.

4. Evidence that the district court's revocation of IFP status was improper under Hooker v. American Airlines, 302 F.3d 1091 (9th Cir. 2002), as the appeal presents multiple non-frivolous constitutional claims supported by recorded evidence and established precedent.

Appellant respectfully requests this Court review the attached statement and maintain IFP status for this appeal given the serious constitutional violations alleged and substantial supporting evidence presented.

There are related cases of mine in the 9th Circuit Court, the Southern District of California, California Supreme Court, the US Supreme Court and a filed affidavit of criminal conspiracy filed with the California AG regarding these cases. Trying to improperly shut down a pro se litigant with threats of "frivolous and vexatious" will only give my US Supreme Court case more weight and legitimacy.

I only want my fair day in court, which I have been denied for over four years, and why I am here asking for simple justice today and to be heard and to bring forward my evidence in front of a jury.

11/22/24

Respectfully submitted,

Robert Emert, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328

robemert@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 11/22/24, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system and served all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by e serving a true and correct copy of the following document and at the addresses listed below:

1. Notice that the district court has now ruled on November 12, 2024;

2. Confirmation that an amended notice of appeal has been filed with the district court as required;

3. The attached detailed statement explaining why this appeal should proceed and why IFP status should be maintained

austin.uhler@sdcounty.ca.gov ; schulman@msmfamilylaw.com ; jbadillo_law@yahoo.com


 Dated: 11/22/24

Robert Emert

1

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

Robert EMERT,

Plaintiff,

v.

Andrea SCHUCK, et al.,

Defendants.



**FILED**

NOV 2 2 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

**Case No.: 24-cv-0002-AGS-AHG**

**CIRCUIT COURT NO.: 24-5856**

**AMENDED NOTICE OF APPEAL** AND STATEMENT REGARDING IFP STATUS

Notice is hereby given that Robert Emert, plaintiff in the above-named case, hereby appeals to the United States Court of Appeals for the Ninth Circuit from:

1. Order dismissing complaint without leave to amend entered August 21, 2024;
2. Order denying motion for reconsideration and revoking IFP status entered November 12, 2024;
3. All interlocutory orders merging into these final orders.

This amended notice of appeal is filed pursuant to FRAP 4(a)(4)(B)(ii) following the district court's ruling on the motion for reconsideration. Attachment A, filed concurrently with the Ninth Circuit Court of Appeals, contains Plaintiff's detailed response to the district court's denial of reconsideration and revocation of IFP status, including citation to controlling authority demonstrating that IFP status should be maintained.

11/22/24

Respectfully submitted,

Robert Emert, Pro Se 2351 Vista Lago Terrace Escondido, CA 92029, 760-612-9328, robemert@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 11/22/24, I filed the foregoing with the **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA** and served all parties or their counsel of record through email as listed below:

**AMENDED NOTICE OF APPEAL AND STATEMENT REGARDING IFP STATUS**

austin.uhler@sdcounty.ca.gov ; schulman@msmfamilylaw.com ; jbadillo_law@yahoo.com


 Dated: 11/22/24

Robert Emert

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Robert Emert

_____

Appellant(s),

9th Cir. Case No. ___24-5856___


v.


Andrea Schuck, et al.,

_____

Appellee(s).


## STATEMENT THAT APPEAL SHOULD GO FORWARD
(attach additional sheets as necessary)


1.  Date(s) of entry of judgment or order(s) you are challenging in this appeal:

August 21, 2024 (**O**rder dismissing complaint without leave to amend)

November 12, 2024 (**O**rder denying motion for reconsideration and revoking **IFP** status) _____ .


2. What claims did you raise to the court below?

****** **SEE ATTACHED** ****

3. What do you think the court below did wrong?  (You may, but need not, refer to cases and statutes.)

************* SEE ATTACHED *****

4. Why are these errors serious enough that this appeal should go forward?

  ********* SEE ATTACHED *********

5. Additional Information:

  ****** SEE ATTACHED *******

Dated: _11/19/24_____

Robert Emert
_____

**Print Name(s)**

Robert Emert
_____

**Signature(s)**

**Appellant(s) in Pro Se**

# 2. What claims did you raise to the court below?

**1. Constitutional violations regarding prosecutor's breach of plea agreement:**

- Recorded evidence proves coordinated breach of plea deal:

  * Attorney Badillo states **inaudio recording**: "DDA Balerio knows that you resolved the case based on the conversation she and I had with Andrea Schuck.

  * Badillo confirms **in audio recording**: "If she's backpedaling on that, that could be an issue that can be raised" regarding plea withdrawal

  * Ex-wife's, Andrea Schuck, three recorded conversations confirming/negotiating agreement terms that my attorney, Jose Badillo, failed to get in writting.

  * DAI Pena admits: "DA should never have taken this case" and "you would win at trial"

- Illegal coercion to obtain plea:

  * 90-day pretrial detention based on manufactured "threat"

  * No bail despite zero flight risk and strong community ties

  * Withholding of FBI assessment proving no threat existed and withholding the original transcript for 90 days that clearly shows there never was a credible threat to hold me on zero bail for 90 days to coerce this plea deal that DDA Balerio and Andrea Schuck completely welched on.

- Legal authority requiring enforcement:

  * Santobello v. New York, 404 U.S. 257 (1971): prosecutor's promises must be fulfilled

  * United States v. De la Fuente, 8 F.3d 1333 (9th Cir. 1993): prosecutors held to "meticulous standards" in plea agreements

  * Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006): enforcement is constitutional requirement

**2. Prosecutorial misconduct and due process violations:**

- Active concealment of exculpatory evidence:

  * FBI threat assessment report still withheld by DDA Balerio despite FOIA request

  * Full 30-minute FBI call transcript showing alleged "threat" out of context withheld by DDA Balerio for 90 days to coerce this sham of a plea deal that she welched on.

* DDA Balerio's recorded interview with Plaintiff's son that proves he was being tramatized and was begging to simply escape it by living with his father who mostly raised him.

* DAI Pena's exculpatory recorded statements saying the DA should never have taken this case; I would win if it went to trial; my son should be able to make up his mind where he wanted to live since he was over 14 years of age and the judges know this; that Dave Schulman and Matt Cord were simply colluding to put something together against me and pushing the DA to prosecute me although I fully complied with PC 278.7 and everyone knew it and was why DDA Balerio did nothing for OVER A YEAR when everyone knew exactly where I was. The fabricated threat was only manufactured after almost a year so they could hold me and coerce this sham of a plea deal.

