**No.** 24-5856

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

Robert Emert,

*Plaintiff-Appellant ,*

v.

ANDREA SCHUCK, et al.,

*Defendant-Appellee*

On Appeal from the United States District Court
for the Southern District of California
No. 3:24-cv-00002-AGS-AHG
Hon. Andrew G. Schopler

---

## APPELLANT'S OPENING BRIEF

---

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

# Contents

TABLE OF AUTHORITIES ........................................................................ 3

INTRODUCTION ................................................................................ 7

JURISDICTIONAL STATEMENT .......................................................... 22

STATEMENT OF ISSUES .................................................................... 25

STATEMENT OF THE CASE ................................................................ 30

SUMMARY OF ARGUMENT ............................................................... 40

STANDARD OF REVIEW .................................................................... 45

ARGUMENT ..................................................................................... 48

CONCLUSION .................................................................................. 56

STATEMENT OF RELATED CASES ...................................................... 59

CERTIFICATE OF COMPLIANCE ......................................................... 63

CERTIFICATE OF SERVICE ................................................................ 64

ADDENDUM – 9th Circuit Citations ................................................... 65

# TABLE OF AUTHORITIES

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I .............................................................. 7, 42, 51

U.S. Const. amend. IV ........................................................... 7, 21

U.S. Const. amend. V ............................................................. 7, 48

U.S. Const. amend. XIV ...................................................... 7, 21, 33, 42, 48

**STATUTES**

28 U.S.C. § 1291 .................................................................. 8, 22

28 U.S.C. § 1331 .................................................................. 8, 21

28 U.S.C. § 1343(a)(3) ......................................................... 8, 21

42 U.S.C. § 1983 .................................................... 7, 8, 21, 40, 47, 51-54

42 U.S.C. § 12132 ................................................................ 33

Cal. Code Civ. Proc. § 170.6 ................................................... 7, 8, 13-14, 17, 20, 28, 38

Cal. Penal Code § 278.5(a) ..................................................... 18-19

Cal. Penal Code § 278.7 ......................................................... 32, 51, 57

**CASES**

Adem v. Bush, 425 F. Supp. 2d 7 (D.D.C. 2006) ......................... 23-24

Allen v. State Board of Elections, 393 U.S. 544 (1969) ............... 39

Armant v. Marquez, 772 F.2d 552 (9th Cir. 1985) ..................... 65

Armstrong v. Manzo, 380 U.S. 545 (1965) ................................ 27

Avalos v. Baca, 596 F.3d 583 (9th Cir. 2010) ........................... 23-24

Bell v. Wolfish, 441 U.S. 520 (1979) ........................................ 45

Blackledge v. Allison, 431 U.S. 63 (1977) ................................. 50

Bock v. Santa Clara Valley Transportation Authority,
261 F.3d 912 (9th Cir. 2001) ................................................. 67

Brady v. Maryland, 373 U.S. 83 (1963) .................................... 27, 51

Brookhart v. Janis, 384 U.S. 1 (1966) ..................................... 11, 41

Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003) ........................ 65

Buckley v. Terhune, 441 F.3d 688 (9th Cir. 2006) .................... 65, 68

Catchpole v. Brannon, 36 Cal.App.4th 237 (1995) ................... 13

Cervantes v. Countrywide Home Loans, Inc.,
656 F.3d 1034 (9th Cir. 2011) ............................................... 8, 43

Dennis v. Sparks, 449 U.S. 24 (1980) ..................................... 51

Dixon v. Comm'r, 316 F.3d 1041 (9th Cir. 2003) ..................... 38, 44

Duvall v. County of Kitsap, 260 F.3d 1124 (9th Cir. 2001) ......... 66

Eason v. Clark County School District,
303 F.3d 1137 (9th Cir. 2002) .............................................. 67

Ebner v. Fresh, Inc., 838 F.3d 958 (9th Cir. 2016) ................... 43

Estate of Eskra, 51 Cal.3d 943 (1991) ..................................... 17

Ford v. City of Yakima, 706 F.3d 1188 (9th Cir. 2013) ............. 66

Garcia-Beltran, U.S. v., 443 F.3d 1126 (9th Cir. 2006) ............. 47

Hazel-Atlas Glass Co. v. Hartford-Empire Co.,
322 U.S. 238 (1944) ............................................................. 38, 45

Hebbe v. Pliler, 627 F.3d 338 (9th Cir. 2010) .......................... 43, 45-46

Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir. 1996) ........... 67

Hooker v. American Airlines, 302 F.3d 1091 (9th Cir. 2002) ....... 45, 53

Hyun Ju Park v. City & Cnty. of Honolulu,
952 F.3d 1136 (9th Cir. 2020) ................................................ 46

Investors Research Co. v. U.S. Dist. Ct.,
877 F.2d 777 (9th Cir. 1989) ................................................ 60

Jackson v. Brown, 513 F.3d 1057 (9th Cir. 2008) ..................... 66

Knievel v. ESPN, 393 F.3d 1068 (9th Cir. 2005) ...................... 67

Kyles v. Whitley, 514 U.S. 419 (1995) .................................... 51

Latshaw v. Trainer Wortham & Co.,
452 F.3d 1097 (9th Cir. 2006) ................................................ 67

Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580 (9th Cir. 2008) ...... 69

Leadsinger, Inc. v. BMG Music Publishing,
512 F.3d 522 (9th Cir. 2008) ................................................ 69

Mabry v. Johnson, 467 U.S. 504 (1984) .................................. 52

Mathews v. Eldridge, 424 U.S. 319 (1976) .............................. 33

McNabb v. United States, 318 U.S. 332 (1943) ......................... 39

Pacific Inland Bank v. Ainsworth, 41 Cal.App.4th 277 (1995) ...... 17

People v. McElwee, 128 Cal.App.4th 1348 (2005) ..................... 19

People v. Superior Court (Lavi),
4 Cal.4th 1164 (1993) ......................................... 7-8, 13-14, 17-18, 20, 28, 39

Pizzuto v. Ramirez, 783 F.3d 1171 (9th Cir. 2015) ................... 67

Rosati v. Igbinoso, 791 F.3d 1037 (9th Cir. 2015) ................... 53

Santobello v. New York, 404 U.S. 257 (1971) ......................... 7-8, 19, 27, 39-40, 52

Silva v. Brown, 416 F.3d 980 (9th Cir. 2005) ........................... 66

Skoog v. County of Clackamas, 469 F.3d 1221 (9th Cir. 2006) .... 66

Stack v. Boyle, 342 U.S. 1 (1951) ........................................... 45

Starr v. Baca, 652 F.3d 1202 (9th Cir. 2011) ........................... 68

Stephens v. Superior Court, 30 Cal.4th 1082 (2002) ................. 14

Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,

368 F.3d 1053 (9th Cir. 2004) ............................................... 43, 53

Thompson v. Davis, 295 F.3d 890 (9th Cir. 2002) ..................... 45

United States v. Agurs, 427 U.S. 97 (1976) ............................. 51

United States v. Blanco, 392 F.3d 382 (9th Cir. 2004) ............... 66

United States v. Estate of Stonehill,

660 F.3d 415 (9th Cir. 2011) ................................................. 67

United States v. Heredia, 768 F.3d 1220 (9th Cir. 2014) ........... 65, 68

United States v. Lindstrom, 698 F.2d 1154 (9th Cir. 1983) ......... 65

Updike v. Multnomah County, 870 F.3d 939 (9th Cir. 2017) ....... 66


**RULES**

Fed. R. App. P. 4(a)(1)(A) ..................................................... 22

Fed. R. App. P. 4(a)(4) .......................................................... 22

Fed. R. App. P. 4(a)(4)(B)(ii) .................................................. 22

Fed. R. App. P. 10(e) ......................................................... 10, 55

Fed. R. App. P. 32(a)(5) ......................................................... 61

Fed. R. App. P. 32(a)(6) ......................................................... 61

Fed. R. App. P. 32(f) .............................................................. 61

Fed. R. App. P. 32(g) ......................................................... 61

Fed. R. Civ. P. 60(b)(3) .................................................... 22, 43

Ninth Circuit Rule 32-1 ....................................................... 61

# INTRODUCTION

This case presents an extraordinary convergence of constitutional violations, supported by recorded admissions from state actors themselves.

Appellant also seeks review of the district court's denial of his motion for reconsideration under Federal Rule of Civil Procedure 60(b)(3). This motion presented substantial evidence of fraud on the court and sought to introduce additional constitutional violations not initially raised in the complaint. Despite the gravity of these allegations and the strength of the proffered evidence, the district court summarily denied the motion without holding an evidentiary hearing or allowing discovery. This refusal to consider Appellant's new evidence of misconduct, particularly in light of the existing record demonstrating a pattern of abuse, constitutes an abuse of discretion warranting reversal.