- Abuse of pretrial detention process:

  * Used manufactured "threat" that failed statutory requirements

  * **Never charged** with alleged "threat" but used it to justify detention

  * Violated Stack v. Boyle requiring bail based on legitimate flight risk

  * United States v. Salerno prohibiting pretrial detention as punishment

- Legal authority:

  * Brady v. Maryland, 373 U.S. 83 (1963): suppression of favorable evidence violates due process

  * Kyles v. Whitley, 514 U.S. 419 (1995): prosecutors must disclose evidence known to government agents

  * Banks v. Dretke, 540 U.S. 668 (2004): must disclose evidence undermining prosecution's theory


**3. First Amendment retaliation and whistleblower protection:**

- DAI Pena explicitly admitted on recording:

  * Prosecution pushed by family court lawyers

  * Case brought because Plaintiff "pissed them off"

  * Minor's counsel "lined up" with opposing counsel against child's interests

  * Case should never have been prosecuted

- Pattern of escalating retaliation:

  * Prosecution initiated after public corruption complaint

* Coordinated action between prosecutors and family court

* Use of pretrial detention to silence criticism

* Systematic denial of hearings to prevent evidence presentation

- Legal authority:

  * Hartman v. Moore, 547 U.S. 250 (2006): retaliatory prosecution unconstitutional

  * Nieves v. Bartlett, 139 S. Ct. 1715 (2019): retaliatory prosecution actionable under §1983

  * White v. Lee, 227 F.3d 1214 (9th Cir. 2000): retaliation for protected speech violates clearly established rights


**4. Systematic denial of court access and due process:**

- Four years without evidentiary hearing despite:

  * Recorded evidence proving plea agreement

  * Documented prosecutorial misconduct

  * Pattern of constitutional violations

  * Clear proof of fraud upon court

- ADA violations:

  * Denied remote access after documented heart attack

  * Ignored doctor's recommendations

  * Railroaded through proceedings during medical crisis

  * Default judgments entered during incapacity

- Legal authority:

  * Bounds v. Smith, 430 U.S. 817 (1977): fundamental right of access to courts

  * Armstrong v. Manzo, 380 U.S. 545 (1965): due process requires meaningful hearing

  * Tennessee v. Lane, 541 U.S. 509 (2004): ADA applies to court proceedings

  * Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001): failure to accommodate violates ADA


**5. Fraud upon court through coordinated misconduct:**

- Commissioner Ratekin's improper actions:

  * Denied valid peremptory challenge despite clear conflict

  * Supervising judge's wife worked with/friends with ex-wife

  * Pushed "facility" narrative with zero evidence

  * Ignored all contrary professional opinions

- Systematic cover-up:

  * Judge Alksne ignored Ratekin's misconduct

  * Judge Robinson used procedural barriers to block review

  * Courts protected coordinated misconduct

  * Pattern of institutional bias

- Legal authority:

  * Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944): fraud on court demands relief

  * Dixon v. Comm'r, 316 F.3d 1041 (9th Cir. 2003): intentional failure to consider evidence is fraud

  * Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128 (9th Cir. 1995): coordinated misconduct constitutes fraud


**CONCLUSION:** The evidence presented directly refutes the district court's three primary bases for dismissal:

1. Regarding Balerio's constitutional violations: The recorded evidence, particularly DAI Pena's admissions and Attorney Badillo's confirmations, conclusively demonstrates DDA Balerio's direct role in:
- Making and breaching constitutionally protected plea promises
- Withholding exculpatory evidence (FBI assessment, full transcript, interview with son)
- Engaging in retaliatory prosecution (per DAI Pena: "pissed them off")
2. Regarding color of state law: The evidence proves coordination between private actors and state officials through:
- Recorded statements from DAI Pena confirming family court lawyers pushed prosecution
- Documentation of ex-wife and attorney working with court officers
- Pattern of coordinated action in breach of plea agreement
- Joint effort to suppress evidence and deny hearings

3. Regarding §1983 relief: The Supreme Court in Santobello v. New York explicitly requires enforcement of prosecutor's plea promises. This is precisely the type of constitutional violation §1983 was designed to remedy. The district court's claim that §1983 cannot provide relief directly contradicts this binding precedent.

The prosecution's Brady violations extend far beyond mere oversight, revealing a systematic pattern of evidence suppression designed to coerce a plea and prevent exposure of misconduct. Three critical pieces of exculpatory evidence remain concealed:

First, the FBI threat assessment concluding no credible threat existed - a report DDA Balerio still withholds despite FOIA requests and its clear exculpatory value regarding the manufactured basis for pretrial detention.

Second, DDA Balerio's recorded interview with Plaintiff's son - evidence directly relevant to the PC 278.7 defense that would have undermined the prosecution's entire theory.

Third, DAI Pena's recorded statements admitting the impropriety of the prosecution - evidence so damaging to the state's case that even its existence was concealed from discovery.

This pattern of concealment transformed Brady violations from mere prosecutorial error into an unconscionable scheme to prevent Plaintiff from presenting his defense. The Supreme Court in Kyles v. Whitley emphasized that prosecutors must disclose evidence known to any government agent. Here, DDA Balerio orchestrated the withholding of multiple sources of exculpatory evidence to maintain the facade of a legitimate prosecution.

The foundation of both the criminal prosecution and family court proceedings rests on void orders stemming from Commissioner Ratekin's improper denial of a valid peremptory challenge. As established in People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993), when a peremptory challenge is erroneously denied, all subsequent orders by that judge are void.

Here, Ratekin's denial despite:

- Clear conflict (supervising judge's wife's relationship with Plaintiff's ex-wife)
- Proper and timely challenge under CCP §170.6
- Lack of jurisdiction after challenge
- Pattern of retaliatory rulings

rendered all subsequent orders void ab initio. The void nature of these foundational orders infects all later proceedings building upon them, requiring independent constitutional review rather than deference to state court determinations.

**3. What do you think the court below did wrong? (You may, but need not, refer to cases and statutes.)**

In short, the San Diego California District Attorney Balerio made a plea deal agreement with me under coercive illegal tactics that my attorney Jose Badillo failed to get in writing.  Luckily, I

have recorded conversations that when listened to would force any reasonable person to know that this plea deal happened. **This court is and has REFUSED to listen to this evidence.**

In addition, the district court's revocation of IFP status directly contradicts governing precedent and reveals improper purpose. In Hooker v. American Airlines, 302 F.3d 1091 (9th Cir. 2002), the Ninth Circuit established that IFP status can only be revoked if an appeal is "wholly frivolous." Even a single non-frivolous issue preserves IFP status. Here, the recorded admissions of DAI Pena alone - stating "the DA should never have taken this case" and prosecution was pursued because plaintiff "pissed them off" - conclusively establish non-frivolous constitutional claims.

The timing of the revocation, coming **only after the circuit court's referral** and following substantial evidence of constitutional violations, strongly suggests retaliatory purpose rather than proper application of the Hooker standard. The district court's failure to explain how claims supported by recorded admissions of state actors could be "wholly frivolous" underscores the impropriety of the revocation.