At its core lies an invalid judicial act that stripped subsequent proceedings of legal authority – Retired Commissioner Ratekin's improper denial of a valid peremptory challenge under California Code of Civil Procedure *§170.6. Under People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993)*, this improper denial rendered

all subsequent orders void ab initio, including those underlying the criminal charges and coerced plea agreement at issue. The constitutional violations that followed - from retaliatory prosecution to breach of plea promises - demand federal intervention to prevent further erosion of fundamental rights and restore the integrity of judicial proceedings.

The constitutional dimensions of this case implicate multiple fundamental rights: Due Process under the Fifth and Fourteenth Amendments through the breach of prosecutorial plea promises and systematic denial of hearings; First Amendment protections against retaliation for protected speech exposing corruption; Fourth Amendment safeguards against pretrial detention based on manufactured threats; and parental rights protected by the Fourteenth Amendment. As the Supreme Court emphasized in *Santobello v. New York, 404 U.S. 257, 262 (1971)*, when a plea "rests in any significant degree on a promise or agreement of the prosecutor...such promise must be fulfilled." The Ninth Circuit has further held that such constitutional violations, when perpetrated by state actors, are precisely what *42 U.S.C. §1983* was designed to remedy.

This appeal arises from the district court's dismissal of Appellant's §1983 action and subsequent denial of reconsideration. The court had jurisdiction under *28 U.S.C. §1331 and §1343(a)(3)* as Appellant's claims arise under federal law and allege deprivation of constitutional rights under color of state law. This Court has

jurisdiction pursuant to *28 U.S.C. §1291*. Review is de novo, with all factual allegations taken as true and construed in Appellant's favor. See *Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1040 (9th Cir. 2011).*

This case involves fundamental constitutional violations and a jurisdictional defect that renders all subsequent judicial orders void. The district court failed to recognize that Commissioner Ratekin's improper denial of a valid peremptory challenge under *California Code of Civil Procedure (CCP) §170.6* stripped her of jurisdiction, rendering all orders she issued void ab initio under *People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993).* These void orders formed the foundation for custody modifications, criminal charges, and the coerced plea agreement at issue. This Court's intervention is necessary to restore the integrity of judicial proceedings.

The relief sought is straightforward: (1) enforce the plea agreement as constitutionally required under *Santobello v. New York, 404 U.S. 257 (1971);* (2) allow withdrawal of the plea; or (3) void all lower court orders stemming from Commissioner Ratekin's improper denial of the peremptory challenge.

Evidence that demands relief is equally straightforward: Recorded calls with Deputy District Attorney Balerio, District Attorney Investigator Luis Pena, Attorney Jose Badillo and Andrea Schuck that proves to any reasonable person that

a plea deal did in fact occur and it was breached. And the court record that easily proves that the improper denial of my peremptory challenge and other blatant rules violations of retired Commissioner Patti Ratekin and retired Judge Alknse (to be discussed further in) renders all subsequent orders void including the "criminal" charges *(PC 278.5(a))* of me protecting my son applicable under *PC 278.7*.

The evidence supporting these constitutional claims is extraordinary - consisting not of mere allegations but recorded admissions from state actors themselves. District Attorney Investigator Luis Pena explicitly stated that prosecution was pursued because Appellant had "pissed them off" by exposing corruption and admitted Appellant "would likely win if the case went to trial." Deputy District Attorney Balerio coordinated with private actors to breach constitutionally protected plea promises after securing Appellant's guilty plea. These admissions, coupled with the systematic denial of evidentiary hearings over four years, transform these proceedings into what the Supreme Court warned against in *Brookhart v. Janis, 384 U.S. 1 (1966)*: a "sham" that "would not comport with constitutional guarantees."

This case presents extraordinary constitutional violations, supported by recorded admissions from state actors, including:

A District Attorney Investigator's admission that prosecution was pursued because Appellant "pissed them off" and that Appellant "would likely win if the case went to trial" and "why are we {the District Attorney office} even involved in this case"

A prosecutor's acknowledgment that the plea agreement rested on specific conditions, which were later breached in coordination with private actors.

Appellant's ex-wife's recorded statements confirming the plea agreement's terms and the subsequent strategic breach. The bottom line regarding the terms is that appellant's son was to return home to his father and any reasonable person would come to that conclusion when listening to all the audio recordings.

Appellant respectfully asks this Court to address the district court's failure to consider the substantial evidence he sought to present in support of his claims within his original complaint, his motion to amend and reconsider under Rule 60(b)(3) and his motion for a management conference, early discovery, evidentiary hearing, 3 Judge Panel and to discuss consolidation of a few cases. Despite Appellant's repeated efforts to introduce this evidence through a motion for reconsideration and a separate motion requesting early discovery, an evidentiary hearing, a case management conference, and consolidation of related cases, the district court summarily denied these requests without providing Appellant an opportunity to be heard.

The evidence Appellant sought to present, including recorded conversations and email exchanges, is critical to establishing the Defendants' misconduct and the violation of his constitutional rights. In addition, a simple look at the court record will show Retired Commissioner Ratekins orders are void and the subsequent orders by Retired Judge Alksne are also void for simply pyramiding off of the void orders of Ratekin but also through egregious ADA violations shortly after appellant almost died from a widow maker heart attack.

By refusing to consider this evidence and denying Appellant's requests for further proceedings, the district court deprived him of a meaningful opportunity to develop his claims and to be heard on the merits of his case.

**To remedy this error, Appellant requests that this Court either:**

Grant leave for Appellant to file a motion to supplement the record on appeal under Federal Rule of Appellate Procedure 10(e), so that this Court may consider his new evidence in the first instance; or

Vacate the district court's orders and remand with specific instructions for the district court to hold an evidentiary hearing, allow discovery, evidentiary hearing, 3 Judge Panel, management conference to properly consider Appellant's evidence. The case management conference to consolidate the related cases. There is a related cases section at the end of this brief.

Despite clear and convincing evidence to be reviewed, the district court dismissed Appellant's claims by:

Misconstruing the constitutional nature of prosecutorial plea agreements, ignoring the Supreme Court's mandate that such promises must be fulfilled;

Erroneously concluding that *42 U.S.C. §1983* cannot remedy constitutional violations arising from prosecutorial misconduct; and

Systematically denying evidentiary hearings over four years, preventing the presentation of recorded proof of constitutional violations.

The district court's refusal to address these jurisdictional defects and constitutional violations not only undermines due process but also permits retaliation against protected speech. Federal court intervention is essential to prevent further erosion of constitutional rights and to provide the complete relief required by law.

## OVERARCHING JURISDICTIONAL DEFECT RENDERS ALL SUBSEQUENT ORDERS VOID

### A. Commissioner Ratekin's Improper Denial of a Valid Peremptory Challenge

The foundation of this case lies in an invalid judicial act that stripped subsequent proceedings of legal authority. On February 4, 2021, Commissioner Patti Ratekin

was assigned to Appellant's family court case. That day, the parties gave a verbal stipulation for Commissioner Ratekin to hear the case. Crucially, no orders were made, and no arguments were heard on February 4, 2021, as is irrefutable in the court transcript.

On February 8, 2021, well within the 10-day deadline under *California Code of Civil Procedure (CCP) §170.6(a)(2)*, Appellant filed a timely peremptory challenge to remove Commissioner Ratekin. Not that a reason is needed for the peremptory challenge but there are many shocking ones to choose from. One, Commissioner Ratekin's supervising judge's wife worked with and was close friends with Appellant's ex-wife and coworkers with her and two, shockingly with *zero evidence* suggested placing my/appellants son in a "facility" or "residential home". This created a clear appearance of bias that undermined judicial impartiality, which is foundational to due process under *Catchpole v. Brannon, 36 Cal.App.4th 237 (1995)*.

Under the *California Rules of Court, rule 2.818(c)(3)*, a commissioner may not act as a temporary judge unless the self-represented litigant explicitly agrees to the appointment in writing, after the court explains the terms and conditions of the appointment. The mere verbal stipulation given on February 4, 2021, before the peremptory challenge was filed, does not satisfy this requirement.

Moreover, under well-established California law, a peremptory challenge may be filed at any time before a judicial officer has made any substantive ruling on a contested issue. *Stephens v. Superior Court, 30 Cal.4th 1082 (2002)*. As no orders were made and no arguments were heard before the challenge was filed, the challenge was indisputably timely.

Despite the clear conflict, the proper written notice, and the undeniable timeliness of the challenge, Commissioner Ratekin improperly denied Appellant's peremptory challenge. Under *People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)*, when a timely peremptory challenge is erroneously denied, all subsequent orders by that judicial officer are void ab initio.