**So many things wrong with this so let's get specific;**

**1. Fundamental Misapplication of Constitutional Law:**

a) Misinterpretation of §1983 Authority

Supreme Court Precedent:

- Monroe v. Pape, 365 U.S. 167, 172 (1961): §1983 provides broad remedy for constitutional violations by state actors

- Dennis v. Sparks, 449 U.S. 24, 27-28 (1980): private parties acting with state officials subject to §1983

Nexus: Court erroneously concluded:

- §1983 cannot provide relief for prosecutor's breach

- Failed to recognize constitutional dimension of plea agreements

- Ignored state actor liability framework

b) Disregard of Plea Agreement Constitutional Requirements

Supreme Court Precedent:

- Santobello v. New York, 404 U.S. 257, 262 (1971): prosecutor's promises in plea must be fulfilled

- Mabry v. Johnson, 467 U.S. 504, 507-08 (1984): broken plea agreements violate due process

Nexus: Court ignored clear evidence:

- Recorded conversations proving agreement terms

- Attorney Badillo confirming DDA Balerio's understanding

- Pattern of coordinated breach

## 2. Systematic Due Process Violations:

a) Denial of Evidentiary Hearings

Supreme Court Precedent:

- Blackledge v. Allison, 431 U.S. 63, 74 (1977): "substantial evidence" of improper plea inducement requires "careful consideration"

- Armstrong v. Manzo, 380 U.S. 545, 552 (1965): due process requires meaningful hearing opportunity

Nexus: Court refused to:

- Review recorded evidence of agreement

- Hear testimony about coerced plea

- Consider proof of prosecutorial misconduct

b) Protection of Brady Violations

Supreme Court Authority:

- Brady v. Maryland, 373 U.S. 83, 87 (1963): suppression of favorable evidence violates due process

- Kyles v. Whitley, 514 U.S. 419, 437 (1995): prosecutors must disclose evidence known to government agents

Nexus: Court permitted concealment of:

- FBI threat assessment report

- Full context of FBI call

- DAI Pena's exculpatory statements

- DDA Balerio's interview with son and withholding of full FBI transcript and any of the FBI "threat assessment" report that she was given and pretends she never got.  What a scumbag!


**3. Unlawful Validation of Pretrial Detention:**


a) Coercive Use of Detention

Constitutional Authority:

- Stack v. Boyle, 342 U.S. 1, 4-5 (1951): bail cannot exceed amount reasonably calculated to ensure presence

- United States v. Salerno, 481 U.S. 739, 747 (1987): pretrial detention cannot be punitive

Nexus: Court overlooked:

- 90-day detention on manufactured threat

- Withholding of FBI assessment showing no threat

- Use of detention to coerce plea


b) Invalid "Threat" Determination

Statutory/Case Law:

- California Penal Code §422: requirements for criminal threat

- Watts v. United States, 394 U.S. 705 (1969): protected speech vs true threats

Nexus: Court failed to examine:

- FBI's conclusion of no credible threat

- Full context of 30-minute call

- De-escalation intent evidence


**4. Fraudulent Process Protection:**

a) Intentional Evidence Suppression

Ninth Circuit Authority:

- Dixon v. Comm'r, 316 F.3d 1041, 1046 (9th Cir. 2003): intentional failure to consider material evidence constitutes fraud

- Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995): coordinated misconduct warrants intervention

Nexus: Court permitted:

- Concealment of exculpatory evidence

- Systematic denial of hearings

- Institutional protection of misconduct

b) Improper IFP Revocation

Legal Authority:

- 28 U.S.C. § 1915(a)(3): standard for IFP revocation

- Hooker v. American Airlines, 302 F.3d 1091, 1092 (9th Cir. 2002): requires showing appeal is "wholly frivolous"

Nexus: Court improperly:

- Ignored substantial constitutional claims

- Disregarded documented evidence

- Used revocation to block review

**5. Protection of Prosecutorial Misconduct:**

a) Failure to Address Ethical Violations

Supreme Court Precedent:

- Berger v. United States, 295 U.S. 78, 88 (1935): prosecutor's duty is to ensure justice, not merely convict

- Banks v. Dretke, 540 U.S. 668, 675-676 (2004): prosecutors must disclose evidence undermining their case

Nexus: Court ignored:

- DAI Pena's many admissions case was improper and DDA Balerio many "Brady" violations in withholding exculpatory evidence.

- Evidence of retaliatory prosecution

- Pattern of misconduct


b) Protection of Systemic Issues

Constitutional Authority:

- Monell v. Department of Social Services, 436 U.S. 658, 690-691 (1978): liability for pattern of official misconduct

- Hartman v. Moore, 547 U.S. 250, 256 (2006): retaliatory prosecution violates Constitution

Nexus: Court protected:

- Coordinated institutional misconduct

- Retaliatory prosecution pattern

- Systemic due process violations

The court's handling of this case represents an extraordinary departure from fundamental constitutional principles, transforming these proceedings into what the Supreme Court warned against in Brookhart v. Janis, 384 U.S. 1, 4 (1966): a "sham" proceeding that "would not comport with constitutional guarantees." The systematic denial of hearings, protection of misconduct, and refusal to examine documented evidence demonstrates a pattern of institutional failure demanding immediate appellate intervention.


**CONCLUSION:** The district court's errors fundamentally misapprehend both the nature of the constitutional violations and the scope of available relief:

1. The evidence of DDA Balerio's misconduct:
- Is not merely alleged but proven through recorded admissions
- Shows direct constitutional violations rather than mere procedural errors
- Demonstrates pattern of retaliatory action and evidence suppression
2. The coordination with private actors:
- Is documented through multiple sources of evidence
- Shows systematic rather than isolated action
- Proves joint activity with state officials

3. The availability of §1983 relief:
- Is explicitly supported by Supreme Court precedent
- Provides appropriate constitutional remedies
- Addresses systematic violations of federal rights

In addition, the systematic denial of ADA accommodations following Plaintiff's documented heart attack represents an independent constitutional violation under Tennessee v. Lane, 541 U.S. 509 (2004). The Supreme Court there held that Title II of the ADA protects fundamental access to courts, yet here the district court:

- Denied remote hearing requests despite clear medical necessity
- Ignored documented cardiac condition requiring accommodation
- Railroaded proceedings during proven incapacity
- Entered default judgments against incapacitated party
- Used medical crisis to prevent evidence presentation

As the Ninth Circuit emphasized in Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001), failure to provide reasonable accommodations in court proceedings violates both the ADA and fundamental due process. The district court's actions transformed Plaintiff's medical crisis from a basis for accommodation into a weapon for denying constitutional rights.