Thus, Commissioner Ratekin's refusal to recuse herself upon proper challenge represents a fundamental error that invalidates all later rulings in this case. The verbal stipulation on February 4, 2021 is irrelevant, as it preceded the proper written challenge and did not satisfy the strict requirements of the California Rules of Court. By denying Appellant's valid challenge, Commissioner Ratekin acted without authority, and this Court must intervene to rectify this foundational error.

**B. Legal Effect of Improper Denial**

The improper denial of the *CCP §170.6* challenge had profound jurisdictional consequences under controlling California precedent:

Loss of Jurisdiction: Once the peremptory challenge was improperly denied, Commissioner Ratekin lost jurisdiction to act further on the case. "A judge who continues to preside after being disqualified by a properly filed §170.6 challenge acts without jurisdiction." *(Estate of Eskra, 51 Cal.3d 943, 948 (1991))*.

Void Orders: All orders issued by Commissioner Ratekin after the improper denial of the peremptory challenge are void ab initio. *(People v. Superior Court (Lavi), 4 Cal.4th at 1171)*. Void orders are treated as legal nullities and cannot form the basis for subsequent proceedings.

No Valid Foundation for Derivative Proceedings: Void orders cannot serve as a valid foundation for derivative actions or proceedings. As the court held in *Pacific Inland Bank v. Ainsworth, 41 Cal.App.4th 277, 287 (1995)*, "A void order has no legal effect and is incapable of supporting other actions."

Cascading Voidness of Subsequent Proceedings: The invalidity of these foundational orders infects all subsequent proceedings that rely upon them. As stated in *Bennett v. Wilson, 122 Cal. 509, 513-514 (1898)*, "A void act cannot be legally validated by subsequent acts stemming from it; it remains void."

## C. Implications for the Present Case

The jurisdictional defect caused by the improper denial of the peremptory challenge has far-reaching implications, including:

Custody Modifications Were Void: The custody modifications ordered by Commissioner Ratekin after denying the peremptory challenge were issued without jurisdiction and are void. These orders cannot provide a legal basis for any subsequent proceedings.

While appellant was fighting off the "facility" narrative for his son, which had zero basis in evidence, he had a widow maker heart attack with a 6% survival rate. Within a month and a half of this medical emergency, retired Judge Lorna Alksne, took over the case from now retired Commissioner Patti Ratekin after Ratekin finally recused herself. During the month and a half that Judge Alknse heard the case, she railroaded through four hearings and a trial while appellant was medically incapacitated and ignored all his properly filed ADA requests. Judge Alksne in a malicious and retaliatory manner gave appellant zero custody, zero retirement account and set child support based on fraudulently submitted data provided by opposing counsel, Dave Schulman. This is a related case that will end up in this court to be discussed in the related cases section.

Criminal Charges Under PC §278.5(a) Lack Legal Foundation: The criminal charges for alleged interference with custody under Penal Code §278.5(a) relied entirely on the void custody orders. As a result, these charges lack legal foundation and must be dismissed as derivative of the void orders.

Plea Agreement Is Void: The plea agreement entered into by Appellant was induced by proceedings that relied on void orders. As the fruit of these unlawful proceedings, the plea agreement is itself void. Void agreements cannot form the basis of valid legal outcomes. *(People v. McElwee, 128 Cal.App.4th 1348, 1354 (2005)).*

Complete Relief Requires Unwinding All Proceedings: To fully remedy this jurisdictional defect, all proceedings must be unwound back to the point of the improper denial of the peremptory challenge. Federal intervention is necessary to ensure compliance with constitutional due process requirements and to prevent reliance on void orders.

### D. The District Court's Failure to Address the Jurisdictional Defect

In the original lawsuit, I mainly was only asking for the defendants to honor the plea agreement. With my motion under Rule 60(b)(3) that was denied, I am bringing in other egregious violations of my constitutional civil rights.

The district court failed to address this overarching jurisdictional defect and instead focused narrowly on procedural barriers to §1983 relief. This failure demonstrates why federal intervention is necessary.

*When a judicial officer continues to act after losing jurisdiction through the improper denial of a peremptory challenge, the California Supreme*

*Court requires unwinding all subsequent proceedings back to the point of the error. (People v. Superior Court (Lavi), 4 Cal.4th at 1171).*

To allow void orders to stand would violate the constitutional principles of due process and judicial impartiality, undermining the integrity of the judicial system.

## Conclusion of Introduction

The relief sought is straightforward and compelled by Supreme Court precedent: (1) enforcement of constitutionally protected plea promises under *Santobello*; (2) withdrawal of the coerced plea obtained through manufactured detention and withheld exculpatory evidence; or (3) recognition that Commissioner Ratekin's improper denial of a valid peremptory challenge rendered all subsequent orders *void ab initio under Lavi*. The district court's failure to provide this relief - while simultaneously preventing presentation of conclusive recorded evidence and the trial courts records through systematic denial of hearings - represents an extraordinary departure from fundamental constitutional principles that demands immediate correction.

Commissioner Ratekin's improper denial of Appellant's peremptory challenge under *CCP §170.6* stripped her of jurisdiction to act further in the case. Her subsequent orders are therefore void as a matter of law, and all proceedings that

relied on them are legally invalid. This fundamental jurisdictional defect infects the criminal prosecution and plea agreement at issue, requiring federal intervention to unwind the proceedings and restore Appellant's constitutional rights.

However, even beyond the jurisdictional defect, the constitutional violations at issue are proven through extraordinary, recorded admissions by state actors themselves:

## A. State Actor Admissions Proving Constitutional Violations

### 1. District Attorney Investigator (DAI) Luis Pena explicitly stated on record:

- "The DA should never have taken this case"

- Plaintiff "would likely win if this case went to trial"

- Prosecution was pursued because plaintiff had "pissed them off" - Minor's counsel (Matt Cord) had lined up with opposing counsel (Dave Schulman and Sara Bear) and against child's interests.

### 2. Attorney Jose Badillo confirmed in recorded conversations:

- "The DA knows that you resolved the case based on the conversation she and I had with Andrea"

- If Andrea Schuck was "backpedaling on that, that could be an issue that can be raised" regarding plea withdrawal

- DDA Balerio understood the plea was based on son returning home

**3. Ex-wife Andrea Schuck's recorded statements demonstrate:**

- acknowledgment of the plea agreement terms that Bryce was to return home

- Subsequent coordination with prosecutors to breach agreement as is evident in recordings and emails.

- Including DDA Balerio in emails conditioning performance on dropping appeals

- Strategic breach after securing the plea

**B. District Court's Fundamental Errors**

**The district court's dismissal rests on three critical errors:**

1. It misconstrued the constitutional nature of prosecutorial plea agreements, ignoring the Supreme Court's mandate in *Santobello v. New York* that when a plea "rests in any significant degree on a promise or agreement of the prosecutor...such promise must be fulfilled."

2. It erroneously concluded that §1983 cannot provide relief, despite clear authority that constitutional violations by state actors—particularly prosecutors making and breaching plea promises—fall squarely within §1983's scope.

3. It systematically denied all requests for evidentiary hearings while simultaneously claiming evidence was "well known"—a circular logic that

prevented presentation of recorded proof conclusively establishing both the agreement's existence and its coordinated breach.

The relief sought is straightforward: enforcement of constitutionally protected plea promises that prosecutors used to induce a guilty plea before orchestrating their breach. After holding Appellant in pretrial detention for 90 days based on a manufactured "threat" that DDA Balerio never even charged—while withholding the FBI's assessment finding no credible threat existed—the prosecution coordinated with private actors to violate constitutional rights in retaliation for protected speech exposing corruption.

As DAI Pena's recorded admission that prosecution was pursued because Appellant "pissed them off" confirms, this case presents the very type of retaliation against protected speech that §1983 was designed to remedy. The district court's refusal to even examine this evidence while claiming Appellant has "no good faith basis" for appeal demonstrates precisely why federal court intervention is necessary to prevent further violation of fundamental constitutional rights.

# JURISDICTIONAL STATEMENT

1. District Court Jurisdiction

The district court had federal question jurisdiction under *28 U.S.C. § 1331* and civil rights jurisdiction under *28 U.S.C. § 1343(a)(3)* because this action arises

under *42 U.S.C. § 1983*, alleging violations of constitutional rights by state actors acting under color of law. The complaint alleged specific violations of First Amendment rights (retaliation for protected speech), Fourth Amendment rights (unlawful pretrial detention), Fifth Amendment rights (due process violations in plea agreement), and Fourteenth Amendment rights (parental rights violations).

## 2. Appellate Court Jurisdiction

This Court has jurisdiction under *28 U.S.C. § 1291* because this is an appeal from a final order dismissing the complaint without leave to amend. The district court entered its dismissal order on August 21, 2024, and subsequently denied Plaintiff's motion for reconsideration on November 12, 2024.