# 4. Why are these errors serious enough that this appeal should go forward?

**1. Clear Constitutional Violations in Plea Agreement Process:**

a) Prosecutorial Misconduct in Plea Agreement

Supreme Court Precedent:

- Santobello v. New York, 404 U.S. 257, 262 (1971): "when plea rests in any significant degree on promise or agreement of prosecutor...such promise must be fulfilled"

Nexus: Multiple recorded conversations conclusively prove DDA Balerio made and breached specific promises:

- Attorney Badillo recorded stating: "The DA knows that you resolved the case based on the conversation"

- Multiple recorded calls discussing agreement terms

- Coordinated breach after inducing plea

- Timeline shows deliberate execution of breach

b) Coercive Pre-trial Detention

Supreme Court Precedent:

- Stack v. Boyle, 342 U.S. 1, 4 (1951): "Bail set at higher figure than reasonably calculated to ensure defendant's presence is excessive under 8th Amendment"

- United States v. Salerno, 481 U.S. 739, 746-47 (1987): pretrial detention cannot be punitive

Nexus: Clear retaliatory pattern in 90-day detention:

- FBI assessment (still withheld) found no credible threat

- DAI Pena admitted prosecution improper and retaliatory

- Used detention coercively to force plea

- Never charged alleged "threat" but used it for detention

## 2. Explicit Evidence of Retaliatory Prosecution:

a) DAI Pena's Recorded Admissions Prove Each Element:

- Direct proof of improper motive: "pissed them off" statement

- Lack of probable cause: "you would win at trial" admission

- Coordinated action: family court lawyers pushing prosecution

- Institutional knowledge: "DA should never have taken this case"

b) Clear Temporal Sequence Showing Retaliation:

- Public corruption complaint filed

- Extended period with no DA action (over 1 year)

- Sudden prosecution after whistleblowing

- Manufactured "threat" to enable detention

- Pattern of escalating barriers to silence criticism

**3. Interconnected Constitutional Violations:**

a) Recorded Evidence Establishes Multiple Claims:

- Proves both plea agreement and coordinated breach

- Documents retaliatory motive and prosecutorial misconduct

- Shows systematic denial of due process

- Demonstrates institutional protection of fraud

b) Pattern of Coordinated Action:

- Family court and prosecutors working together

- Court officials protecting misconduct

- Systematic denial of hearings

- Active concealment of evidence

4. Systematic Due Process Violations:

a) Denial of Basic Procedural Rights

Supreme Court Precedent:

- Blackledge v. Allison, 431 U.S. 63, 74 (1977): defendant presenting "substantial evidence" entitled to "careful consideration"

- Armstrong v. Manzo, 380 U.S. 545, 552 (1965): due process requires meaningful hearing

Nexus: Four years of systematic denial:

- No evidentiary hearing despite recorded proof

- Blocked presentation of exculpatory evidence

- Denied ADA accommodations after heart attack

- Used procedural barriers to prevent jury review

**5. Institutional Protection of Misconduct:**

a) Pattern of Concealment

Supreme Court Precedent:

- Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944): fraud on court demands intervention

- Dixon v. Comm'r, 316 F.3d 1041 (9th Cir. 2003): intentional failure to consider evidence is fraud

Nexus: Systematic concealment through:

- DDA Balerio Withholding FBI assessment and full transcript of "threat" and the "threat assessment" completed by the FBI.

- Suppressing DDA Balerio's interview with son

- Concealing DAI Pena's exculpatory statements

- Blocking presentation of recorded evidence

6. Critical Public Interest Considerations:

a) Systemic Implications

Supreme Court Precedent:

- McNabb v. United States, 318 U.S. 332, 347 (1943): courts must preserve judicial integrity

- Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 813 (1987): systemic misconduct threatens justice

Nexus: Case exposes:

- Abuse of prosecutorial power

- Coordinated institutional misconduct

- Retaliation against whistleblowers

- Need for systemic reform


The extraordinary circumstances presented demand appellate review. The recorded evidence conclusively proves multiple constitutional violations through the direct admissions of state actors themselves. DAI Pena's recorded statements alone establish improper motive, lack of probable cause, and coordinated misconduct. When combined with the documented plea agreement breach, pattern of evidence suppression, and systematic denial of hearings, these violations demonstrate an unprecedented assault on fundamental constitutional protections that strikes at the very heart of judicial integrity.

The district court's refusal to even examine this substantial evidence - while simultaneously claiming it was "well known" - represents an extraordinary departure from basic due process principles that transforms these proceedings into what the Supreme Court warned against in Brookhart v. Janis, 384 U.S. 1, 4 (1966): a "sham" proceeding that "would not comport with constitutional guarantees."


**CONCLUSION:** The gravity of these constitutional violations, supported by irrefutable recorded evidence, renders the district court's bases for dismissal legally and factually untenable:

1. The documented misconduct by DDA Balerio rises far above the plausibility threshold, with direct proof of:
- Constitutional violations in plea process
- Withholding of exculpatory evidence
- Retaliatory prosecution
2. The coordination between private and state actors is conclusively established through:
- Multiple recorded admissions
- Documentary evidence
- Pattern of systematic action
3. The appropriateness of §1983 relief is mandated by:
- Supreme Court precedent requiring enforcement of prosecutor's promises
- Constitutional nature of violations
- Systematic pattern requiring federal intervention

These conclusions directly refute the district court's attempt to characterize the appeal as not changing their legal analysis and demonstrate clear bases for reconsideration.

# 5. Additional Information:

**Direct Rebuttal to Court's Order Denying Reconsideration and Revoking IFP Status:**

**1. Court Claim #1:** "Alleged frauds were well known and not newly discovered"

**Rebuttal:**

a) Court's Circular Logic Creates Impossible Catch-22:

- Claims evidence was "well known" while denying every request to examine it

- Cannot deem evidence "known" while actively blocking its consideration

- Systematically denied:

  * Every request for evidentiary hearing

  * Pre-discovery motions

  * Case management conference

  * Presentation to jury

- Creates impossible standard where evidence is:

  * Too "well known" to be considered new

  * Yet never allowed to be presented or examined

  * Blocked from reaching factfinder

  * Protected from scrutiny

b) Critical Evidence Actively Suppressed:

- DAI Pena's recorded admissions including:

  * "DA should never have taken this case"

  * "You would win at trial"

  * Case brought because plaintiff "pissed them off"

  * Family court lawyers pushing prosecution

- DDA Balerio withheld:

  * FBI threat assessment report

  * Full context of FBI call

* Interview with plaintiff's son

* Evidence supporting PC 278.7 defense

- Plea agreement evidence:

  * Attorney Badillo's recorded confirmation

  * Ex-wife's initial acknowledgments

  * Documentation of terms

  * Proof of coordinated breach


c) Court's Actions Constitute Independent Fraud:

- Dixon v. Comm'r, 316 F.3d 1041 (9th Cir. 2003):

  * "Court's failure to consider material evidence can constitute fraud on court if failure is intentional"

  * Pattern of blocking evidence presentation

  * Use of procedural barriers

  * Protection of misconduct


**2. Court Claim #2:** "§1983 cannot provide requested relief"


**Rebuttal:**

a) Directly Contradicts Supreme Court Precedent:

- Santobello v. New York, 404 U.S. 257 (1971):

  * "When plea rests on prosecutor's promise...such promise must be fulfilled"