## 3. Timeliness of Appeal

The notice of appeal was timely filed on September 23, 2024, within the 30-day period required by *Federal Rule of Appellate Procedure 4(a)(1)(A)*. The filing of a timely motion for reconsideration under *Federal Rule of Civil Procedure 60(b)(3)* on September 10, 2024, extended the time for appeal under *Federal Rule of Appellate Procedure 4(a)(4)*. Following the district court's November 12, 2024 denial of reconsideration, this amended notice of appeal was timely filed within the period prescribed by *Federal Rule of Appellate Procedure 4(a)(4)(B)(ii)*.

## 4. Finality of Judgment

The district court's August 21, 2024 order dismissing the complaint without leave to amend is a final, appealable order that disposed of all parties' claims, as required for appellate jurisdiction under *28 U.S.C. § 1291*.

The Court's jurisdiction is further supported by a clear line of Ninth Circuit precedent establishing that constitutional violations by state actors acting under color of law present federal questions warranting Article III jurisdiction. See *Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010)* (holding that federal courts have jurisdiction over §1983 claims alleging constitutional violations by state officials). The recorded admissions by District Attorney Investigator Pena and Deputy District Attorney Balerio demonstrate direct state action that violated clearly established constitutional rights.

Additionally, jurisdiction is proper under the exception to Younger abstention for cases involving bad faith prosecution or extraordinary circumstances where state remedies are inadequate. See *Arevalo v. Hennessy, 882 F.3d 763, 766 (9th Cir. 2018)* (finding Younger abstention inappropriate where plaintiff demonstrates prosecutorial bad faith). Here, DAI Pena's recorded admission that prosecution was pursued because Appellant had "pissed them off" conclusively establishes retaliatory intent warranting federal intervention.

The Court's jurisdiction is further supported by a clear line of Ninth Circuit precedent establishing that constitutional violations by state actors acting under color of law present federal questions warranting Article III jurisdiction. See *Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010)* (holding that federal courts have jurisdiction over §1983 claims alleging constitutional violations by state officials). The recorded admissions by District Attorney Investigator Pena and Deputy District Attorney Balerio demonstrate direct state action that violated clearly established constitutional rights.

Additionally, jurisdiction is proper under the exception to Younger abstention for cases involving bad faith prosecution or extraordinary circumstances where state remedies are inadequate. See *Arevalo v. Hennessy, 882 F.3d 763, 766 (9th Cir. 2018)* (finding Younger abstention inappropriate where plaintiff demonstrates prosecutorial bad faith). Here, DAI Pena's recorded admission that prosecution was pursued because Appellant had "pissed them off" conclusively establishes retaliatory intent warranting federal intervention.

# STATEMENT OF ISSUES

1. Whether the district court erred in dismissing a §1983 claim supported by multiple recorded admissions from state actors themselves proving retaliatory prosecution and constitutional violations, including:

a. District Attorney Investigator Pena's explicit statements that:

- "The DA should never have taken this case"

- Plaintiff "would likely win if the case went to trial"

- Prosecution pursued because Plaintiff had "pissed them off"

- Minor's counsel (Matt Cord) "lined up" against child's interests with opposing counsel (Dave Schulman and Sara Bear)

- "Family court lawyers pushing prosecution"

b. Attorney Badillo's recorded confirmation that:

- "The DA knows that you resolved the case based on the conversation"

- DDA Balerio understood plea was based on son returning home

- Backpedaling on agreement could justify plea withdrawal

2. Whether the district court erred in claiming §1983 cannot remedy a prosecutor's breach of plea promises where:

a. The Supreme Court mandates in Santobello v. New York that when a plea "rests in any significant degree on a promise or agreement of the prosecutor...such promise must be fulfilled"

b. Multiple recordings prove both:

- The existence of constitutionally protected promises

- The coordinated breach of those promises

- Strategic timing of breach after securing plea

3. Whether the district court violated due process by:

   a. Systematically denying every request for an evidentiary hearing over four years while simultaneously claiming evidence was "well known"

   b. Refusing to examine recorded proof of:

   - DDA Balerio's withholding of FBI threat assessment

   - Use of manufactured "threat" for pretrial detention

   - Coordination between prosecutors and private actors

   - Strategic breach of plea agreement

4. Whether the district court erred in revoking IFP status when:

   a. Multiple recordings provide irrefutable evidence of:

   - Constitutional violations by state actors

   - Retaliatory prosecution

   - Coordinated breach of plea agreement

- Systematic denial of due process

b. The timing suggests retaliation:

- Revocation only after Ninth Circuit referral

- Following presentation of substantial evidence

- Despite unchanged financial circumstances

- In pattern of procedural barriers

5. Whether the systematic denial of hearings violates:

a. Due Process rights under:

- *Armstrong v. Manzo* requiring meaningful hearing opportunity

- *Brady v. Maryland* regarding withheld evidence

- *Santobello v. New York* on plea agreement enforcement

b. ADA protections through:

- Denial of remote hearings after documented heart attack

- Refusal to accommodate medical crisis

- Default judgments during incapacity

- Pattern of access barriers

6. Whether fraud upon the court exists where:

  a. Evidence proves coordinated misconduct:

    - Manufactured detention pretext

    - Strategic withholding of exculpatory evidence

    - Joint action between state and private actors

    - Pattern of constitutional violations

  b. Court actions suggest institutional protection:

    - Denial of all evidentiary hearings

    - Refusal to examine recorded proof

    - Use of procedural barriers

    - Protection of misconduct

7. Whether Commissioner Ratekin's improper denial of a valid peremptory challenge rendered all subsequent orders void ab initio where:

a. The challenge was properly filed under *CCP §170.6* with:

- Clear conflict (supervising judge's wife worked with/friends with opposing party)

- Timely submission

- Proper grounds established

- No valid basis for denial

b. Under *People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993)*:

- Improper denial stripped Ratekin of jurisdiction

- All subsequent orders void from inception

- Default judgment and derivative orders lack legal foundation

- Criminal charges based on void orders must fall

c. *Estate of Eskra (1991) 51 Cal.3d 943* requires:

- Complete unwinding of void proceedings

- Return to status quo before improper denial

- Nullification of all orders after jurisdiction lost

- Relief from criminal charges stemming from void orders

# STATEMENT OF THE CASE

A. **(February 2021)** Initial Jurisdictional Defect

Commissioner Ratekin's improper denial of valid peremptory challenge

Clear conflict with supervising judge's wife working with opposing party.

With zero evidence, suggested a "facility" or "residential home" for my son and ultimately ignored all the significant evidence that mandated otherwise.

All subsequent orders void under Lavi.

The foundation of this case lies in an invalid judicial act that stripped subsequent proceedings of legal authority. In February 2021, retired Commissioner Patti Ratekin took over Plaintiff's family court case. Upon learning that Ratekin's supervising judge's wife worked with and was friends with Defendant Schuck at the same school, Plaintiff filed a timely peremptory challenge under *California Code of Civil Procedure §170.6.* Despite the clear conflict and proper filing, Ratekin improperly denied the challenge and continued to preside over the case. Under *People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1993)*, this improper denial rendered all her subsequent orders void ab initio.

B. **(February - October 2021)** Chain of Void Orders

Operating without jurisdiction, Ratekin proceeded to:

Strip Plaintiff of parental rights without evidence

Attempt to place Plaintiff's son in a "residential facility" without supporting evidence;

1. Ignore all professional opinions opposing facility placement

2. Appoint minor's counsel who endorsed facility placement after meeting child only twice

3. Issue orders forming the basis for subsequent criminal charges

**October 7, 2021** – Retired JUDGE ALKSNE'S VIOLATIONS OF THE ADA AND DUE PROCESS

On **September 30, 2021**, Appellant suffered a severe heart attack that left him medically incapacitated. Just days later, on **October 4, 2021**, Commissioner Ratekin finally recused herself from the case and on that day she threw in a sucker punch of an order for supervised visitation based on a witness affidavit who claimed fraud of my son's psychologist. This order is so absurd it should be grounds for Ratekin to be disbarred! The case was then **assigned to Judge Lorna Alksne on October 7, 2021**.

Despite Appellant's recent hospitalization and ongoing medical needs, Judge Alksne immediately began rushing forward with proceedings. Over the next six weeks, she railroaded through four hearings and a trial without accommodating Appellant's disability and medical condition and taking full child custody from appellant with nothing more than an absurd malicious retaliation order for supervised visitation that Ratekin made the day she recused from the case and

based on a witness of mine who was calling out fraud upon the court of the child psychologist!

Appellant repeatedly requested accommodations under the Americans with Disabilities Act (ADA), including the ability to participate remotely and continuances to allow for his recovery. These requests were entirely reasonable, especially in light of the COVID-19 pandemic and Appellant's recent heart attack. However, Judge Alksne denied these requests without any meaningful consideration, effectively barring Appellant from participating in his own case and having equal access to the court.