  * Constitutional dimension of plea agreements

  * Enforcement required regardless of form

  * State actors bound by promises

- United States v. Garcia-Beltran, 443 F.3d 1126 (9th Cir. 2006):

  * Prosecutor's promises enforceable regardless of documentation

  * No requirement for written agreement

\* Verbal promises binding when proven

\* Evidence here conclusively proves terms


b) Mischaracterizes Relief Sought:

- Not seeking custody modification but:

  \* Enforcement of state actor's constitutional obligations

  \* Relief from proven prosecutorial misconduct

  \* Protection of fundamental rights

  \* Remedy for systematic violations

- §1983 specifically designed for:

  \* Constitutional violations by state actors

  \* Prosecutorial misconduct

  \* Systemic due process violations

  \* Pattern of rights deprivation


**3. Court Claim #3:** "Failed to plausibly allege how Balerio violated constitutional rights"


**Rebuttal:**

a) Multiple Constitutional Violations Proven:

- Brady Violations:

  \* Withheld FBI threat assessment

  \* Concealed exculpatory interview

  \* Suppressed DAI Pena statements

  \* Hid evidence supporting defense

- Due Process Violations:

  \* Manufactured detention pretext

  \* Coerced plea agreement

  \* Coordinated breach

   * Denied basic hearings

- First Amendment Retaliation:

   * DAI Pena admits retaliatory motive

   * Pattern following whistleblowing

   * Use of prosecution to silence

   * Coordinated institutional response


b) Clear Evidence of State Action:

- DDA Balerio acting under color of law:

   * Made binding promises in plea

   * Coordinated with family court

   * Participated in breach

   * Protected misconduct


**4. Court Claim #4:** "No good faith basis for appeal"


**Rebuttal:**

a) Substantial Evidence Includes:

- Multiple Recorded Admissions:

   * DAI Pena's exculpatory statements

   * Attorney Badillo confirming plea

   * Ex-wife acknowledging agreement

   * Pattern of misconduct

- Documentary Proof:

   * Email communications

   * Court records

   * Medical documentation

   * Supporting exhibits

b) Strong Legal Authority:

- Constitutional Violations:

  * Due process denials

  * First Amendment retaliation

  * ADA violations

  * Parental rights infringement

- Prosecutorial Misconduct:

  * Brady violations

  * Plea agreement breach

  * Abuse of detention

  * Retaliatory prosecution


**5. Court Claim #5:** "Face obstacle that simply cannot be overcome"


**Rebuttal:**

a) No Insurmountable Obstacle Exists:

- Constitutional Claims:

  * Well-documented violations

  * Clear evidence

  * Strong precedent

  * Available remedies

- §1983 Authority:

  * Designed for these violations

  * Provides appropriate relief

  * Covers state actor misconduct

  * Addresses systemic issues

**6. Court Claim #6:** "Declaratory relief not cognizable"


**Rebuttal:**

a) Edwards v. Balisok Fundamentally Misapplied:

- Different Context:

 * No plea agreement issues

 * No prosecutorial misconduct

 * No systematic violations

 * No coordinated fraud

- Appropriate Relief Available:

 * Constitutional remedies

 * Enforcement of rights

 * System reform

 * Protection from retaliation


The district court's denial of reconsideration and revocation of IFP status represents an extraordinary departure from basic constitutional principles and established precedent. The circular logic employed - claiming evidence is "well known" while systematically preventing its examination - transforms these proceedings into what the Supreme Court warned against: a "sham" proceeding that "would not comport with constitutional guarantees." The coordinated effort to prevent this evidence from reaching a jury - through denial of hearings, revocation of IFP status, and procedural barriers - only underscores the urgency of appellate review.


Every claim in the court's order is contradicted by:

- Clear evidence in the record

- Controlling legal precedent

- Constitutional principles

- Basic logic and fairness

The attempt to shield serious constitutional violations from review rather than engage with the substantial evidence presented demands immediate appellate intervention to preserve the integrity of the judicial process and prevent further violation of fundamental rights.

**CONCLUSION:**

The district court's order denying reconsideration and revoking IFP status represents an extraordinary miscarriage of justice that cannot withstand scrutiny:

**1. The Court's Circular Logic is Self-Defeating:**

- Cannot simultaneously claim evidence was "well known" while systematically preventing its examination

- Four years of denied evidentiary hearings proves institutional effort to suppress truth

- Pattern of procedural barriers demonstrates protection of misconduct rather than proper adjudication

- Denial of basic due process transforms proceedings into constitutionally impermissible "sham"

**2. The Constitutional Violations are Irrefutable:**

- DAI Pena's recorded admissions alone prove:

  * Retaliatory prosecution ("pissed them off")

  * Lack of probable cause ("would win at trial")

  * Institutional misconduct ("DA should never have taken case")

- Multiple recorded conversations establish:

  * Existence of plea agreement

  * Terms regarding custody

  * Coordinated breach

  * Pattern of misconduct

**3. The Relief Sought is Squarely Within §1983's Scope:**

- Santobello v. New York, 404 U.S. 257 (1971) explicitly requires enforcement of prosecutor's promises

- United States v. Garcia-Beltran, 443 F.3d 1126 (9th Cir. 2006) mandates enforcement regardless of documentation

- Constitutional dimension of prosecutorial plea agreements makes §1983 appropriate vehicle

- Pattern of systemic violations demands federal intervention

**4. The IFP Revocation is Transparently Retaliatory:**

- Financial circumstances unchanged from initial grant

- Timing suggests effort to block appellate review

- Cannot be reconciled with substantial evidence

- Appears coordinated with pattern of obstruction

**5. The "Obstacles" Cited by Court Do Not Exist:**

- Edwards v. Balisok inapplicable to these facts

- Clear constitutional remedies available

- Strong precedential support for claims

- Multiple avenues for relief

The court's refusal to engage with this substantial evidence while claiming no basis for reconsideration reveals this is not about legal analysis but institutional protection of misconduct. The recorded admissions of state actors themselves - from DAI Pena's explicit statements about retaliatory motive to Attorney Badillo's confirmation of the plea agreement - demand appellate review. To accept the district court's reasoning would be to sanction:

- The use of manufactured pretrial detention to coerce pleas

- The withholding of exculpatory evidence

- Retaliation against whistleblowers

- The systematic denial of basic due process

- The transformation of judicial proceedings into what the Supreme Court explicitly warned against in Brookhart v. Janis: a "sham" that "would not comport with constitutional guarantees."

Justice, the rule of law, and the integrity of our judicial system demand this appeal move forward. The evidence is too substantial, the violations too serious, and the implications too far-reaching to allow these constitutional injuries to go unaddressed.