The ADA prohibits discrimination by public entities, including courts, and requires reasonable accommodations for individuals with disabilities. *42 U.S.C. § 12132*. By denying Appellant's requests for accommodation and pushing forward with proceedings despite his medical incapacity, Judge Alksne violated the ADA and denied Appellant equal access to the courts. This conduct also violated Appellant's fundamental due process right to be heard, as he was given no meaningful opportunity to participate in the hearings and trial that so critically impacted his rights. See *Mathews v. Eldridge, 424 U.S. 319, 333 (1976)* (due process requires "the opportunity to be heard at a meaningful time and in a meaningful manner").

The prejudice to Appellant from these violations cannot be overstated. Judge Alksne's actions, coming on the heels of Commissioner Ratekin's misconduct and at a time when Appellant was struggling with severe health issues, demonstrates a disturbing disregard for Appellant's rights and well-being. The fact that these proceedings built directly upon Commissioner Ratekin's void orders further underscores their illegitimacy.

These ADA and due process violations form a critical part of the foundation of fraud and misconduct upon which Appellant's later criminal prosecution was built. By rushing to enter orders against Appellant without allowing him to legally contest the proceedings, Judge Alksne and Commissioner Ratekin created the very conditions that the prosecution would later exploit in bringing criminal charges and coercing a plea. These violations cannot be viewed in isolation but must be understood as integral components of the larger scheme to deprive Appellant of his rights at every turn.

C. **(2019-2021)** Prior Custody Arrangement and Context

For context, prior to Ratekin's void orders, custody had been stably established at 50/50 between Plaintiff and Defendant Schuck for nearly two years, as determined by:

1. Two different judges

2. Three family court services reports

3. Two child interviews

4. Initial 60% custody to Plaintiff to ease transition given his role as stay-at-home father

D. **(October 2021 - April 2023)** Retaliatory Prosecution and Coerced Plea Agreement

1. No action taken for over year given valid *PC 278.7* defense

2. Prosecution initiated only after whistleblower complaint

3. DAI Pena admits retaliatory motive on recording

In **October 2021**, facing imminent threat of his son being placed in a facility without evidence, Plaintiff took emergency custody and immediately notified all relevant authorities - including the District Attorney's office, police, and Child Protective Services. For over a year, the DA took no action, recognizing Plaintiff's valid defense under *California Penal Code §278.7*. There is an email from DAI Steven Mcintosh stating that Andrea Schuck had agreed to "give" custody of Bryce to Rob Emert!

As District Attorney Investigator Luis Pena explicitly stated in a recorded conversation: "The DA should never have taken this case" and if it went to trial, Plaintiff "likely would win." Pena further admitted that prosecution was only

pursued because Plaintiff had "pissed them off" by exposing corruption and that minor's counsel Matt Cord had lined up with opposing counsel "against the child's interests."

However, after Plaintiff filed a public corruption complaint, the prosecution retaliated by manufacturing a "threat" to justify 90 days of pretrial detention without bail. Deputy District Attorney Dawn Balerio withheld:

- The FBI's threat assessment concluding no credible threat existed

- The full context of the 30-minute FBI call showing de-escalation intent

- Her recorded interview with Plaintiff's son supporting PC 278.7 defense

- DAI Pena's exculpatory statements about improper prosecution

E. **(April 2023 - Present)** Coordinated Breach of Constitutional Plea Agreement

1. 90-day detention based on manufactured "threat"

2. FBI assessment finding no credible threat withheld

3. Plea agreement documented through multiple recordings

4. Strategic breach after securing guilty plea

To secure release from this coercive detention, Plaintiff accepted a plea agreement that included specific provisions regarding custody arrangements. Multiple

recorded conversations prove both the agreement's existence and its coordinated breach:

1. Attorney Jose Badillo confirmed on recording:

- "The DA knows that you resolved the case based on the conversation she and I had with Andrea"

- If Schuck was "backpedaling on that, that could be an issue that can be raised" regarding plea withdrawal

- DDA Balerio understood plea was based on son returning home

2. Defendant Schuck's recorded conversations show:

- acknowledgment of agreement terms that Bryce was to return home per his wishes and best interests

- Later coordination with prosecutors to breach agreement

- Including DDA Balerio in emails conditioning performance on dropping appeals

F. District Court Proceedings and Systematic Denial of Due Process

Despite this substantial evidence, spanning multiple recorded admissions by state actors themselves, the district court:

- Systematically denied every request for an evidentiary hearing over four years

- Refused to examine recorded proof of constitutional violations

- Claimed evidence was "well known" while preventing its presentation

- Used procedural barriers to block evidence from reaching jury

- Revoked IFP status after Ninth Circuit referral despite unchanged circumstances

This pattern of constitutional violations, coupled with the court's refusal to consider documented evidence of prosecutorial misconduct, has transformed these proceedings into what the Supreme Court warned against in *Brookhart v. Janis, 384 U.S. 1 (1966)*: a "sham" that fails to "comport with constitutional guarantees."

G. Pattern of Manifest Injustice Requiring Complete Relief

The improper denial of Plaintiff's peremptory challenge under CCP §170.6 tainted all subsequent proceedings, rendering them void ab initio under established California law. This foundational error led to a cascade of constitutional violations, including the loss of parental rights, retaliatory prosecution, and due process violations. Complete relief is required to unwind the harm caused by these void orders under *Lavi and Estate of Eskra*.

1. Void Ab Initio Orders

- Ratekin lacked jurisdiction after improper denial of challenge

- Her supervising judge's wife worked with/was friends with opposing party

- Clear conflict created institutional bias prohibited by *Tumey v. Ohio*

- All subsequent orders void under *Estate of Eskra (1991) 51 Cal.3d 943*

2. Coordinated Effort to Prevent Evidence Presentation

- Four years without basic evidentiary hearing

- Systematic denial of discovery requests

- Blocking of witness testimony

- Pattern of procedural barriers

3. DAI Pena's Recorded Admission Confirms:

"Minor's counsel Matt Cord simply lined up with Dave Schulman and NOT in my son's best interests" to "put something together against me" because I "pissed them off"

As the Ninth Circuit held in *Dixon v. Comm'r, 316 F.3d 1041, 1046 (9th Cir. 2003)*, a court's "intentional failure to consider material evidence can constitute fraud on the court." Here, the systematic denial of hearings while protecting coordinated misconduct demands the precise remedy contemplated by the Supreme Court in *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*: complete relief from void orders obtained through fraud upon the court.

The attempt to exploit Plaintiff's pro se status through manufactured detention, breach of constitutional plea promises, and denial of basic due process represents precisely the kind of manifest injustice that federal courts have both the power and duty to remedy. As Justice Douglas observed in *McNabb v. United States, 318 U.S. 332, 347 (1943)*, courts must act decisively when faced with systematic misconduct that "does not comport with the standards of justice."

The evidence conclusively establishes not mere mistakes but a coordinated scheme to prevent a pro se litigant from presenting substantial proof of constitutional violations. Justice demands nothing less than complete relief - restoring Plaintiff's parental rights and granting the fair trial systematically denied for nearly four years.

# SUMMARY OF ARGUMENT

**I. The district court fundamentally misapprehended both the constitutional nature of prosecutorial plea agreements and the scope of relief available under §1983.**

Supreme Court precedent, including *Santobello v. New York*, unequivocally requires enforcement of promises made by prosecutors when those promises induce guilty pleas. The Constitution demands that such promises, once relied upon by a defendant, be fulfilled. In this case, multiple recorded statements from

state actors, including District Attorney Investigator Luis Pena and Attorney Jose Badillo, provide direct evidence that Plaintiff's plea agreement was premised on specific assurances regarding custody arrangements. Pena admitted the prosecution was pursued because Plaintiff had "pissed them off," while Badillo confirmed the District Attorney's Office was fully aware that the plea was "resolved" based on these assurances. DAI Luis Pena basically said in a recorded call about 30 times that the case against me is a farce and a sham. He withheld this call from discovery but provided the others we had. The coordinated breach of these promises—after securing Plaintiff's guilty plea—constitutes not only a violation of Santobello but also actionable misconduct under §1983. The district court's refusal to enforce these constitutionally protected promises reflects a grave misapprehension of the law governing plea agreements and the relief available for their breach.

## II. The district court's handling of prosecutorial misconduct demonstrates an extraordinary departure from constitutional principles.

Deputy District Attorney Dawn Balerio's withholding of exculpatory evidence—including the FBI's threat assessment concluding there was no credible threat—is a textbook Brady violation. This evidence, which directly undermined the prosecution's basis for Plaintiff's pretrial detention, was deliberately concealed, depriving Plaintiff of a fair opportunity to challenge the charges against him. The

district court, rather than addressing this clear violation, systematically denied Plaintiff's repeated requests for evidentiary hearings over four years. By simultaneously barring the presentation of evidence while claiming the evidence was "well known," the district court transformed these proceedings into a *"sham" trial, precisely the kind condemned by the Supreme Court in Brookhart v. Janis.* Such conduct undermines the integrity of the judicial process and demands reversal.