While each constitutional violation presented warrants independent review, their cumulative effect reveals a coordinated assault on fundamental rights that transforms these proceedings from isolated errors into systematic denial of due process. The pattern includes:

- Manufactured detention based on concealed evidence
- Coerced plea through constitutional violations
- Coordinated breach of plea agreement
- Strategic denial of hearings and accommodation
- Protection of misconduct through procedural barriers
- Retaliation against whistleblowing
- Institutional preservation of fraud

As the Supreme Court emphasized in United States v. Cronic, 466 U.S. 648 (1984), when multiple errors combine to make proceedings a "complete denial of counsel," the result is constitutional error regardless of prejudice showing. Here, the coordinated misconduct has similarly rendered these proceedings a "complete denial of justice" demanding federal intervention.

The federal courts have not just the power but the duty to intervene when state proceedings deteriorate into what the Supreme Court condemned in Brookhart v. Janis as a "sham" that "would not comport with constitutional guarantees." The evidence here establishes not mere mistakes but a systematic effort to deny constitutional rights while protecting official misconduct from review.

Thank you for your consideration and I only want my fair day in court,

Rob Emert

11/22/24

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

ROBERT EMERT,

Plaintiff-Appellant,

v.

ANDREA SCHUCK, et al.,

Defendants-Appellees.


No. 24-5856

D.C. No. 3:24-cv-00002-AGS-AHG


## <u>APPELLANT'S RESPONSE TO REFERRAL NOTICE AND FORMAL OBJECTION</u>

      Appellant Robert Emert respectfully responds to this Court's
"REFERRAL NOTICE" and formally objects to the referral of in forma pauperis determination
back to the District Court as follows:

## I. PROCEDURAL STATUS AND PRIOR IFP DETERMINATION

      1. The District Court has already explicitly granted in forma pauperis status pursuant to
28 U.S.C. § 1915(a) in its Order dated August 21, 2024. The Court's thorough analysis
found:

- Plaintiff owns only one asset—a non-operational vehicle valued at $2,500
- Plaintiff has no money in bank accounts and no income
- Plaintiff is "over $50k in debt" and depends entirely on family charity for housing and food
- Based on these findings, the Court determined Plaintiff "has sufficiently shown an inability to pay the initial fees"

2. As established in *Hooker v. American Airlines*, 302 F.3d 1091, 1092 (9th Cir. 2002), revocation of IFP status is only appropriate where there is an explicit finding that the appeal is frivolous. The District Court's dismissal order contains no such finding.

## FORMAL OBJECTION TO REFERRAL

Appellant formally objects to this Court's referral pursuant to Fed. R. App. P. 46(c) and Circuit Rule 46-2, on the following grounds:

1. Procedural Redundancy and Established Law:

The District Court's August 21, 2024 IFP determination remains valid under Federal Rule of Appellate Procedure 24(a)(3), which provides that a party granted IFP status in district court may maintain that status on appeal unless the district court certifies that the appeal is not taken in good faith. See *Hooker v. American Airlines,* 302 F.3d 1091, 1092 (9th Cir. 2002).

2. Standards for Frivolousness:

Under *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), a complaint is frivolous only where it lacks "an arguable basis either in law or in fact." Here, the substantial evidence includes:

- Recorded confessions of prosecutorial doubts
- Documented evidence of a breached plea agreement
- Multiple constitutional violations

These claims clearly surpass the frivolousness threshold established in **Denton v. Hernandez**, 504 U.S. 25, 33 (1992).

3. Inherent Conflict and Due Process:

Asking the District Court to evaluate the merit of an appeal of its own ruling creates an inherent conflict that violates due process principles established in:

- *Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (requiring impartial adjudication)
- *In re Murchison*, 349 U.S. 133, 136 (1955) (no person can be judge in their own case)
- *Caperton v. A.T. Massey Coal Co*., 556 U.S. 868, 876 (2009) (due process requires absence of actual bias)

4. Pro Se Consideration:

As a pro se litigant, pleadings must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This principle extends to appeal considerations. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. AVAILABILITY OF COMPLETE RECORD

This Court has direct access through PACER to the complete district court record in Case No. 3:24-cv-00002-AGS-AHG, which includes:

1. The District Court's thorough IFP analysis and explicit grant of IFP status (ECF 7)

2. Substantial evidence supporting constitutional claims, including:
   a. Recorded conversations with District Attorney Investigator
   b. Transcribed calls regarding plea agreement
   c. Email communications
   d. Supporting exhibits demonstrating misconduct

3. The District Court's dismissal order containing no suggestion that potential appeals would be frivolous

Given the Court's direct access to this comprehensive record, which amply demonstrates both financial eligibility and non-frivolous constitutional claims, the referral back to the District Court appears procedurally unnecessary and potentially prejudicial to Appellant's right to meaningful appellate review.

## III. SUBSTANTIAL CONSTITUTIONAL CLAIMS

The appeal presents serious constitutional issues that preclude any finding of frivolousness:

1. Fundamental Parental Rights:

Protected under *Troxel v. Granville*, 530 U.S. 57, 65 (2000) as "perhaps the oldest of the fundamental liberty interests recognized by this Court." The evidence of interference with these rights includes:

- Documented breach of plea agreement affecting custody

- Recorded admissions by DA investigator regarding improper alignment of counsel
- Denial of basic evidentiary hearings

2. Due Process Violations:

Multiple violations under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976):

- Denial of meaningful hearings
- Withholding of exculpatory evidence
- Coerced plea agreement
- Breach of plea terms

3. First Amendment Retaliation:

Evidence of retaliation for protected speech under Hartman v. Moore, 547 U.S. 250 (2006):

- Timing of prosecution following whistleblower complaints
- Recorded statements acknowledging retaliatory motivation
- Pattern of escalating procedural barriers

IV. CONSTITUTIONAL AND PROCEDURAL CONCERNS OF REFERRAL

1. Impediment to Meaningful Appellate Review:

The referral potentially violates the fundamental right to meaningful appellate review established in *Griffin v. Illinois*, 351 U.S. 12, 18 (1956). Specifically:

a) Creates Impermissible Barriers:

- Bounds v. Smith, 430 U.S. 817, 821 (1977) requires meaningful access to courts
- Additional procedural hurdles particularly burden pro se litigants
- Delays review of time-sensitive constitutional claims

b) Risk of Institutional Bias:

- Withrow v. Larkin, 421 U.S. 35, 47 (1975) prohibits decision-making where "the probability of actual bias... is too high to be constitutionally tolerable"
- District Court judge reviewing own decision creates such risk

2. Evidence Precluding Frivolousness Finding:

a) Recorded Statements from DA Investigator Luis Pena:

- "The DA should never have taken this case"

- "You would win if the case went to trial"
- Acknowledgment of improper alignment between counsel

b) Documented Plea Agreement Evidence:

- Recorded conversations with former attorney
- Transcribed calls confirming terms
- Email communications validating agreement

3. Standards for IFP Status on Appeal:

Under *Coppedge v. United States*, 369 U.S. 438, 445 (1962):

- Appeal must not be frivolous
- Must present substantial question
- Benefit of doubt given to appellant

Here, the substantial evidence and constitutional claims clearly exceed these thresholds.