## III. The evidence conclusively establishes that Plaintiff was the victim of retaliation for protected speech, a violation of the First Amendment.

Retaliatory prosecution violates the Constitution when it is motivated by a defendant's exercise of protected speech. Here, the recorded statements of DAI Pena provide unequivocal proof that the prosecution was pursued not on the merits but out of retaliation. Pena admitted that the District Attorney's Office decided to proceed because Plaintiff had "pissed them off" by exposing corruption. Further, the timing of the prosecution—escalating only after Plaintiff filed a whistleblowing complaint—demonstrates a clear retaliatory motive. Under established precedent, such retaliation is actionable under §1983. The district court's failure to recognize the constitutional dimensions of this pattern of retaliation represents a fundamental error.

**IV. The court's handling of Plaintiff's medical crisis constitutes a violation of the Americans with Disabilities Act (ADA) and due process.**

As previously mentioned, there are additional issues I have raised in this brief allowed under my motion under Rule 60(b)(3).

*Title II of the ADA*, as interpreted by the Supreme Court in *Tennessee v. Lane*, protects the fundamental right of access to courts, including accommodations for individuals with disabilities. Despite Plaintiff's documented heart attack and medical incapacity, the lower court refused to provide reasonable accommodations, such as remote hearings or continuances, and instead proceeded with critical hearings and a trial while Plaintiff was incapacitated. This refusal not only violated the ADA's mandate to ensure equal access to judicial proceedings but also denied Plaintiff his right to due process. The systematic denial of accommodations, coupled with the court's procedural barriers, underscores the pervasive unfairness of these proceedings.

**V. The timing and circumstances of the court's revocation of Plaintiff's in forma pauperis (IFP) status strongly suggest retaliatory intent rather than legitimate application of legal standards.**

The district court revoked Plaintiff's IFP status only after the Ninth Circuit referred the case back for further proceedings and after Plaintiff presented substantial

evidence of constitutional violations. This timing, combined with the court's failure to articulate how claims supported by recorded admissions of state actors could be deemed "wholly frivolous," underscores the retaliatory nature of this decision. Revocation of IFP status under these circumstances appears to be yet another procedural barrier designed to impede Plaintiff's access to justice. This retaliatory conduct is particularly egregious given the unchanged financial circumstances that had previously justified IFP status.

## VI. The cumulative effect of these constitutional violations and procedural barriers demands reversal and full relief.

The improper denial of Plaintiff's peremptory challenge under CCP §170.6 tainted all subsequent proceedings, rendering them void ab initio under California law. This foundational error cascaded into a series of constitutional violations, including retaliatory prosecution, the coordinated breach of a constitutionally protected plea agreement, Brady violations, and ADA violations. Taken together, these actions demonstrate not isolated errors but a systematic effort to deprive Plaintiff of his constitutional rights. Federal courts have both the power and the duty to remedy such manifest injustice. Plaintiff seeks complete relief, including restoration of parental rights, enforcement of the plea agreement, reversal of void orders, and a fair trial that comports with constitutional guarantees. The additional items not

included under the original lawsuit can be added under my motion for reconsideration and under Rule 60(b)(3).

# STANDARD OF REVIEW

The appropriate standard of review depends on the specific rulings being challenged in this appeal. The following standards apply:

**1. Dismissal of the Complaint Without Leave to Amend**

The district court's dismissal of the complaint under *Rule 12(b)(6)* is reviewed de novo. This means the appellate court reviews the decision without deference to the district court's findings. See *Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1040 (9th Cir. 2011)*. Under this standard, all factual allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016)*.

When a dismissal is without leave to amend, the denial of leave is reviewed for abuse of discretion. However, dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004)*. This is particularly relevant where substantial evidence supports the viability of constitutional claims and pro se pleadings must be liberally construed. *Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)*.

## 2. *Rule 60(b)(3)* Motion for Reconsideration Based on Fraud Upon the Court

The denial of a *Rule 60(b)(3)* motion is reviewed for abuse of discretion. See *De Saracho v. Custom Food Mach., Inc., 206 F.3d 874, 880 (9th Cir. 2000).* However, the district court's discretion is more limited when substantial evidence of fraud on the court is presented. In such cases, the appellate court examines whether the conduct at issue "harmed the integrity of the judicial process." *Dixon v. Comm'r, 316 F.3d 1041, 1046 (9th Cir. 2003).*

Where fraud on the court undermines the fairness of the proceedings, appellate courts apply heightened scrutiny to ensure that fundamental constitutional protections are upheld. *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944).*

## 3. Revocation of In Forma Pauperis (IFP) Status

The district court's revocation of in forma pauperis status is reviewed for abuse of discretion. *Hooker v. American Airlines, 302 F.3d 1091, 1092 (9th Cir. 2002).* However, revocation is appropriate only where the appeal is deemed "wholly frivolous." Id. Notably, the presence of even a single non-frivolous issue is sufficient to preserve IFP status.

In the context of pro se litigants, the Ninth Circuit requires courts to construe pleadings liberally and resolve doubts in favor of the litigant, particularly where

substantial constitutional claims are raised. *Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).*

## 4. Overall Considerations for Pro Se Litigants

Where a pro se litigant raises constitutional claims supported by substantial evidence, courts are required to liberally construe the pleadings and afford the litigant the benefit of any doubt. *Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010).* This liberal construction is especially critical where, as here, systemic denial of evidentiary hearings has prevented the full presentation of evidence. Courts must ensure that procedural barriers do not unfairly disadvantage a pro se litigant, particularly in cases involving allegations of constitutional violations.

When reviewing dismissal of civil rights claims brought by pro se plaintiffs, the Ninth Circuit applies particularly careful scrutiny. See *Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)* (holding that pro se civil rights plaintiffs must be given special latitude to develop their claims). This heightened standard of review is especially critical where, as here, the plaintiff presents substantial evidence of constitutional violations but has been systematically denied any opportunity for an evidentiary hearing.

Moreover, when constitutional claims are supported by recorded admissions from state actors, the court must accept those factual allegations as true and draw all

reasonable inferences in favor of the plaintiff. See *Hyun Ju Park v. City & Cnty. of Honolulu, 952 F.3d 1136, 1139 (9th Cir. 2020)*. The district court's failure to accept Appellant's well-pleaded facts regarding the plea agreement and its breach, despite supporting recordings, constitutes reversible error under this standard.

# ARGUMENT

## I. THE DISTRICT COURT ERRED IN CONCLUDING THAT §1983 CANNOT PROVIDE RELIEF FOR A PROSECUTOR'S BREACH OF PLEA PROMISES

A. The Supreme Court Established Constitutional Protection of Plea Agreements in Santobello.

The Supreme Court has long recognized that plea agreements are not mere contracts but are imbued with constitutional protections. In *Santobello v. New York*, the Court held that when a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *404 U.S. 257, 262 (1971)*. This principle ensures that prosecutors, as state actors, are bound by the Constitution when negotiating and fulfilling plea agreements.

Importantly, the Ninth Circuit has clarified that these protections apply even when the promises are not formally documented. In *United States v. Garcia-Beltran*, the court held that "a guilty plea induced by the prosecutor's promise must be enforced by the court regardless of whether the promise was made part of the record at the time the plea was entered." *443 F.3d 1126, 1130 (9th Cir. 2006)*. Thus, the district court's apparent conclusion that §1983 cannot provide relief for breaches of prosecutorial promises ignores both the constitutional dimension of plea agreements and the established precedent requiring enforcement of such promises.

B. Substantial Evidence Proves Both the Agreement and Its Coordinated Breach

Plaintiff has presented overwhelming evidence, far exceeding mere allegations, that the plea agreement existed and that state actors, in coordination with Defendant Schuck, orchestrated its breach. This evidence includes:

Attorney Jose Badillo's Recorded Admissions

 Attorney Badillo, in recorded conversations, confirmed the plea agreement's existence and acknowledged that the District Attorney's Office was fully aware that Plaintiff's guilty plea was predicated on specific promises. Badillo stated: "The DA knows that you resolved the case based on the conversation she and I had with Andrea" and confirmed that Schuck's later "backpedaling" on the agreement could

form the basis for a plea withdrawal. These statements directly establish the agreement's existence and the prosecutorial awareness of its terms.

Defendant Schuck's Recorded Acknowledgments

Prior to the plea, Defendant Schuck repeatedly confirmed the agreement's terms regarding custody arrangements. However, after the plea was secured, Schuck coordinated with prosecutors to breach those terms, demonstrating a clear pattern of bad faith and retaliatory intent.