## V. REQUEST FOR RELIEF

Based on the foregoing, Appellant respectfully requests:

1. Direct Review:

Pursuant to Circuit Rule 27-7 and 28 U.S.C. § 1915(a)(3), this Court should:

- Maintain current IFP status
- Withdraw district court referral
- Proceed with appellate review

2. Expedited Consideration:

Under 28 U.S.C. § 1657 and Circuit Rule 27-12:

- Expedite review given fundamental rights at stake
- Prevent ongoing constitutional harm
- Address time-sensitive parental rights issues

3. Preservation of Record:

Pursuant to Fed. R. App. P. 10(a):

- Note formal objection to referral
- Preserve all procedural and substantive rights
- Maintain complete record for potential further review

## VI. CONCLUSION

**APPELLANT'S RESPONSE TO REFERRAL NOTICE AND FORMAL OBJECTION** 5

The substantial evidence and serious constitutional issues presented preclude any finding of frivolousness under established Supreme Court precedent. The District Court has already conducted a thorough analysis of Appellant's financial status and granted IFP status. Creating additional procedural barriers through this referral raises serious constitutional concerns and appears to conflict with fundamental principles of judicial impartiality.

The evidence of prosecutorial misconduct, constitutional violations, and systemic bias demands full appellate review. Appellant respectfully requests this Court maintain the current IFP status and proceed with consideration of the appeal.

Dated: October 29, 2024

Respectfully submitted,

Robert Emert

Robert Emert, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328

CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system and served all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy of the following document and at the addresses listed below:

Objection Motion regarding referral notice from 9th Circuit to Southern CA District Court.

williams@williamsiagmin.com ; austin.uhler@sdcounty.ca.gov ; jbadillo_law@yahoo.com ; dschulman@msmfamilylaw.com

Robert Emert


# EXHIBIT A


# SOUTHERN CALIFORNIA DISTRICT COURT GRANTING IFP MOTION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Robert EMERT,<br><br>                                     Plaintiff,<br><br>v.<br><br>Andrea SCHUCK, et al.,<br><br>                                     Defendants. | Case No.: 24-cv-0002-AGS-AHG<br><br>**ORDER GRANTING IFP MOTION (ECF 7), DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND, AND CLOSING CASE** |

Plaintiff Robert Emert, suing for alleged civil-rights violations under 42 U.S.C. § 1983, moves to proceed in forma pauperis. For the reasons below, that motion is granted, but his complaint is dismissed without leave to amend.

**IFP MOTION**

Typically, parties instituting a civil action in a United States district court must pay filing fees of $405.[1] *See* 28 U.S.C. § 1914(a). But if granted the right to proceed in forma pauperis, a plaintiff need not pay those fees. *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

Emert owns only one asset—a non-operational vehicle he values at $2,500. (ECF 7, at 2.) He has no money in his bank accounts, has no income, is "over $50k in debt," and depends entirely on the "charity of [his] family" for housing and food. (*Id.*) The Court finds that Emert has sufficiently shown an inability to pay the initial fees. *See Blount v. Saul*, No. 21-cv-0679-BLM, 2021 WL 1561453, at *1 (S.D. Cal. Apr. 21, 2021) ("It is well-settled that a party need not be completely destitute to proceed IFP.").

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $55. *See* 28 U.S.C. § 1914(a); Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023).

1

**28 U.S.C. § 1915(e) S**CREENING

When reviewing an IFP motion, the court must screen the complaint and dismiss it if it "fails to state a claim," 28 U.S.C. § 1915(e)(2)(B), judged by the same "Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim," *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Although a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (cleaned up). Pro se pleadings are "to be liberally construed." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

**A.    Background**

This is the fourth of six federal cases Emert recently filed that stem from either his 2023 state-court criminal conviction or a family-court decision affecting his parental-custody rights.[2] In this iteration, Emert claims that his "criminal defense attorney," defendant Jose Badillo, negotiated an "oral plea agreement" with defendant Deputy District Attorney Dawn Balerio and Emert's ex-wife, defendant Andrea Schuck. (ECF 1, at 4–5, 7.) A "custody provision" of that agreement allegedly provided that Emert's son Bryce "would return to Plaintiff's custody in a shared custody arrangement if Plaintiff pled guilty to resolve criminal charges." (*Id.* at 3.) Emert "pled guilty on April 4, 2023," but he says defendants "now falsely claim the plea deal did not contain any agreement regarding letting Bryce reside with plaintiff." (*Id.*) Emert neither provides the plea colloquy from that

---

[2] The other five cases are: *Emert v. Vena*, No. 3:23-cv-0230-RSH-AHG (S.D. Cal. Aug. 14, 2023) (filed Feb. 7, 2023); *Emert v. San Diego Superior Ct.*, No. 3:23-cv-1723-BAS-MSB (S.D. Cal. Oct. 4, 2023) (filed Sept. 18, 2023); *Emert v. California*, No. 3:23-cv-2318-JES-VET (S.D. Cal. Apr. 4, 2024) (filed Dec. 20, 2023); *Emert v. San Diego Bd. of Supervisors*, 3:24-cv-0671-JO-MSB (S.D. Cal. Apr. 12, 2024) (filed Apr. 12, 2024); and *Emert v. San Diego Superior Ct.*, No. 3:24-cv-0924-LL-MSB (S.D. Cal. May 31, 2024) (filed May 30, 2024).

hearing nor attests that the judge taking his plea was aware of any "custody provision." He was sentenced to and "remain[s] on a restrictive 3-year probation term." *See Emert v. California*, No. 3:23-cv-2318-JES-VET (S.D. Cal. Apr. 4, 2024), ECF 4, at 2.

Emert sues his ex-lawyer Badillo, prosecutor Balerio, and his ex-wife Schuck, claiming that their "breach of the plea agreement violated [his] constitutional rights under the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment." (*Id.* at 5.) As circumstantial proof of his claims, Emert attaches transcripts of phone calls with his ex-wife and his ex-lawyer during the weeks after his plea, which he surreptitiously recorded. (*See id.* at 8–181.) These, he claims, "conclusively demonstrate that Defendants made and breached an enforceable plea agreement." (*Id.* at 6.)