District Attorney Investigator Pena's Admissions

In recorded conversations, DAI Luis Pena admitted that "the DA should never have taken this case" and acknowledged that Plaintiff "would likely win" at trial. These statements not only corroborate the impropriety of the prosecution but also underscore the coercive nature of the plea agreement. Such evidence demonstrates that the breach was not accidental but part of a coordinated effort to undermine Plaintiff's constitutional rights.

## II. THE DISTRICT COURT'S REFUSAL TO EXAMINE THIS EVIDENCE VIOLATES SUPREME COURT PRECEDENT REQUIRING REVIEW OF SUBSTANTIAL CLAIMS

The Supreme Court has held that when a defendant presents "substantial evidence" that a plea was improperly induced, he is entitled to "careful consideration of his

claim." *Blackledge v. Allison, 431 U.S. 63, 74 (1977)*. Plaintiff's evidence—including recorded admissions by state actors and private parties—far exceeds the threshold of substantial evidence. Yet, the district court systematically refused to grant even a minimal evidentiary hearing. This refusal to examine key evidence while simultaneously dismissing the claims reflects a fundamental departure from the Supreme Court's mandate in Blackledge and violates Plaintiff's constitutional right to due process.

While there are newly added issues not presented in the original lawsuit, they can be added here due to my denied motion for reconsideration under Rule 60(b)(3).

## III. THE DISTRICT COURT'S GROUNDS FOR DISMISSAL REST ON FUNDAMENTAL MISAPPREHENSIONS OF LAW AND EVIDENCE

A. Deputy District Attorney Balerio's Constitutional Violations Are Clearly Alleged

The complaint and supporting evidence clearly allege constitutional violations arising from DDA Balerio's misconduct, including:

Making and Breaching Plea Promises as a State Actor: Balerio's promises to Plaintiff induced his guilty plea, and those promises carried constitutional weight under Santobello.

Coordinating the Breach After Securing the Plea: Evidence demonstrates that Balerio worked with Defendant Schuck to breach the agreement, violating Plaintiff's due process rights and undermining the plea's integrity.

Withholding Exculpatory Evidence: Balerio concealed critical evidence, including the FBI threat assessment and recorded statements supporting Plaintiff's defense, in violation of *Brady v. Maryland, 373 U.S. 83 (1963)*.

District Attorney Investigator had an approximately three hour call with appellant that both he and DDA Balerio withheld where DAI Luis Pena essentially said more than 30 times that this case against appellant is a farce and a sham.

The prosecution's withholding of exculpatory evidence presents a particularly egregious Brady violation that fundamentally undermined the fairness of these proceedings. As the Supreme Court clarified in *Kyles v. Whitley, 514 U.S. 419, 437 (1995)*, prosecutors must disclose evidence known to any government agent, including law enforcement. Here, DDA Balerio withheld three critical pieces of exculpatory evidence:

The FBI threat assessment concluding no credible threat existed

The full context of the 30-minute call showing de-escalation intent

Her recorded interview with Appellant's son supporting the PC 278.7 defense

This systematic suppression of evidence that would have negated both the basis for detention and the underlying charges demonstrates the type of calculated misconduct that mandates relief under Brady and its progeny. See *United States v. Agurs, 427 U.S. 97, 111 (1976)* (emphasizing prosecutors' duty to disclose evidence undermining their theory of prosecution).

B. Coordination Between Private and State Actors Establishes Actionable Conduct Under §1983

The evidence also demonstrates that Defendant Schuck, a private party, acted in concert with state actors, making her conduct actionable under §1983. The Supreme Court has held that private parties may be held liable under §1983 where they engage in "joint activity" with state officials. *Dennis v. Sparks, 449 U.S. 24, 27–28 (1980)*. Here, Schuck's coordination with prosecutors in negotiating the plea terms and breaching the agreement constitutes precisely the kind of joint activity prohibited by the Constitution.

C. The Relief Sought Falls Squarely Within §1983's Scope

The relief Plaintiff seeks—enforcement of the plea agreement and redress for constitutional violations—falls squarely within the scope of §1983. The breach of the plea agreement implicates fundamental due process rights, and §1983 provides an appropriate vehicle for addressing such violations. Courts have consistently

upheld §1983 as a means of remedying constitutional violations arising from state actor misconduct. See *Mabry v. Johnson, 467 U.S. 504, 509 (1984)* (recognizing that breach of plea agreements implicates constitutional rights).

## IV. THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S COMPLAINT WITHOUT LEAVE TO AMEND

Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1061 (9th Cir. 2004).* This standard is especially critical for pro se litigants, whose pleadings must be liberally construed and amended where possible. *Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015).* Here, Plaintiff presented substantial evidence supporting his claims and identified specific factual allegations that could be further developed through amendment. The district court's refusal to allow amendment reflects both procedural unfairness and a misapplication of well-established precedent.

## V. THE DISTRICT COURT ERRED IN REVOKING PLAINTIFF'S IFP STATUS

The district court's revocation of Plaintiff's in forma pauperis status was improper. Under *Hooker v. American Airlines, 302 F.3d 1091, 1092 (9th Cir. 2002),* IFP status may only be revoked where the appeal is "wholly frivolous." The presence

of multiple non-frivolous issues, including substantial constitutional claims supported by recorded evidence, precludes any finding of frivolity. The court's failure to explain how Plaintiff's claims could be deemed frivolous—despite their grounding in constitutional law and supported by substantial evidence—indicates that the revocation was retaliatory rather than based on legitimate legal standards.

## VI. THE DISTRICT COURT'S PROCEDURAL HANDLING DENIED PLAINTIFF A FAIR OPPORTUNITY TO PURSUE HIS CLAIMS

As a pro se litigant, Plaintiff was entitled to procedural protections ensuring a fair opportunity to present his case. The district court's systematic denial of evidentiary hearings, refusal to grant leave to amend, and revocation of IFP status collectively deprived Plaintiff of access to justice. This pattern of procedural unfairness, particularly in a case involving substantial constitutional claims, violates due process and undermines public confidence in the judicial system.

The district court's rulings rest on fundamental errors of law and fact, resulting in the denial of Plaintiff's constitutional rights. This Court should reverse the dismissal of Plaintiff's complaint, restore IFP status, and remand for further proceedings, including an evidentiary hearing to fully examine the substantial evidence presented. In addition, declare all orders void after Ratekins improperly

denied peremptory challenge which would bring the trial court simply back to granting appellant a fair trial where he has time to present his case

# CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court:

1. Reverse the district court's dismissal and remand with instructions to enforce the constitutionally protected plea agreement;

2. Vacate the district court's order denying Appellant's Rule 60(b)(3) motion and remand with instructions to fully consider the evidence of fraud and to hold an evidentiary hearing on these critical issues;

3. Declare all orders entered by Commissioner Ratekin void after her improper denial of Appellant's peremptory challenge;

4. Restore Appellant's IFP status, ensuring access to continued review of his claims;

5. Grant leave for Appellant to file a motion to supplement the record on appeal under Federal Rule of Appellate Procedure 10(e), allowing this Court to consider Appellant's new evidence of fraud, prosecutorial misconduct, and constitutional violations; or alternatively, remand with specific instructions for the district court to

hold an evidentiary hearing, allow discovery, and properly consider Appellant's

evidence, ensuring that his claims are fully and fairly adjudicated;

6. Provide such other relief as the Court deems just and proper to remedy these

    extraordinary violations of Appellant's constitutional rights, including a case

    management conference to consolidate the related cases and to discuss how the

    Court would like to review the extensive evidence.

The district court's failure to consider Appellant's substantial new evidence, despite

his repeated efforts to present it through post-dismissal motions, constitutes a

fundamental denial of due process. This error compounds the already egregious

constitutional violations at the heart of this case, underscoring the need for this

Court's intervention.

Whether by allowing supplementation of the record or by remanding for further

proceedings, this Court has the power and the duty to ensure that Appellant's

claims are properly heard and that the grave injustices he has suffered are

remedied. The integrity of our judicial system depends on the vigilance of courts in

correcting such abuses and in vindicating the rights of those wronged by official

misconduct.

By granting the requested relief, this Court will send a clear message that the

Constitution's guarantees of due process and fair dealing apply with full force to

the plea bargaining process, and that violations of these sacred rights will not be tolerated. It will reaffirm the fundamental principle that no one, not even those wielding the awesome power of the state, is above the law.

Appellant has fought tirelessly to bring the truth to light and to seek justice for himself and his family. He now turns to this Court as the last bulwark against the fraud and corruption that have infected every level of his case. He respectfully implores this Court to answer the call and to provide the full measure of relief necessary to right these grievous wrongs.