He bases federal jurisdiction on defendant "Balerio's role in making the plea agreement which the other defendants failed to honor." (*Id.* at 3.) He asks the Court to "order[] Defendants to specifically perform the original plea agreement by letting Bryce live with his father." (*Id.*)

**B.   Discussion**

Section 1983 lawsuits are "a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing 42 U.S.C. § 1983). To state a § 1983 claim, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

**1.   *Deputy District Attorney Balerio***

Emert fails to plausibly allege how Balerio violated his constitutional rights. "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Emert's allegations of any involvement by Balerio with custody issues are paper-thin. First, he says Balerio once spoke with Schuck

3

about "what [Schuck] wants [] out of [Emert] and what [Schuck] wants in regards to [Emert's] participation in [their son's] life." (*Id.* at 137.) He also claims that his then-lawyer told him Balerio "agreed to a plea deal whereby [Emert's son] would return to [Emert's] custody." (*Id.* at 3.) Accepting as true that Emert's lawyer told him this (even though the lawyer denies it (*see id.*)), it does not follow that Balerio actually agreed to any such thing. In fact, the Court is entitled to treat this inference with some skepticism. After all, Balerio has no power to enforce a private citizen's surrender of her child-custody rights—let alone set aside a family-court ruling granting those rights.

Several other circumstances also seem to absolve Balerio of any § 1983 liability. Emert does not allege that Balerio directly promised him anything about parental rights or that she mentioned custody during his plea colloquy, when he could have objected. He merely asserts in a conclusory fashion that Balerio's "involvement created a binding agreement under state law"—yet he admits it was "the other defendants [who] failed to honor" any purported arrangement. (ECF 1, at  3.) Balerio is not specifically alleged to have taken any "affirmative act, participate[d] in another's affirmative acts, or omit[ted] to perform an act [she was] legally required to do" that resulted in a violation of Emert's due-process rights. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

And the attached documents undermine Emert's claim that any custody agreement involving Balerio existed. "[W]hen an exhibit to a complaint is inconsistent with the complaint's allegations, the exhibit controls." *Nguyen v. Bank of Am., NA*, 563 F. App'x 558, 558 (9th Cir. 2014). The nearly 200 pages of recorded phone calls point to two separate arrangements—the actual plea agreement with the state and an "agreement to agree" about custody between Emert and his ex-wife Schuck. (*See generally* ECF 1, at 8–181.) The transcripts indicate Emert understood all along that any agreement with his ex-wife was separate from his plea deal. After he'd pleaded guilty, Emert told Schuck: "I thought *we* were going to come to an agreement. . . . I took the deal based on what you said." (ECF 1, at 63 (emphasis added).) Schuck then told him "we have [a] little ways to go before we can do an agreement" and insisted that any arrangement between them be "in

4

writing." (*Id.* at 68, 111.) Emert acknowledged that Schuck's "[l]awyers were *going to* draft something and propose it to" him. (*Id.* at 176 (emphasis added).) Weeks later, he still "look[ed] forward to an agreement" with her but had "not received that yet." (*Id.* at 176, 179.) Finally, a full six weeks after Emert's guilty plea, Schuck indicated that they had reached an impasse: "We are not in negotiations nor will we be until you do as I have requested and drop your other cases. At that point I will work with you for some shared physical (only) custody of Bryce." (*Id.* at 180.) If any understandings were receded from, they involved only private citizens, not the state. Emert does not plausibly allege that Balerio had any connection with this second, inchoate arrangement between the parents. Perhaps Emert took the plea deal in the misplaced hope that his ex-wife would independently cede custody. But that has nothing to do with Balerio.

Nor does he state a § 1983 equal-protection claim against Balerio. To do so, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Emert seems to assert he's in a protected class of "similarly situated parents." (ECF 1, at 5.) But he doesn't explain how Balerio treated him differently from those outside the class concerning custody agreements in plea deals. With the fall of that theory, so fall his chances of prosecuting a § 1983 claim against Balerio.

### 2. *Badillo and Schuck*

Emert cannot maintain a § 1983 claim against his ex-wife or ex-lawyer, since he fails to allege how either was acting under color of state law. Emert does mention that "Badillo failed to secure the plea agreement regarding Bryce's custody in writing," but to the extent he may be trying to allege legal malpractice against his ex-lawyer, the Court declines to exercise supplemental jurisdiction over that or any other construable state-law claim. (*See* ECF 1, at 3.)

### 3. *Improper Vehicle for Remedy Sought*

Even if Emert had managed to state a § 1983 claim, the relief he requests—"specific performance" of the alleged plea agreement so he can gain physical custody of his son (*see*

ECF 1, at 4)—is not properly sought under that statute. Moreover, specific performance is impossible. Even if Emert's plea deal somehow included a child-custody provision, 42 U.S.C. § 1983 does not authorize this Court to summarily annul a state's custody ruling. With very few exceptions, a California family court "that has made a child custody determination . . . has exclusive, continuing jurisdiction over the determination." *See* Cal. Fam. Code § 3422(a). What's more, the family court itself cannot modify its ruling without a showing "that there is new evidence or that there are changed circumstances that make a change of placement in the best interest of the child." *In re Stephanie M.*, 867 P.2d 706, 718 (Cal. 1994). Nor can this Court constitutionally order Emert's ex-wife to disregard the family-court determination, relinquish her parental rights, and hand over her child.

When a "breach of plea agreement" claim is brought and "specific performance is impossible," as it is here, "the only other possible remedy is rescission of the plea agreement and withdrawal of the guilty plea." *Carter v. Sandoval*, No. 2:18-cv-02064-RFB-EJY, 2020 WL 4668190, at *6 (D. Nev. July 9, 2020), *aff'd*, 859 F. App'x 53 (9th Cir. 2021). Such a claim "may not be pursued in a § 1983 action," as "habeas corpus is the exclusive remedy to attack the legality of the conviction or sentence." *Id.* (citing *Nettles v. Grounds*, 840 F.3d 922, 933 (9th Cir. 2016)).

Finally, even if the Court were to construe Emert's complaint as a habeas petition, it would fail. A federal habeas petitioner must exhaust state remedies by "present[ing] the California Supreme Court with a fair opportunity to rule on the merits of every issue raised." *Emert v. California*, No. 3:23-cv-2318-JES-VET, 2024 WL 787381, at *1 (S.D. Cal. Feb. 26, 2024) (dismissing Emert's previous habeas action for failure to exhaust). Separately and additionally, "a petitioner must name the state officer having custody of him as the respondent." *Id.* at *2. Emert has done neither.

## C.   Denial of Leave to Amend

Accordingly, the complaint fails to survive screening and must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e). Although a "court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies

of the complaint could not be cured by amendment," no such cure is possible here. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (cleaned up). Because the relief Emert seeks is not even available under § 1983, any amendment would be futile; in such a case, courts may deny leave to amend. *See Joe v. Supreme Ct. of Cal.*, No. 22-16224, 2023 WL 5346048, at *1 (9th Cir. Aug. 21, 2023) (affirming denial of leave to amend for pro se pleading when "amendment would be futile").

**D.  Conclusion**

Emert's IFP motion (ECF 7) is **GRANTED**. But his complaint is **DISMISSED** for failure to state a claim, without leave to amend. All other outstanding motions (ECF 8 & 9) are **DENIED AS MOOT**. The Clerk is directed to close this case.

Dated:  August 21, 2024

Andrew G. Schopler
United States District Judge

7

24-cv-0002-AGS-AHG