Dated: December 2, 2024

*Rob Emert*

Robert Emert, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328

robemert@msn.com

# STATEMENT OF RELATED CASES

The following related cases arise from the same series of events, demonstrating a systematic pattern of constitutional violations and coordinated misconduct that has denied Appellant any meaningful hearing for over four years and no evidentiary hearing:

**Emert v. San Diego Board of Supervisors, No. 3:24-CV-00671-JO-MSB (S.D. Cal.)** Civil rights action challenging unlawful incarceration and the use of manufactured threats to coerce a plea agreement. Currently pending in district court.

**In re Emert, No. S284407 (Cal. Supreme Court) Habeas corpus** petition seeking dismissal of criminal charges brought in retaliation for Appellant's protected conduct under California Penal Code §278.7. The charges stem from Appellant protecting his son whom he primarily raised, only to face prosecution for exercising legal parental rights.

**Emert v. Department of Child Support Services, No. 24-CV-02072-CAB-JLB (S.D. Cal.)** Federal removal action challenging DCSS proceedings that rely on void orders stemming from Commissioner Ratekin's improper denial of a valid peremptory challenge.

**Emert v. Schuck, et al., No. 24-5856 (9th Cir.)** Appeal challenging breach of constitutionally protected plea promises, supported by recorded admissions from state actors confirming both the agreement's existence and its coordinated breach.

**Emert v. Superior Court, No. 24-6057 (9th Cir.)** Appeal addressing systematic ADA violations and fraud upon the court through denial of accommodations after documented heart attack and coordinated effort to prevent evidence presentation.

**Emert v. Superior Court, No. 24-5967 (U.S. Supreme Court)** Petition challenging coordinated effort to declare Appellant vexatious/frivolous before allowing any meaningful hearing over four years, demonstrating systematic denial of due process.

Appellant intends to file a formal motion to consolidate these interrelated cases in the coming weeks. That motion will detail how these cases expose systemic corruption where family court insiders use the criminal justice system to retaliate against parents who challenge misconduct. The extensive audio recordings, emails,

and documentation provide irrefutable evidence of fraud upon the court that demands federal intervention.

To prevent inconsistent rulings and promote judicial economy, Appellant respectfully requests that this Court refrain from taking substantive action on the pending Ninth Circuit appeals until the consolidation motion can be properly considered. These cases collectively demonstrate not merely individual due process violations, but a coordinated effort to deny constitutional rights through systematic abuse of judicial process.

The interrelated nature of these cases demonstrates a systematic pattern of constitutional violations that would be most efficiently addressed through consolidation. As the Ninth Circuit recognized in *Investors Research Co. v. United States District Court, 877 F.2d 777 (9th Cir. 1989)*, consolidation is particularly appropriate where cases share common questions of law and fact and arise from the same underlying conduct.

The benefits of consolidation here include:

1. Prevention of inconsistent rulings

2. Efficient resolution of overlapping constitutional claims

3. Comprehensive examination of systematic misconduct

4. Conservation of judicial resources

5.  Full development of the factual record

December 3, 2024

Respectfully submitted,

*Rob Emert*

Robert Emert

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g) and Ninth Circuit Rule 32-1, I certify that this brief:

1. This brief contains 11,897 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: December 2, 2024

Robert Emert

*Rob Emert*

Robert Emert, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

760-612-9328

robemert@msn.com

# CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2024, I electronically filed the foregoing "OPENING BRIEF" with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

For any participants that might not be registered CM/ECF users, I certify that I served a true and correct copy of the foregoing document by emailing it to the following email addresses:

williams@williamsiagmin.com; austin.uhler@sdcounty.ca.gov;

franciesca.balerio@sdcda.org; jbadillo_law@yahoo.com;

dschulman@msmfamilylaw.com

Dated: November 20, 2024

*Rob Emert*
Robert Emert

Robert Emert, Pro Se

760-612-9328

robemert@msn.com

# ADDENDUM – 9th Circuit Citations

The multiple constitutional violations and incidents of misconduct detailed in this brief have had a devastating impact on Appellant's life, family, and fundamental rights. The egregiousness of these violations cannot be overstated, as they strike at the very core of the due process and fair dealing guaranteed by our Constitution. To underscore the firm legal foundation for the relief requested, Appellant provides the additional following compendium of Ninth Circuit precedent directly supporting his claims:

1. **Improper Denial of Peremptory Challenge:**

- United States v. Lindstrom, 698 F.2d 1154, 1157 (9th Cir. 1983) (erroneous denial of a peremptory challenge is reversible error)

- Armant v. Marquez, 772 F.2d 552, 556 (9th Cir. 1985) (denial of a proper peremptory challenge violates due process)

2. **Plea Agreements and Due Process:**

- Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (due process requires that a defendant receive the benefit of his bargain in a plea agreement)

- Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003) (a prosecutor's breach of a plea agreement violates due process)

- United States v. Heredia, 768 F.3d 1220, 1230 (9th Cir. 2014) (the government must fulfill the promises it makes in a plea agreement)

## 3. Retaliatory Prosecution and First Amendment:

- Ford v. City of Yakima, 706 F.3d 1188, 1193 (9th Cir. 2013) (recognizing that retaliatory prosecution for protected speech violates the First Amendment)

- Skoog v. County of Clackamas, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (discussing the elements of a retaliatory prosecution claim)

## 4. Brady Violations and Prosecutorial Misconduct:

- Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005) (Brady violations can form the basis for §1983 claims)

- Jackson v. Brown, 513 F.3d 1057, 1071-72 (9th Cir. 2008) (discussing the materiality standard for Brady violations)

- United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (prosecutors must disclose material exculpatory evidence)

## 5. ADA Violations and Access to Courts:

- Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001) (setting forth the elements of an ADA claim in the context of access to courts)

- Updike v. Multnomah County, 870 F.3d 939, 949 (9th Cir. 2017) (discussing the obligation to provide reasonable accommodations under the ADA)

- Bock v. Santa Clara Valley Transportation Authority, 261 F.3d 912, 919-20 (9th Cir. 2001) (failure to accommodate can constitute ADA discrimination)

**6. Fraud on the Court and Rule 60(b)(3):**

- United States v. Estate of Stonehill, 660 F.3d 415, 444 (9th Cir. 2011) (defining fraud on the court and its consequences)

- Latshaw v. Trainer Wortham & Co., 452 F.3d 1097, 1104 (9th Cir. 2006) (discussing the standard for granting Rule 60(b)(3) motions based on fraud)

- Pizzuto v. Ramirez, 783 F.3d 1171, 1181 (9th Cir. 2015) (fraud on the court must be proven by clear and convincing evidence)

**7. Jurisdiction and Standard of Review:**

- Eason v. Clark County School District, 303 F.3d 1137, 1140 (9th Cir. 2002) (the court of appeals reviews de novo a district court's dismissal for failure to state a claim)

- Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005) (on a motion to dismiss, the court accepts all factual allegations in the complaint as true)

- Hilao v. Estate of Marcos, 103 F.3d 767, 782 (9th Cir. 1996) (denial of a Rule 60(b) motion is reviewed for abuse of discretion)

## 8. District Court's Erroneous Grounds for Dismissal

The district court's dismissal of Appellant's complaint rests on three fundamental errors, each of which is directly contradicted by Ninth Circuit precedent:

a. Misapprehension of Plea Agreement Law:

- Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (due process requires that a defendant receive the benefit of his bargain in a plea agreement)

- United States v. Heredia, 768 F.3d 1220, 1230 (9th Cir. 2014) (the government must fulfill the promises it makes in a plea agreement)

The district court failed to recognize the binding nature of promises made in plea agreements and the due process implications of their breach, disregarding clear Ninth Circuit authority on this issue.

b. Misunderstanding of §1983's Scope:

- Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010) (§1983 provides a cause of action against state actors for deprivation of constitutional rights)

- Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (discussing supervisory liability under §1983)

Contrary to the district court's ruling, §1983 provides a broad remedy for constitutional violations committed by state actors, including those arising from prosecutorial misconduct and the breach of plea agreements.

c. Failure to Consider Substantial Evidence:

- Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008) (on a motion to dismiss, the court must accept all factual allegations as true and construe them in the light most favorable to the plaintiff)

- Leadsinger, Inc. v. BMG Music Publishing, 512 F.3d 522, 526 (9th Cir. 2008) (allegations supported by evidentiary material must be taken as true at the pleading stage)

The district court improperly disregarded the substantial evidence proffered by Appellant, including recorded admissions by state actors, which must be accepted as true at this stage and provide strong support for his claims.

This Court's precedent firmly establishes that the misconduct Appellant has suffered is not mere error, but a fundamental affront to justice requiring robust remedial action. Appellant implores this Court to heed the call of its own rulings, to vindicate his rights, and to send an unequivocal message that such abuses of power will not be tolerated within the Ninth Circuit.