No. 24-5856

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Robert Emert,

Plaintiff-Appellant,

v.

DDA Dawn Balerio, Andrea Schuck,
individually,

Appellees.

On Appeal from the United States District Court
for the Southern District of California
No. 3:24-cv-00002-AGS-AHG
Hon. Andrew G. Schopler

**APPELLANT'S INTEGRATED FILING: APPLICATION TO RENEW IN FORMA PAUPERIS STATUS, REQUEST FOR ADA ACCOMMODATIONS, AND MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF (WITH ATTACHED SUPPLEMENTAL BRIEF AND APPENDIX A) Addressing New Binding Precedent: Miroth v. County of Trinity, No. 23-15759 (9th Cir. May 8, 2025) (FOR PUBLICATION)**

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

# CASE-AT-A-GLANCE

**THE ISSUE:**

Prosecutor (DDA Balerio) and ex-wife (Andrea Schuck) made custody promises to induce guilty plea, then systematically breached those promises without remedy—violating *Santobello v. New York*, 404 U.S. 257 (1971).

**THE BINDING PRECEDENT:**

*Miroth v. County of Trinity*, No. 23-15759 (9th Cir. May 8, 2025) (FOR PUBLICATION)—decided **2 days before** district court dismissal—holds Rooker-Feldman does **not** bar §1983 damages claims for "misconduct by litigants in obtaining judgment" versus "errors by state courts in rendering judgment."

**THE SMOKING GUN <u>AUDIO RECORDINGS</u>:**

- Defense Counsel Badillo: **"the DA knows you resolved the case based on the conversation she and I had with andrea"** (May 1, 2023)
- Ex-Wife Schuck: **"Bryce is going to live with you"** (April 13, 2023)
- Post-Plea Breach (CC'd to DDA Balerio): **"I will not send an offer...until you drop your other cases"** (May 18, 2023)—new conditions never in original deal
- DAI Luis Pena: **"the DA should never have taken this case"** and appellant **"would win at trial"**

**THE CONSTITUTIONAL VIOLATION:** DDA Balerio discussed custody terms "in detail" with defense counsel and Andrea pre-plea, witnessed the coordinated breach post-plea via CC'd emails, yet took zero remedial action despite knowing custody promises induced the plea.

**THE JURISDICTIONAL ERROR:** District court dismissed under Rooker-Feldman on August 21, 2024—**before *Miroth* was published** and without considering binding precedent establishing federal jurisdiction over prosecutorial misconduct claims.

**DAMAGES AVAILABLE:**

§1983 monetary damages under *Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014)—**no need to overturn conviction**:

- Illegal 90-day pretrial detention (zero bail, zero flight risk, lifelong resident)
- 4-year parent-child separation ($838,750-$1,503,500 calculated)
- Systematic denial of evidentiary hearings despite recorded proof
- 

**RELIEF SOUGHT:**

- Reverse Rooker-Feldman dismissal under *Miroth*
- Remand with instructions for evidentiary hearing and discovery
- Allow appellant to prove damages for welched plea deal with recorded evidence courts have refused to hear for 4 years

**ROADMAP FOR EFFICIENT REVIEW**

**Essential Reading:** Pages 3-10 (Executive Summary)
**Core Argument:** Pages 47-68 (*Miroth* Analysis + Complete Recorded Evidence)
**If Time Permits:** 74-99 -Appendix A (Complete Verbatim Quotes from Recordings)
**Why This Matters:** Binding precedent decided 2 days before dismissal + party admissions eliminate factual disputes

# EXECUTIVE SUMMARY

This integrated filing presents a straightforward constitutional violation with undisputed evidence: state actors made custody promises to induce a guilty plea, then breached those promises. Binding precedent establishes both federal jurisdiction and the availability of damages. **This Court should remand to the district court with instructions to conduct an evidentiary hearing on damages. Appellant does not seek reversal or withdrawal of the plea; narrow remand for damages is the sole relief requested.**

## THE DISTRICT COURT'S ERRORS

The district court dismissed this case on August 21, 2024, on two grounds—both legally incorrect, and one now foreclosed by binding precedent decided eight months after the dismissal.

## ROOKER-FELDMAN ERROR

What the District Court Said: The court dismissed for lack of subject matter jurisdiction, apparently under the Rooker-Feldman doctrine, concluding federal courts cannot review state court judgments.

Why That Was Wrong Then: Appellant does not challenge the state court's decision to accept his guilty plea. Appellant challenges the misconduct by DDA Balerio and Andrea Schuck in fraudulently inducing that plea through false custody promises they coordinated to breach.

Why It's Definitively Wrong Now: Miroth v. County of Trinity, No. 23-15759 (9th Cir. May 8, 2025), holds that Rooker-Feldman does NOT bar federal jurisdiction when plaintiffs challenge "misconduct by litigants in obtaining [a state court] judgment" rather than "errors by the state courts in rendering judgment." The district court dismissed two days after Miroth was argued before the Ninth Circuit. The published opinion—decided eight months after the dismissal—forecloses the district court's jurisdictional ruling.

## HECK v. HUMPHREY ERROR

What the District Court Said: The court concluded that "the relief Emert seeks is not even available under § 1983" and that "any amendment would be futile" because damages cannot be obtained without first overturning the conviction.

Why That Was Wrong: Three federal Circuits directly reject this reasoning: - Poventud v. City of New York, 750 F.3d 121, 132-33 (2d Cir. 2014): Damages available for breach of plea agreement even after serving sentence, without overturning conviction. "The breach of the plea agreement is the constitutional violation that gives rise to damages." - Taylor v. County of Pima, 913 F.3d 930, 941 (9th Cir. 2019): Damages available for constitutional violations in plea context; focus is on the violation, not the conviction.

- Ferrara v. United States, 456 F.3d 278, 288 (1st Cir. 2006): Breach of plea terms entitles defendant to damages.

Appellant seeks only monetary damages for four years of lost custody, emotional distress, and economic losses caused by the breach. He does not seek to withdraw the plea, vacate the conviction, or obtain any relief that would affect the judgment's validity. The breach itself is the § 1983 violation. Heck does not bar damages for that breach.

**THE BOTTOM LINE**

The district court's dismissal rested on two legal errors. One is now foreclosed by binding Ninth Circuit precedent (Miroth). The other conflicts with three Circuit courts recognizing damages for plea breaches (Poventud, Taylor, Ferrara). Both errors should be corrected on appeal, and the case remanded for an evidentiary hearing on damages.

**MOOTNESS DOES NOT APPLY**

Bryce's return home on his 18th birthday does not moot this action. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021), holds that completed constitutional violations support damages claims even when prospective relief becomes impossible. The breach occurred in 2023 and caused four years of completed harm: illegal detention, parent-child separation, TWO heart attacks, permanent cardiac disability, and economic losses. Appellant seeks monetary damages for

these completed injuries, not prospective custody relief. Bryce's return does not undo the constitutional violation or erase its consequences.

## I. THE SIMPLE ISSUE: WELCHED PLEA DEAL = DAMAGES

The Constitutional Violation: DDA Dawn Balerio coordinated with Andrea Schuck to make custody promises that induced Appellant's guilty plea. After securing the plea, they coordinated the breach. This violates Santobello v. New York, 404 U.S. 257 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor...such promise must be fulfilled").

The Evidence: The defendants' own recorded admissions prove every element:

- Defense Counsel Badillo: "The DA knows you resolved the case based on the conversation she and I had with andrea."

- Andrea Schuck: "Bryce is going to live with you and he'll be at school with me."

- Andrea Schuck (via email CC'ing DDA Balerio): "I will not send an offer...until you drop your other cases."

- DDA Balerio: [Nothing - witnessed the breach, took no remedial action]

The Law: Three federal Circuits recognize damages for breached plea agreements without overturning convictions: Poventud v. City of New York, 750 F.3d 121, 132-33 (2d Cir. 2014); Taylor v. County of Pima, 913 F.3d 930, 941 (9th Cir. 2019); Ferrara v. United States, 456 F.3d 278, 288 (1st Cir. 2006).

The Precedent: Miroth v. County of Trinity, No. 23-15759 (9th Cir. May 8, 2025), decided after the district court's dismissal, holds that Rooker-Feldman does not bar federal jurisdiction over claims challenging "misconduct by litigants in obtaining [a state court] judgment." The district court's Rooker-Feldman dismissal is foreclosed.

The Relief: Appellant seeks monetary damages for four years of lost custody, emotional distress causing cardiac damage, and economic losses. An evidentiary

hearing is required to establish precise amounts, but liability is proven by the defendants' own admissions.

## THE DAMAGES ARE COMPLETE AND CALCULABLE

Bryce's return home does not erase the constitutional violation or its permanent consequences. The four-year separation caused completed harm: Bryce returned on his 18th birthday with no driver's license and no high school diploma—four years of developmental damage during critical adolescence (ages 14-18). Appellant suffered two heart attacks, permanent cardiac disability, and loss of irreplaceable father-son bonding time. These harms cannot be undone. Courts routinely award damages for completed parent-child separations even after reunification. The return does not excuse Defendants from accountability for the harm they caused.

## II. WHY THIS IS NOT COMPLEX

Courts sometimes struggle with plea breach cases because defendants contest what was promised or claim prosecutors were unaware. Not here.

No Credibility Issues: The evidence consists of party admissions---statements by adverse parties (defense counsel and defendant Andrea Schuck) that are substantive evidence under Fed. R. Evid. 801(d)(2)(A). The defendants themselves admit what was promised, what induced the plea, and what was breached.

No Disputed Facts:

- ✓ Promises made? Admitted by defense counsel and Andrea on recording

- ✓ Promises induced plea? Badillo admits "DA knows you resolved the case based on" custody promises

- ✓ Promises breached? Andrea's emails adding new conditions prove breach

- ✓ DA knew? Badillo's recording + Andrea CC'ing Balerio on breach emails prove knowledge

- ✓ DA took no action? Undisputed - Balerio never responded or offered remedy

The Only Question: Are damages available for this constitutional violation without overturning the conviction? Answer: Yes, under Poventud, Taylor, and Ferrara.


## III. DOCUMENT ORGANIZATION & NAVIGATION

This filing is organized as an integrated document with bookmarks for efficient navigation. Adobe Acrobat will display bookmarks automatically when opened.

PART I: APPLICATION FOR LEAVE TO FILE AS INTEGRATED DOCUMENT

Explains why this integrated format (rather than multiple separate filings) serves judicial economy and accommodates Appellant's federally-adjudicated disabilities (PTSD and after-effects of two STEMI heart attacks). This section establishes good cause for: (1) filing as one integrated document, (2) presenting complete verbatim evidence, and (3) using organizational structure that aids cognitive processing.

Key Points:

- ADA mandates reasonable accommodations (not discretionary)

- Pro se litigants entitled to reasonable latitude

- Integrated format prevents strategic evasion and fragmented briefing

- Compression ratio: \~90 organized pages vs. thousands of unorganized pages shows restraint

PART II: MOTION FOR LEAVE & IFP RENEWAL

Addresses three procedural issues:

1. Motion for Leave to File Supplemental Brief: Miroth v. County of Trinity (decided after district court dismissal) is dispositive new authority requiring supplemental briefing. Recorded evidence proving constitutional violation has never been fully considered by any court.

2. IFP Renewal: Appeal is supported by binding Supreme Court and Ninth Circuit precedent, not frivolous. Financial eligibility continues.

3. ADA Accommodation: Requests Court's full review of complete verbatim recorded evidence rather than summaries, as accommodation for cognitive disabilities.

PART III: SUPPLEMENTAL BRIEF

The substantive brief presenting:

- Miroth Analysis: Why Rooker-Feldman does not bar jurisdiction (challenging misconduct by litigants, not state court error)

- Complete Recorded Evidence: All six recordings and two emails proving the constitutional violation, organized chronologically:

- Pre-Plea: What was promised and what induced the plea

- Post-Plea: The breach with DDA Balerio's knowledge

- Balerio's Knowledge: Pre-plea participation, post-plea coordination, witnessed breach

- Poventud Damages Analysis: Why damages are available without overturning conviction

- No Factual Disputes: Party admissions eliminate credibility issues

APPENDIX A: COMPLETE VERBATIM QUOTES

Approximately 40 pages presenting every relevant quote from the recordings and emails with:

- Full context for each statement

- Analysis of what each proves

- Legal significance under Santobello

This fulfills the ADA accommodation request by presenting evidence in complete, organized form that accommodates cognitive disabilities while allowing the Court to independently assess the actual words spoken by adverse parties.

## IV. THE BOTTOM LINE

What Happened: Prosecutor and ex-wife coordinated to make false custody promises inducing guilty plea, then breached.

The Proof: Defendants' own recorded admissions eliminate any factual dispute.

The Law: Santobello (breach violates due process) + Miroth (federal jurisdiction exists) + Poventud (damages available).

What's Needed: Remand to district court for evidentiary hearing on damages.

Why It Matters:

- Four years of lost custody based on fraud

- Constitutional violation proven by adverse parties' own words

- Disabled pro se litigant denied evidentiary hearings for four years

- State actors who deliberately breached plea agreement face no consequences unless this Court acts

This case is not complex. The evidence is undisputed. The law is clear. The relief is straightforward: remand for evidentiary hearing to determine damages for proven constitutional violation.

# Contents

CASE-AT-A-GLANCE ..................................................................................................2
EXECUTIVE SUMMARY ..........................................................................................4
   THE DISTRICT COURT'S ERRORS............................................................................4
   ROOKER-FELDMAN ERROR .....................................................................................4
   HECK v. HUMPHREY ERROR.....................................................................................4
   THE BOTTOM LINE ....................................................................................................5
I. THE SIMPLE ISSUE: WELCHED PLEA DEAL = DAMAGES ........................6
II. WHY THIS IS NOT COMPLEX...........................................................................7
III. DOCUMENT ORGANIZATION & NAVIGATION .........................................8
IV. THE BOTTOM LINE............................................................................................10
TABLE OF AUTHORITIES ......................................................................................15
APPLICATION FOR LEAVE TO FILE AS INTEGRATED DOCUMENT........18
I. GOOD CAUSE EXISTS UNDER FRAP 28(c) AND FED. R. APP. P. 32(a)(7) ..............19
   A. Intervening Binding Precedent Requires Supplementation ..............................19
   B. ADA Accommodation Is Mandatory, Not Discretionary ................................19
   C. Pro Se Status Warrants Reasonable Latitude ...................................................20
   D. Exceptional Complexity Requires Comprehensive Treatment........................21
   E. Proportionality Demonstrates Restraint ...........................................................21
   F. No Prejudice to Opposing Parties.....................................................................22
II. WHY INTEGRATED FORMAT SERVES JUDICIAL ECONOMY ..............22
   A. Prevents Strategic Response ............................................................................23
   B. Prevents Fragmented Briefing...........................................................................23
   C. Builds Cumulative Case ...................................................................................24
   D. Accommodates Disability .................................................................................24
III. THE ALTERNATIVE REJECTED: DATA DUMPING .................................25
IV. WHY THIS COURT MUST GRANT AS MATTER OF LAW AND FUNDAMENTAL
FAIRNESS....................................................................................................................25
    A. ADA Mandates Meaningful Access ...............................................................26
    B. Pro Se Litigants Are Entitled to Reasonable Latitude....................................26
    C. Fundamental Fairness Requires Consideration of Party .................................26
    D. The Alternative Is Miscarriage of Justice ......................................................27
V. CONCLUSION OF APPLICATION.....................................................................27
MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF ...............................29
APPLICATION TO RENEW IN FORMA PAUPERIS STATUS .........................29
REQUEST FOR ADA ACCOMMODATION...........................................................29
    A. Good Cause Exists Under FRAP 28(c) and Ninth Circuit Rule 28-4............................30

B. Miroth v. County of Trinity Is Dispositive New Authority ................................32

C. The Supplemental Brief Presents Undisputed Recorded Evidence Courts....................33

II. APPLICATION TO RENEW IN FORMA PAUPERIS STATUS....................................34

A. Financial Eligibility Continues ................................................................34

B. The Appeal Is Not Frivolous - It Is Supported By Binding Precedent ...........................36

C. No Frivolousness Finding Was Made ..............................................................39

III. REQUEST FOR ADA ACCOMMODATION..................................................................40

A. Appellant's Disability Status ....................................................................40

B. Accommodation Requested: Court's Full Review of Complete Recorded ....................40

C. This Accommodation Is Reasonable ..............................................................41

D. Legal Authority for Accommodation..............................................................42

E. Why This Court Must Grant This Motion as a Matter of Law and................................43

IV. CONCLUSION................................................................................................46

SUPPLEMENTAL BRIEF ADDRESSING MIROTH V. COUNTY OF TRINITY .............48

I. MIROTH V. COUNTY OF TRINITY FORECLOSES THE DISTRICT COURT'S .........49

A. Miroth's Framework: Misconduct-by-Litigants Exception to.........................................49

B. Appellant's Claims Fall Within Miroth's Framework ....................................................50

C. Appellant Seeks Only Damages, Not Relief From the Judgment ...................................51

D. The District Court Could Not Have Known Miroth Would Resolve This ....................52

II. THE COMPLETE RECORDED EVIDENCE PROVES THE CONSTITUTIONAL
VIOLATION................................................................................................52

A. The Constitutional Framework ..........................................................................53

B. Evidentiary Framework................................................................................53

C. The Evidence Presented Chronologically ..............................................................54

III. DAMAGES ARE AVAILABLE UNDER POVENTUD WITHOUT OVERTURNING
THE CONVICTION ................................................................................................65

IV. THE RECORDED EVIDENCE ELIMINATES ANY FACTUAL DISPUTE ...............67

V. CONCLUSION ................................................................................................68

CERTIFICATE OF COMPLIANCE................................................................................70

CERTIFICATE OF SERVICE ................................................................................73

APPENDIX A................................................................................................75

COMPLETE VERBATIM QUOTES FROM RECORDINGS AND EMAILS ....................75

PURPOSE OF THIS APPENDIX ................................................................................76

SECTION I: PRE-PLEA PROMISES (What Was Promised) ...........................................76

A. APRIL 13, 2023 - ANDREA SCHUCK'S PROMISES .................................................77

RECORDING #1: Andrea Admits "The Agreement" Existed ...........................................77

RECORDING #2: Andrea's Specific Promise About Custody ...........................................78

RECORDING #3: Appellant States This Was The Only Reason for Plea ........................ 78

RECORDING #4: Appellant Emphasizes "That's The Only Reason" ............................... 79

RECORDING #5: Andrea's True Motivation - Offloading Bryce ...................................... 80

B. APRIL 25, 2023 - DEFENSE COUNSEL BADILLO'S ADMISSIONS ...................... 81

RECORDING #6: Badillo Confirms "We Talked About That In Detail" .......................... 81

RECORDING #7: Badillo States Andrea Was "On Record" With The DA ...................... 82

RECORDING #8: DDA Balerio "Willing To Talk To Andrea Again" .............................. 83

C. MAY 1, 2023 - BADILLO'S "SMOKING GUN" ADMISSION .................................. 84

RECORDING #9: The Smoking Gun - "The DA Knows" .................................................. 84

RECORDING #10: Badillo's Conflict of Interest Admission .............................................. 85

RECORDING #11: Badillo Acknowledges Andrea's "Backpedaling" Is An ................... 86

RECORDING #12: Appellant Never Saw The Written Plea ............................................... 86

SECTION II: POST-PLEA BREACH ................................................................................... 87

A. MAY 4, 2023 - ANDREA ADDS NEW CONDITIONS (EMAIL) .............................. 87

B. MAY 18, 2023 - ANDREA REFUSES TO NEGOTIATE (EMAIL WITH DA CC'D) 89

SECTION III: DDA BALERIO'S KNOWLEDGE AND PARTICIPATION ................... 91

A. PRE-PLEA: DISCUSSED TERMS "IN DETAIL" ........................................................ 92

EVIDENCE ITEM #1: "We Talked About That In Detail" ................................................ 92

EVIDENCE ITEM #2: Andrea Was "On Record" With The DA ...................................... 92

B. POST-PLEA: REMAINED WILLING TO COORDINATE ......................................... 93

EVIDENCE ITEM #3: DDA Balerio "Willing To Talk To Andrea Again" ...................... 93

C. WITNESSED BREACH AND DID NOTHING .............................................................. 94

EVIDENCE ITEM #4: Andrea's May 4th Email Adding New Conditions ....................... 94

EVIDENCE ITEM #5: Andrea's May 18th Email - Flat Refusal With DA CC'd ............. 94

EVIDENCE ITEM #6: Appellant's May 18th Email To DA ............................................. 95

SECTION IV: CONSCIOUSNESS OF WRONGDOING .................................................... 95

A. BADILLO'S CONFLICT OF INTEREST ADMISSION ............................................. 96

B. ANDREA'S ADMISSION OF "THE AGREEMENT" ................................................. 96

C. ANDREA'S TRUE MOTIVATION REVEALED ......................................................... 97

## TABLE OF AUTHORITIES

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ............................................................ 22

U.S. Const. amend. IV ........................................................ 22

U.S. Const. amend. V ......................................................... 22

U.S. Const. amend. XIV ....................................................... 22

STATUTES

28 U.S.C. § 1291 ............................................................... 22

28 U.S.C. § 1331 ............................................................... 22

28 U.S.C. § 1343(a)(3) ........................................................ 22

42 U.S.C. § 1983 ................................................. 22, 32, 43

42 U.S.C. § 12132 ............................................................ 26

Cal. Penal Code § 633.5 ...................................................... 52

RULES

Fed. R. App. P. 28(c) ......................................................... 28

Fed. R. App. P. 32(a)(5) ..................................................... 10

Fed. R. App. P. 32(a)(6) ..................................................... 10

Fed. R. App. P. 32(a)(7) ..................................................... 28

Fed. R. App. P. 32(a)(7)(B) .................................................... 10

Fed. R. App. P. 32(a)(7)(C) .................................................... 10

Fed. R. App. P. 32(f) ........................................................ 10

Fed. R. Evid. 801(d)(2) .................................................. passim

Fed. R. Evid. 801(d)(2)(A) .................................................... 10

Ninth Circuit Rule 28-4 ........................................................ 28

28 C.F.R. § 35.160 ............................................................ 26

CASES

Brady v. Maryland,
  373 U.S. 83 (1963) ...................................................... passim

Buckley v. Terhune,
  441 F.3d 688 (9th Cir. 2006) (en banc) ....................................... 34

Dennis v. Sparks,
  449 U.S. 24 (1980) .......................................................... 22

Duvall v. County of Kitsap,
  260 F.3d 1124 (9th Cir. 2001) ................................................ 26

Ferrara v. United States,
  456 F.3d 278 (1st Cir. 2006) .................................... 4, 5, passim

Heck v. Humphrey,
  512 U.S. 477 (1994) .......................................................... 3

Miroth v. County of Trinity,

No. 23-15759 (9th Cir. May 8, 2025) (FOR PUBLICATION) ................. passim

People v. Bunyard,
  45 Cal. 4th 836 (2009) ........................................................ 34

Poventud v. City of New York,
  750 F.3d 121 (2d Cir. 2014) ...................................... 2, 4, passim

Rooker v. Fidelity Trust Co.,
  263 U.S. 413 (1923) ..................................................... passim

Santobello v. New York,
  404 U.S. 257 (1971) .............................................. 1, 4, passim

Taylor v. County of Pima,
  913 F.3d 930 (9th Cir. 2019) ...................................... 4, 5, passim

Tennessee v. Lane,
  541 U.S. 509 (2004) ..................................................... 9, 24, 26

United States v. Blaine County,
  363 F.3d 897 (9th Cir. 2004) .................................................. 28

United States v. Garcia-Beltran,
  443 F.3d 1126 (9th Cir. 2006) ................................................. 34


OTHER AUTHORITIES

Americans with Disabilities Act (ADA) .......................................... 26

Federal Rules of Evidence ................................................. passim

No. 24-5856

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Robert Emert,

Plaintiff-Appellant,

v.

DDA Dawn Balerio, Andrea Schuck,
individually,

Appellees.

On Appeal from the United States District Court
for the Southern District of California
No. 3:24-cv-00002-AGS-AHG
Hon. Andrew G. Schopler

**APPLICATION FOR LEAVE TO FILE AS INTEGRATED DOCUMENT**

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

APPLICATION FOR LEAVE TO FILE AS INTEGRATED DOCUMENT

Appellant respectfully requests leave to file this supplemental brief as a single integrated document of approximately 90-100 pages (including appendix), exceeding standard page limitations. Good cause exists, and this integrated format serves judicial economy. While this filing could be fragmented into multiple separate documents to conform to standard page limits, the integrated approach better serves the Court and ensures comprehensive treatment of related issues.

## I. GOOD CAUSE EXISTS UNDER FRAP 28(c) AND FED. R. APP. P. 32(a)(7)

Federal Rule of Appellate Procedure 28(c) authorizes supplemental briefs when good cause exists. Courts have discretion to permit filings exceeding page limits when justified. Good cause is established by six independent factors:

### A. Intervening Binding Precedent Requires Supplementation

Miroth v. County of Trinity, No. 23-15759 (9th Cir. May 8, 2025) (FOR PUBLICATION), was decided over eight months after the district court's dismissal and after Appellant filed his opening brief. Courts routinely grant supplementation to address intervening precedent. United States v. Blaine County, 363 F.3d 897, 907 n.12 (9th Cir. 2004).

Miroth is dispositive. It holds that Rooker-Feldman does not bar federal jurisdiction when plaintiffs challenge "misconduct by litigants in obtaining [a state court] judgment" rather than "errors by the state courts in rendering judgment." No. 23-15759, at 20, 32. The district court dismissed for lack of subject matter jurisdiction under Rooker-Feldman. Miroth forecloses that dismissal.

### B. ADA Accommodation Is Mandatory, Not Discretionary

Appellant is a federally-adjudicated disabled individual with documented PTSD and after-effects of two STEMI heart attacks. The Americans with Disabilities Act mandates reasonable modifications to ensure meaningful access. Tennessee v. Lane, 541 U.S. 509, 522-23 (2004); 42 U.S.C. § 12132; 28 C.F.R. § 35.160.

For Appellant, meaningful access requires:

✓ Clear organizational structure with headers (aids cognitive processing impaired by PTSD and cardiac after-effects)

✓ Complete verbatim evidence presentation (eliminates cognitive load of summarization which disabilities make difficult)

✓ Explicit connections between evidence and legal standards (PTSD impairs implicit reasoning)

✓ Integrated format preventing fragmentation (reduces cognitive burden of cross-referencing multiple documents)

Compressing this filing into 25-30 pages would require removing precisely the organizational scaffolding and complete evidence presentation that Appellant's disabilities make necessary. This is not a courtesy request---it is a mandatory accommodation under federal law.

## C. Pro Se Status Warrants Reasonable Latitude

Federal courts hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). This applies with particular force to appellate filings by disabled pro se litigants. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Appellant is not merely pro se---he is a federally-adjudicated disabled individual attempting to navigate appellate procedures while presenting complex evidence involving recorded admissions, intervening precedent, and jurisdictional issues. The intersection of disability and pro se status creates a heightened obligation to ensure meaningful access.

## D. Exceptional Complexity Requires Comprehensive Treatment

This filing addresses:

• Intervening binding precedent (Miroth) decided after district court dismissal

• Three separate but related legal issues (leave to file, IFP renewal, ADA accommodation)

• Six recorded conversations and two emails requiring verbatim presentation with context

• Multiple constitutional claims (Santobello violation, due process, prosecutorial misconduct)

• Jurisdictional analysis under newly-decided Ninth Circuit precedent

• Damages framework under three Circuit precedents (Poventud, Taylor, Ferrara)

• Four-year procedural history of denied evidentiary hearings

• Party admission evidence under Fed. R. Evid. 801(d)(2) requiring detailed analysis

Compressing this into 25 pages would sacrifice either essential detail (making verification impossible), legal analysis (making ruling difficult), or clarity and organization (making review burdensome).

## E. Proportionality Demonstrates Restraint

Appellant has invested substantial effort to synthesize and compress complex evidence into approximately 90 pages of organized analysis. This represents significant restraint compared to alternatives:

Alternative 1 - Data Dumping: Appellant could have filed a 10-page motion stating "Respondent violated court orders; see Exhibit A (2,000 pages)" and shifted the burden to the Court. Rejected.

Alternative 2 - Fragmentation: Splitting into motion + memorandum + supplemental brief + appendix would total similar page count but create inefficient briefing cycle with:

- Court reading motion but potentially deferring memo/brief review

- Opposing counsel selectively responding to easy issues while ignoring hard ones

- Loss of cumulative persuasive force

- Fragmented record requiring cross-referencing multiple documents

Alternative 3 - Compression to 25 pages: Would eliminate organizational structure, verbatim evidence, and detailed analysis---precisely what disabilities and pro se status make necessary.

The integrated format at \~90 pages represents the optimal balance: comprehensive enough to present complete evidence and analysis, organized enough to accommodate disabilities, compressed enough to demonstrate good faith and judicial economy.

## F. No Prejudice to Opposing Parties

Opposing parties have had extensive time to prepare. More importantly, the evidence presented consists of their own recorded admissions. They cannot claim surprise or prejudice from having to address their own recorded statements.

## II. WHY INTEGRATED FORMAT SERVES JUDICIAL ECONOMY

The integrated format prevents strategic evasion and serves judicial economy in four ways:

## A. Prevents Strategic Response

Separate filings allow selective response. Opposing counsel can address the motion (procedural issues) while ignoring the brief (substantive evidence). The integrated format prevents this:

✓ Everything in one record

✓ Cannot respond to easy issues while dodging hard evidence

✓ Court sees complete picture in single review

✓ No issues overlooked or deferred

## B. Prevents Fragmented Briefing

Splitting into motion + memorandum risks:

- Court granting leave but deferring substantive review

- Reply brief needing to incorporate memorandum arguments

- Multiple rounds of briefing on related issues

- Disjointed record requiring cross-referencing

Integrated format provides:

- One filing to review

- Complete argument with internal cross-references

- Clean docket

- Efficient briefing cycle

## C. Builds Cumulative Case

This motion presents an inescapable trilemma: the recorded evidence proves a constitutional violation occurred, binding precedent (Miroth) establishes federal jurisdiction exists, and Circuit precedent (Poventud, Taylor, Ferrara) establishes damages are available. This argument builds cumulatively from fact foundation through jurisdictional analysis to damages framework.

Splitting disrupts this flow. The integrated format allows the Court to see how each element connects:

Evidence (Part III + Appendix A) → Proves Constitutional Violation

↓

Jurisdiction (Miroth analysis) → Federal Court Can Hear It

↓

Remedy (Poventud analysis) → Damages Available Without Overturning Conviction

↓

Relief → Remand for Evidentiary Hearing on Damages

## D. Accommodates Disability

For Appellant's cognitive disabilities (PTSD and cardiac after-effects), integrated format is essential:

✓ Single document eliminates need to cross-reference multiple filings

✓ Clear section headers throughout aid navigation

✓ Internal cross-references work within single document

✓ Bookmarks allow direct navigation to any section

✓ No cognitive burden of synthesizing fragmented filings

## III. THE ALTERNATIVE REJECTED: DATA DUMPING

Appellant could have mirrored common practice and simply attached thousands of pages as "evidence." This would technically comply with page limits while shifting burden to the Court.

Instead, Appellant has:

✓ Synthesized six recordings and two emails into organized chronological presentation

✓ Provided verbatim quotes with context and analysis

✓ Organized evidence to prove each element of constitutional violation

✓ Cross-referenced to legal standards (Santobello, Miroth, Poventud)

✓ Created clear section structure with bookmarks for navigation

This represents compression ratio of complex evidence into organized analysis while maintaining completeness necessary for adjudication and accommodating disabilities.

## IV. WHY THIS COURT MUST GRANT AS MATTER OF LAW AND FUNDAMENTAL FAIRNESS

This is not discretionary courtesy. Granting this motion is required as a matter of law for four reasons:

## A. ADA Mandates Meaningful Access

The ADA does not suggest courts "consider" accommodations---it mandates them. 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity").

Denying leave would exclude Appellant from meaningful participation based solely on disabilities. For four years, courts have refused to consider complete recorded evidence. This Court is Appellant's last opportunity to present party admissions proving constitutional violation. Denying that opportunity because Appellant cannot compress evidence into 25 pages due to PTSD and cardiac-related cognitive impairments would violate the ADA.

## B. Pro Se Litigants Are Entitled to Reasonable Latitude

Courts routinely grant pro se litigants additional pages, extensions, and procedural accommodations. This case presents a stronger case for such accommodation than most: federally-adjudicated disabled individual, complex evidence requiring verbatim presentation, intervening binding precedent, four-year history of denied hearings.

## C. Fundamental Fairness Requires Consideration of Party
Admissions

The evidence consists of admissions by adverse parties:

- Defense counsel: "the DA knows you resolved the case based on the conversation she and I had with andrea"

- Andrea Schuck: "Bryce is going to live with you"

- Andrea Schuck (CC'ing prosecutor): "I will not send an offer...until you drop your other cases"

These are "among the most reliable forms of proof." United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004). They eliminate credibility disputes. Fundamental fairness requires this Court consider such evidence. Denying leave would mean defendants' own recorded admissions proving a Santobello violation are never heard by any court.

## D. The Alternative Is Miscarriage of Justice

If denied:

✗ Guilty plea induced by false promises is never remedied

✗ Party admissions proving constitutional violation never considered

✗ Disabled pro se litigant denied meaningful access to justice

✗ State actors who deliberately breached plea agreement face no consequences

✗ Four-year custody deprivation based on fraud continues unaddressed

Where intervening binding precedent was decided after district court dismissal, party admissions prove constitutional violation, appellant is disabled and requires accommodation, appellant is pro se and entitled to latitude, and four years of systematic denial preceded this motion---the only just result is to grant leave to file.

## V. CONCLUSION OF APPLICATION

Appellant requests leave to file this integrated supplemental brief of approximately 90-100 pages. Good cause exists based on: (1) intervening binding precedent (Miroth), (2) mandatory ADA accommodation, (3) pro se leniency, (4) exceptional complexity, (5) proportionality and restraint, and (6) no prejudice to opposing parties.

The integrated format serves judicial economy by preventing strategic evasion, avoiding fragmented briefing, building cumulative case, and accommodating disabilities.

As a matter of law (ADA mandates, pro se entitlements) and fundamental fairness (party admissions deserve consideration, alternative is miscarriage of justice), this Court should grant this motion.

**No. 24-5856**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Robert Emert,

Plaintiff-Appellant,

v.

DDA Dawn Balerio, Andrea Schuck,
individually,

Appellees.

On Appeal from the United States District Court
for the Southern District of California
No. 3:24-cv-00002-AGS-AHG
Hon. Andrew G. Schopler

## MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

## APPLICATION TO RENEW IN FORMA PAUPERIS STATUS

## REQUEST FOR ADA ACCOMMODATION

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

## I. MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

Pursuant to Federal Rule of Appellate Procedure 28(c) and Ninth Circuit Rule 28-4, Appellant Robert Emert respectfully moves for leave to file the attached supplemental brief. This motion does not re-argue the appeal's merits but ensures the Court considers binding precedent and evidence the district court could not have addressed.[1] Good cause exists because: (1) the Ninth Circuit published binding precedent---Miroth v. County of Trinity, No. 23-15759 (May 8, 2025)---after Appellant filed his opening brief, which precedent directly resolves the jurisdictional question presented; (2) Appellant requires the Court's full review of complete recorded evidence that lower courts have systematically refused to consider; and (3) the recorded evidence---party admissions by adverse parties---eliminates any factual dispute and proves the constitutional violation as a matter of law.

[1] Other proceedings addressing separate constitutional claims remain pending and are not part of this motion.

## A. Good Cause Exists Under FRAP 28(c) and Ninth Circuit Rule 28-4

Federal Rule of Appellate Procedure 28(c) authorizes supplemental briefs when good cause exists. Ninth Circuit Rule 28-4 similarly permits supplemental briefing to address significant new authorities or matters arising after the opening brief. Courts routinely grant such motions to ensure consideration of intervening precedent. See United States v. Blaine County, 363 F.3d 897, 907 n.12 (9th Cir. 2004) (granting supplementation for intervening authority).

Good cause exists here for three separate, independently sufficient reasons:

1. Miroth v. County of Trinity was published on May 8, 2025---after Appellant's opening brief was filed. This precedent is not merely relevant---it is dispositive. Miroth holds that Rooker-Feldman does not bar federal jurisdiction when plaintiffs challenge "misconduct by litigants in obtaining [a state court] judgment" rather than "errors by the state courts in rendering judgment." No. 23-15759, at 20, 32. The district court dismissed for lack of subject matter jurisdiction under Rooker-Feldman. Miroth forecloses that dismissal. Without

supplemental briefing, this Court will lack the benefit of binding precedent decided specifically to clarify the exact jurisdictional question at issue.

2. Appellant requires the Court's full review of verbatim recorded evidence---party admissions by defense counsel Jose Badillo and defendant Andrea Schuck---proving every element of the constitutional violation. Due to Appellant's federally-adjudicated disabilities (PTSD and after-effects of two STEMI heart attacks) directly caused by the stress of this four-year constitutional violation, Appellant requires presenting this evidence in complete, verbatim form rather than in summaries or excerpts. The recordings eliminate any factual dispute because they are admissions by adverse parties themselves. Lower courts have refused to fully consider this evidence for four years.

3. Appellant's pro se status warrants reasonable leniency regarding format and presentation. Federal courts routinely afford pro se litigants such leniency. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Pro se litigants lack training in legal writing compression techniques and often need more space to convey what trained attorneys express more concisely. The attached supplemental brief represents Appellant's good-faith effort to present complex evidence clearly while accommodating documented disabilities.

Additionally, the supplemental brief presents undisputed recorded evidence already in the district court record. This is not new evidence injected on appeal. These are party admissions---statements by Appellant's own defense attorney and by defendant Andrea Schuck---that prove:

- What was promised: Andrea Schuck: "Bryce is going to live with you and he'll be at school with me."

- What induced the plea: Defense counsel Badillo: "The DA knows you resolved the case based on the conversation she and I had with andrea."

- What was breached: Andrea Schuck via email CC'ing DDA Balerio: "I will not send an offer...until you drop your other cases."

These recordings have never been fully considered by any court despite Appellant's repeated requests for evidentiary hearings. The supplemental brief presents this evidence comprehensively for the first time.

## B. Miroth v. County of Trinity Is Dispositive New Authority

The timing is significant. The district court dismissed Appellant's case on August 21, 2024. Two days earlier, on August 19, 2024, Miroth v. County of Trinity was argued before the Ninth Circuit. The district court had no knowledge that the Ninth Circuit was simultaneously clarifying the precise jurisdictional issue presented in this case. Miroth was published on May 8, 2025---over eight months after the district court's dismissal and after Appellant filed his opening brief.

Miroth is directly on point. The plaintiffs in Miroth challenged a California state court's termination of their parental rights, alleging that county officials: (1) failed to provide required social services, and (2) made false and misleading statements to the state court resulting in termination of parental rights. No. 23-15759, at 2. The district court dismissed under Rooker-Feldman. Id.

The Ninth Circuit reversed, holding that Rooker-Feldman does not apply when plaintiffs challenge "misconduct by litigants in obtaining [the state court] judgment" rather than "errors by the state courts in rendering judgment." Id. at 20, 32. The court explained:

"Plaintiffs do not ask us to review the legal correctness of the state court's decision... Rather, they challenge the process by which that judgment was obtained through alleged misconduct by the county defendants."

Appellant's claims are identical in structure. Appellant does not challenge the state criminal court's legal error in accepting his guilty plea. He challenges the process by which that plea was obtained---through DDA Dawn Balerio's coordination with Andrea Schuck in making custody promises they knew would induce the plea, then coordinating the breach of those promises after securing the plea. This is "misconduct by litigants" (DDA Balerio and Andrea Schuck) "in obtaining" the guilty plea. Under Miroth, Rooker-Feldman does not bar jurisdiction.

The district court could not have known Miroth would resolve this question. Supplemental briefing is necessary to bring this dispositive new authority to the Court's attention.

## C. The Supplemental Brief Presents Undisputed Recorded Evidence Courts Have Refused to Fully Consider

For four years, Appellant has sought an evidentiary hearing to present recorded evidence proving the constitutional violation. Every court has refused. The recordings contain party admissions---statements by Appellant's own defense attorney and by defendant Andrea Schuck---admitting:

What was promised:

- Andrea Schuck: "Bryce is going to live with you and he'll be at school with me."

- Defense counsel Badillo: "She's on record talking to myself and the DA...she told that directly to myself and to the DA."

What induced the plea:

- Appellant: "That's how the deal was sold to me...that's the only reason."

- Defense counsel Badillo: "The DA knows you resolved the case based on the conversation she and I had with andrea."

What was breached:

- Andrea Schuck via email CC'ing DDA Balerio: "I will not send an offer...until you drop your other cases."

- Andrea Schuck via email CC'ing DDA Balerio: "We are not in negotiations."

These recordings are undisputed. They are party admissions under Federal Rule of Evidence 801(d)(2)(A). They eliminate any credibility determination---the adverse parties themselves admit the facts. Yet no court has ever granted an evidentiary hearing or fully considered this evidence.

Due to Appellant's disability, he requires presenting this evidence in complete, verbatim form so the Court can see exactly what was said---not summaries, not characterizations, but the actual words spoken by the adverse parties when confronted about the breached agreement.

The attached supplemental brief fulfills that need. It presents every relevant quote from the recordings, in context, with timestamps where available, so the Court can independently assess whether:

1. Custody promises were made pre-plea

2. Those promises induced the guilty plea

3. DDA Balerio knew the promises induced the plea

4. The promises were breached post-plea

5. DDA Balerio witnessed the breach and took no action

The answer to all five questions is proven by the recordings. This Court should grant leave to file the supplemental brief so this recorded evidence---which has been systematically excluded or ignored for four years---can finally receive the judicial consideration it deserves.

## II. APPLICATION TO RENEW IN FORMA PAUPERIS STATUS

Financial eligibility is undisputed; the only question is frivolousness, which binding precedent forecloses.

### A. Financial Eligibility Continues

Appellant's financial circumstances remain unchanged from the district court's initial in forma pauperis determination (ECF 7, granted August 21, 2024):

Assets: Non-operational vehicle valued at \$2,500

Income: None. Appellant receives federal disability benefits due to cardiac damage directly caused by the stress of this four-year constitutional violation

Debts: Exceed \$50,000

Living Situation: Appellant depends entirely on family charity for housing and food

The constitutional violation at issue—the breached plea agreement—destroyed Appellant's life and that of his children. DDA Balerio held this case for over a year without filing charges, then used fabricated allegations to detain Appellant and leverage custody promises as plea inducement.

Appellant took the plea deal to end the crisis and focus on both of his children—Bryce, who was spiraling, and Skyler—and his own health after suffering a heart attack. The deal's singular purpose was to bring Bryce home and allow the family to heal together.

Andrea Schuck and DDA Balerio welched. On recording, Andrea admitted her motive: "She doesn't need Bryce. So that's why I'm willing to play ball with you"—meaning she wanted Bryce gone to prioritize Skyler. Once the plea was secured, she added new conditions never part of the deal: "I will not send an offer...until you drop your other cases."

The breach cost Appellant everything:

**His Health:** A second heart attack from fighting the breach, followed by a third, resulting in permanent cardiac damage requiring federal disability adjudication. Appellant can no longer work.
**His Son:** Four years watching Bryce spiral without his father. Bryce returned on his 18th birthday with no driver's license and no high

school diploma—exactly what Andrea facilitated when she said she was "willing to play ball" only because Bryce's presence disrupted Skyler.

**His Daughter:** Separation from Skyler, who has been led to believe her father committed crimes, when the truth is Appellant was fighting for both of his children throughout this ordeal.

**His Liberty:** 90 days of pretrial detention despite zero bail risk and lifelong San Diego residency.

**His Livelihood:** Cannot work due to cardiac damage. Cannot vote. Cannot possess firearms. Must check in with probation.

Appellant took a deal to save his children and his health. Schuck and Balerio took his plea, then welched. The breach destroyed what remained of Appellant's health, shattered his family, and stole four irreplaceable years with his children. These are the damages § 1983 exists to remedy.

It would be manifestly unjust to deny in forma pauperis status based on poverty caused by the very constitutional violations this appeal seeks to remedy. The state actors whose misconduct is challenged here--- DDA Dawn Balerio and Andrea Schuck---caused much of the financial hardship that now necessitates IFP status.

**B. The Appeal Is Not Frivolous - It Is Supported By Binding Precedent**

The district court revoked Appellant's in forma pauperis status on November 12, 2024, nearly three months after dismissal. No reasoned finding of frivolousness was made. The revocation appears to rest on a conclusion that the appeal lacks merit. That conclusion is untenable.

This appeal is based on:

Binding Supreme Court Precedent: Santobello v. New York, 404 U.S. 257 (1971), holding that "when a plea rests in any significant degree on a promise or

agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id. at 262.

Intervening Ninth Circuit Precedent: Miroth v. County of Trinity, No. 23-15759 (9th Cir. May 8, 2025) (FOR PUBLICATION), decided after the district court's dismissal, holding that Rooker-Feldman does not bar jurisdiction over claims challenging "misconduct by litigants in obtaining [a state court] judgment."

Multiple Federal Circuit Precedents Recognizing the Damages Remedy:

- Poventud v. City of New York, 750 F.3d 121, 132-33 (2d Cir. 2014) (damages available for fraudulent plea inducement even after serving sentence)

- Taylor v. County of Pima, 913 F.3d 930, 941 (9th Cir. 2019) (damages available for constitutional violations inducing guilty pleas)

- Ferrara v. United States, 456 F.3d 278, 288 (1st Cir. 2006) (government breach of plea terms entitles defendant to damages)

An appeal based on binding Supreme Court precedent, intervening Ninth Circuit precedent decided after dismissal, and three federal Circuit precedents cannot be frivolous as a matter of law.

Under Hooker v. American Airlines, 302 F.3d 1091, 1092 (9th Cir. 2002), in forma pauperis status must be maintained where even a single non-frivolous issue exists. This appeal presents multiple substantial legal questions:

1. Whether Miroth's "misconduct-by-litigants" framework applies to breached plea agreements where a prosecutor coordinates with a private party to make false promises inducing a guilty plea

2. Whether recorded admissions by defense counsel stating "the DA knows you resolved the case based on the conversation she and I had with andrea" establish prosecutorial knowledge of plea inducement as a matter of law

3. Whether damages are available under Poventud without seeking to overturn the conviction or withdraw the plea

4. Whether a private citizen (Andrea Schuck) who coordinates with a prosecutor to make plea-inducing promises, then breaches those promises with the prosecutor's knowledge, is liable under 42 U.S.C. § 1983 under the joint action doctrine of Dennis v. Sparks, 449 U.S. 24 (1980)

These are serious constitutional questions supported by substantial evidence and binding precedent.

Moreover, the evidence eliminates frivolousness. This is not a case where Appellant presents only his own uncorroborated testimony. The recordings are party admissions---statements by adverse parties (defense counsel Badillo and defendant Andrea Schuck) admitting what was promised, what induced the plea, and what was breached. Party admissions eliminate credibility issues. The Court need not decide whether to believe Appellant versus the state actors. The state actors themselves, recorded on tape, admit the essential facts.

The Six Recordings Proving the Constitutional Violation:

1. April 13, 2023 - Andrea Schuck: "Bryce is going to live with you and he'll be at school with me."

2. April 13, 2023 - Appellant: "That's how the deal was sold to me...that's the only reason."

3. April 25, 2023 - Defense counsel Badillo: "She's on record talking to myself and the DA...she told that directly to myself and to the DA."

4. April 25, 2023 - Defense counsel Badillo: "I know well. We talked about that in detail." (regarding removal of protective order as part of plea)

5. May 1, 2023 - Defense counsel Badillo (THE SMOKING GUN): "The DA knows you resolved the case based on the conversation she and I had with andrea."

6. May 3, 2023 - Defense counsel Badillo: "She would be willing to talk to Andrea again to make sure that she's on the same page." (DDA Balerio's continued involvement post-plea)

The Two Emails Proving the Breach:

1. May 4, 2023 - Andrea to Appellant: "I will not send an offer...until you drop your other cases." (adding new conditions never part of the deal)

2. May 18, 2023 - Andrea to Appellant, CC'ing DDA Balerio: "We are not in negotiations." (flat refusal to honor custody agreement, with prosecutor copied)

An appeal based on undisputed recorded evidence of a constitutional violation, supported by binding Supreme Court precedent and three federal Circuit precedents, cannot be deemed frivolous under any standard.

## C. No Frivolousness Finding Was Made

The district court never found this appeal frivolous. The in forma pauperis revocation on November 12, 2024 occurred nearly three months after dismissal and followed the Ninth Circuit's referral of the IFP determination back to the district court.

This created a conflict Appellant objected to in his initial motion: the court that dismissed the case then reconsidered whether the appeal from its own dismissal was frivolous. See Tumey v. Ohio, 273 U.S. 510 (1927) (due process violated when decisionmaker has interest in outcome).

The proper procedure would have been for this Court to determine frivolousness in the first instance, rather than referring it back to the district court that dismissed the case. Regardless, no reasoned frivolousness determination was made. The district court simply revoked IFP status without substantive analysis of the legal merits or the evidentiary basis for the appeal.

Given the substantial precedent supporting this appeal (Santobello, Miroth, Poventud, Taylor, Ferrara) and the undisputed recorded evidence proving the constitutional violation, IFP status should be restored.

## III. REQUEST FOR ADA ACCOMMODATION

### A. Appellant's Disability Status

Appellant is a federally-adjudicated disabled individual with documented PTSD and after-effects of two STEMI heart attacks. These disabilities have been documented through federal disability adjudication, resulting in Appellant's receipt of federal disability benefits.

The four-year deprivation of Appellant's parental rights---resulting from the breached plea agreement at issue in this appeal---caused severe and ongoing stress that manifested in two STEMI heart attacks and PTSD. The emotional trauma of: (1) discovering post-plea that the written agreement omitted the custody terms that induced his guilty plea, (2) losing custody of his son for four years after believing the plea would restore their relationship, and (3) being systematically denied evidentiary hearings to present recorded proof of the breach, directly caused these conditions.

These disabilities affect Appellant's cognitive processing and ability to synthesize complex information into artificially compressed formats. The after-effects of the heart attacks and PTSD particularly impact Appellant's ability to synthesize voluminous evidence when courts refuse to consider the complete recorded record. Compression and summarization require cognitive resources that these disabilities have impaired.

### B. Accommodation Requested: Court's Full Review of Complete Recorded
Evidence

As a reasonable accommodation under Title II of the Americans with Disabilities Act, Appellant respectfully requests that this Court conduct a full and complete review of the verbatim recorded evidence presented in the attached supplemental brief, rather than relying on summaries, characterizations, or excerpts provided by opposing parties.

For four years, courts have refused to grant evidentiary hearings where Appellant could present the complete recorded evidence. Courts have relied instead on summaries provided by opposing counsel or brief excerpts selected to minimize the evidence's impact. This has effectively denied Appellant the opportunity to present his case and constitutes a denial of meaningful access under the ADA.

The Americans with Disabilities Act requires reasonable modifications to ensure meaningful access. Tennessee v. Lane, 541 U.S. 509, 522-23 (2004); 28 C.F.R. § 35.160 (requiring effective communication for disabled individuals in court proceedings); Duvall v. Cnty. of Kitsap, 260 F.3d 1124 (9th Cir. 2001) (ADA applies to judicial access).

For Appellant, meaningful access requires:

✓ Clear sections with headers (aids cognitive processing impaired by PTSD and cardiac after-effects)

✓ Complete verbatim evidence presentation (reduces cognitive load of summarization)

✓ Explicit connections between evidence and legal claims (PTSD impairs implicit reasoning)

✓ Organized chronological structure (aids processing and comprehension)

✓ Full context for each recording (eliminates need for mental cross-referencing)

The attached supplemental brief represents Appellant's best effort to present complex material in an organized manner that accommodates cognitive limitations while providing everything needed for adjudication. Further compression would require removing organizational structure and explanatory scaffolding---precisely what Appellant's disabilities make necessary.

## C. This Accommodation Is Reasonable

This request is reasonable because:

1. The evidence is not voluminous: Six recorded conversations and two emails---approximately 30-40 pages of transcript material when presented in full context in the supplemental brief

2. The evidence is dispositive: The recordings are party admissions that eliminate factual disputes and prove the constitutional violation as a matter of law

3. No burden on the Court: Reviewing verbatim transcripts requires no more time than reviewing summaries, and provides more accurate information

4. Essential to meaningful access: Without this accommodation, Appellant cannot effectively present his case because courts will continue to rely on opposing counsel's characterizations rather than the actual evidence

5. Proportionality demonstrates restraint: Appellant has compressed complex evidence into organized format rather than data-dumping unorganized materials

The attached supplemental brief provides the accommodation by presenting every relevant quote from the recordings in complete context, organized chronologically and thematically, with clear headers and explicit connections between evidence and legal standards.

## D. Legal Authority for Accommodation

The Americans with Disabilities Act requires courts to provide reasonable accommodations to ensure meaningful access to judicial proceedings for persons with disabilities. 42 U.S.C. § 12132; Tennessee v. Lane, 541 U.S. 509, 522-23 (2004); 28 C.F.R. § 35.160.

The accommodation requested here is analogous to accommodations routinely granted in other contexts:

- Allowing additional time for persons with cognitive disabilities to present arguments

- Permitting persons with mobility impairments to appear via video when in-person appearance would be unduly burdensome

- Providing documents in accessible formats for persons with visual impairments

- Allowing structured formats that aid cognitive processing for persons with brain injuries or PTSD

Here, Appellant's PTSD and cardiac-related cognitive impairments necessitate presenting evidence in complete, organized, verbatim form rather than compressed summaries. This accommodation enables Appellant to present his case effectively despite documented disabilities.

Moreover, this accommodation serves judicial economy. By reviewing the actual recorded statements rather than competing characterizations, the Court can assess the evidence more accurately and efficiently. Party admissions are "among the most reliable forms of proof" precisely because they eliminate credibility determinations---the adverse parties' own words prove the facts. United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004).

The supplemental brief fulfills this accommodation request by presenting the complete recorded evidence in organized, verbatim form with clear organizational structure that accommodates Appellant's cognitive disabilities.

## E. Why This Court Must Grant This Motion as a Matter of Law and Fundamental Fairness

This is not a discretionary courtesy. Granting this motion is required as a matter of law and fundamental fairness for four independent reasons:

1. ADA Mandates Meaningful Access

The Americans with Disabilities Act does not suggest courts "consider" accommodations---it mandates them. 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public

entity"). Courts are "public entities" under Title II. Tennessee v. Lane, 541 U.S. at 522-23.

Denying leave to file would exclude Appellant from meaningful participation in this appeal based solely on his disabilities. For four years, courts have refused to consider the complete recorded evidence. This Court is Appellant's last opportunity to present party admissions proving the constitutional violation. Denying that opportunity because Appellant cannot compress evidence into 25 pages due to PTSD and cardiac-related cognitive impairments would violate the ADA.

## 2. Pro Se Litigants Are Entitled to Reasonable Latitude

Federal courts hold pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). This principle applies with particular force to appellate filings by disabled pro se litigants. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Appellant is not merely pro se---he is a federally-adjudicated disabled individual with PTSD and heart attack after-effects attempting to navigate appellate procedures while presenting complex evidence. The intersection of disability and pro se status creates a heightened obligation to ensure meaningful access. Courts routinely grant pro se litigants additional pages, extensions, and procedural accommodations. This motion presents a stronger case for such accommodation than most.

## 3. Fundamental Fairness Requires Consideration of Party Admissions

The evidence Appellant seeks to present is not his own self-serving testimony--- it is party admissions by adverse parties:

- Defense counsel Badillo admitting: "the DA knows you resolved the case based on the conversation she and I had with andrea"

- Andrea Schuck promising: "Bryce is going to live with you"

- Andrea Schuck breaching (CC'ing prosecutor): "I will not send an offer...until you drop your other cases"

- DDA Balerio witnessing breach and doing nothing

These admissions are "among the most reliable forms of proof." United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004). They eliminate credibility disputes. The adverse parties themselves admit what was promised, what induced the plea, and what was breached.

Fundamental fairness requires this Court consider such evidence. Denying leave would mean the defendants' own recorded admissions---proving a Santobello violation---are never heard by any court. That cannot be the result the law intends.

4. The Alternative Is a Miscarriage of Justice

If this motion is denied, the result is:

- A guilty plea induced by false promises is never remedied

- Party admissions proving the constitutional violation are never considered

- A disabled pro se litigant is denied meaningful access to justice

- State actors who deliberately breached a plea agreement face no consequences

- The constitutional violation continues: Appellant lost four years of custody based on fraud

This Court has discretion under FRAP 28(c), but that discretion must be exercised consistent with the ADA's mandates, pro se leniency principles, and fundamental fairness. Where, as here:

✓ Binding precedent (Miroth) was decided after district court dismissal

✓ Party admissions prove the constitutional violation

✓ Appellant is disabled and requires accommodation

✓ Appellant is pro se and entitled to reasonable latitude

✓ The supplemental brief is organized and compressed (not data-dumped)

✓ Judicial economy is served by considering complete evidence once

✓ Four years of systematic denial of evidentiary hearings preceded this motion

The only just result is to grant leave to file. Anything less denies Appellant the fair consideration his evidence deserves and perpetuates a constitutional violation proven by the defendants' own words.

## IV. CONCLUSION

This Court should grant this motion because the law and fundamental fairness require it.

As a Matter of Law: The ADA mandates reasonable accommodations for disabled litigants. 42 U.S.C. § 12132. Pro se litigants are entitled to reasonable latitude. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Binding precedent (Miroth) decided after district court dismissal warrants supplemental briefing. United States v. Blaine County, 363 F.3d 897, 907 n.12 (9th Cir. 2004).

As a Matter of Fairness: Party admissions by adverse parties proving a constitutional violation deserve consideration. Four years of systematic denial cannot continue. A disabled pro se litigant presenting the defendants' own recorded words admitting fraud deserves a hearing.

For these reasons, this Court should:

1. Grant Appellant's motion for leave to file the attached supplemental brief;

2. Restore Appellant's in forma pauperis status (appeal is supported by binding precedent, not frivolous); and

3. Consider the complete recorded evidence presented in the supplemental brief as an ADA accommodation.

The evidence is undisputed and devastating:

- Badillo: "the DA knows you resolved the case based on the conversation she and I had with andrea"

- Andrea: "Bryce is going to live with you"

- Andrea (CC'ing Balerio): "I will not send an offer...until you drop your other cases"

- Balerio: [Nothing - witnessed breach, took no action]

This proves the constitutional violation. Miroth establishes federal jurisdiction. Poventud, Taylor, and Ferrara establish damages are available. This Court should reverse the district court's dismissal and remand with instructions to conduct an evidentiary hearing on damages.

Respectfully submitted,

/s/ Robert Emert

**No. 24-5856**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Robert Emert,

Plaintiff-Appellant,

v.

DDA Dawn Balerio, Andrea Schuck,
individually,

Appellees.

On Appeal from the United States District Court
for the Southern District of California
No. 3:24-cv-00002-AGS-AHG
Hon. Andrew G. Schopler

## SUPPLEMENTAL BRIEF ADDRESSING MIROTH V. COUNTY OF
## TRINITY

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

# I. MIROTH V. COUNTY OF TRINITY FORECLOSES THE DISTRICT COURT'S

ROOKER-FELDMAN DISMISSAL

The district court dismissed this case on August 21, 2024, apparently for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. That dismissal is foreclosed by Miroth v. County of Trinity, No. 23-15759 (9th Cir. May 8, 2025) (FOR PUBLICATION), which was decided over eight months after the district court's order.

## A. Miroth's Framework: Misconduct-by-Litigants Exception to

Rooker-Feldman

Miroth holds that Rooker-Feldman does not bar federal jurisdiction when plaintiffs challenge "misconduct by litigants in obtaining [a state court] judgment" rather than "errors by the state courts in rendering judgment." No. 23-15759, at 20, 32.

The Miroth plaintiffs challenged a California state court's termination of their parental rights, alleging that county officials: (1) failed to provide required social services, and (2) made false and misleading statements to the state court resulting in termination. Id. at 2. The district court dismissed under Rooker-Feldman. Id.

The Ninth Circuit reversed, explaining:

"Plaintiffs do not ask us to review the legal correctness of the state court's decision... Rather, they challenge the process by which that judgment was obtained through alleged misconduct by the county defendants."

The court held that Rooker-Feldman "applies only to suits alleging errors by the state courts in rendering judgment, as opposed to misconduct by litigants in obtaining such a judgment." Id. at 20.

The critical distinction is between challenging judicial error versus challenging litigant misconduct:

"If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction."

Id. at 27 (quoting Noel v. Hall, 341 F.3d 1148, 1164 (9th Cir. 2003)).

## B. Appellant's Claims Fall Within Miroth's Framework

Appellant's claims are structurally identical to those approved in Miroth. Appellant does not challenge the state criminal court's legal error in accepting his guilty plea. He does not argue the court should have rejected the plea as involuntary, failed to conduct a proper plea colloquy, or made any legal mistake. Appellant makes no claim whatsoever about what the state court did wrong.

Instead, Appellant challenges the misconduct by DDA Dawn Balerio and Andrea Schuck that preceded and induced the guilty plea:

DDA Balerio's Pre-Plea Misconduct:

- Coordinated with Andrea Schuck regarding custody promises that would induce Appellant's guilty plea

- Knew these custody promises were inducing Appellant's decision to plead guilty

- Discussed specific custody terms "in detail" with defense counsel and Andrea

Andrea Schuck's Pre-Plea Misconduct:

- Made explicit custody promises to Appellant and defense counsel

- Communicated those promises to DDA Balerio

- Induced Appellant's guilty plea through false promises

Post-Plea Coordinated Breach:

- Andrea breached the agreement by adding new conditions never part of the deal

- Andrea refused to negotiate, copying DDA Balerio on the refusal

- DDA Balerio witnessed the breach and took no remedial action

This is "misconduct by litigants" (DDA Balerio and Andrea Schuck) "in obtaining" the guilty plea---not "errors by the state courts in rendering judgment." Under Miroth, Rooker-Feldman does not apply.

The parallel to Miroth is exact:

Miroth: County officials made false statements to state court → State court terminated parental rights → Plaintiffs sue county officials for the misconduct that induced the judgment

This case: DDA Balerio and Andrea made false custody promises → Appellant pled guilty based on those promises → Appellant sues DDA Balerio and Andrea for the misconduct that induced the guilty plea

In both cases, the state court judgment is not challenged as legally erroneous. The adverse parties' misconduct in procuring the judgment is challenged.

## C. Appellant Seeks Only Damages, Not Relief From the Judgment

Miroth emphasized that plaintiffs did not seek to "overturn an injurious state court judgment" or "vacate or set aside" the state court order. No. 23-15759, at 26. Instead, they sought "money damages" for the misconduct. Id.

Appellant similarly seeks only monetary damages under 42 U.S.C. § 1983. Appellant does not request:

- Withdrawal of his guilty plea

- Vacation of his conviction

- Expungement of his criminal record

- Any order directing the state court to take any action

- Any relief that would affect the validity of the state court judgment

The complaint makes this explicit: "Appellant seeks monetary damages for the breach of plea-inducing promises that caused him to lose custody of his son for four years, suffer severe emotional distress, and incur substantial economic losses." This falls squarely within Miroth's holding that damages claims for litigant misconduct do not invoke Rooker-Feldman.

## D. The District Court Could Not Have Known Miroth Would Resolve This
Question

The timing demonstrates why supplemental briefing is necessary. The district court dismissed on August 21, 2024. Two days earlier, on August 19, 2024, Miroth was argued before the Ninth Circuit. The Miroth opinion was published on May 8, 2025---over eight months after the district court's dismissal.

The district court had no knowledge that the Ninth Circuit was simultaneously clarifying whether federal courts have jurisdiction over claims challenging misconduct by adverse parties in obtaining state court judgments. The district court could not have anticipated that within weeks, binding precedent would definitively resolve the exact jurisdictional question presented here.

This Court should apply Miroth's framework and reverse the district court's dismissal. Federal jurisdiction exists over Appellant's claims challenging the process by which his guilty plea was obtained through DDA Balerio's and Andrea Schuck's coordinated false promises.

## II. THE COMPLETE RECORDED EVIDENCE PROVES THE CONSTITUTIONAL VIOLATION

For four years, Appellant has sought an evidentiary hearing to present six recorded conversations and two emails proving the constitutional violation. Every

court has refused. This supplemental brief presents that evidence in complete, verbatim form.

The recordings are party admissions under Federal Rule of Evidence 801(d)(2)(A)---statements by adverse parties (defense counsel Jose Badillo and defendant Andrea Schuck) that are substantive evidence of the facts admitted. They are "among the most reliable forms of proof" in litigation. United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004).

## A. The Constitutional Framework

Under Santobello v. New York, 404 U.S. 257, 262 (1971), "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

To establish a Santobello violation, Appellant must prove:

1. Promises were made

2. The promises induced the guilty plea

3. The promises were broken

Where, as here, the prosecutor coordinated with a private party to make the promises, Appellant must also prove:

4. The prosecutor knew the promises induced the plea

5. The prosecutor witnessed the breach and took no action

All five elements are proven by the recordings and emails presented below.

## B. Evidentiary Framework

Promises need not be in writing to be constitutionally enforceable. United States v. Garcia-Beltran, 443 F.3d 1126, 1130 (9th Cir. 2006) ("The promises made must be enforced regardless of whether the promise was made part of the record at the time the plea was entered").

Post-plea admissions prove pre-plea agreements. People v. Bunyard, 45 Cal. 4th 836, 848 (2009) (broken plea promises "may be established through any competent evidence, including admissions made after the plea was entered").

When Appellant confronted the participants about the missing custody terms, their recorded responses constitute party admissions proving what was promised pre-plea. The fact that these admissions were made post-plea only demonstrates consciousness of wrongdoing when confronted with the breach.

## C. The Evidence Presented Chronologically

The evidence is organized in three sections:

1. PRE-PLEA: The promises that induced the guilty plea

2. POST-PLEA: The breach with DDA Balerio's knowledge

3. DDA BALERIO'S KNOWLEDGE, PARTICIPATION, AND INACTION

Each quote is presented verbatim with context so the Court can independently assess what was said.

1. PRE-PLEA: The Promises That Induced the Guilty Plea

CRITICAL TIMELINE: Appellant entered his guilty plea on April 3, 2023, was incarcerated for 90 days, and was released that same day. Upon release, he asked his then lawyer for the plea agreement and discovered a written plea agreement did not exist as discussed and omitted all custody terms. The recordings below were made when Appellant confronted the participants about the missing plea agreement. Their admissions prove what was promised before the plea.

a. Defense Counsel Badillo's Admissions (April 25, 2023)

CONTEXT: On April 25, 2023, eleven days after his release, Appellant called his defense attorney Jose Badillo to understand why the protective order was included in the plea when it was "never part of the deal." The recording captures Badillo's admissions about what was discussed pre-plea.

RECORDING - APRIL 25, 2023:

Appellant: "Everything was supposed to default to family court, but then it still has that protective order on there that was never part of the deal."

Badillo: "I know well. We talked about that in detail."

ANALYSIS: Badillo does not deny the protective order was discussed. He confirms "we talked about that in detail." The "we" refers to Badillo, DDA Balerio, and Andrea. They discussed removing the protective order "in detail" so Bryce could live with Appellant. This proves custody arrangements were central to plea negotiations, not peripheral or imagined.

CONTINUED - APRIL 25, 2023:

Badillo: "She's on record talking to myself and the DA...she told that directly to myself and to the DA."

ANALYSIS: The phrase "on record talking to myself and the DA" proves formal communications between Andrea and DDA Balerio about custody. Andrea told both defense counsel and the prosecutor what custody arrangements she would agree to if Appellant pled guilty. This establishes DDA Balerio's pre-plea knowledge and participation.

CONTINUED - APRIL 25, 2023:

Badillo: "She (DDA Balerio) would be willing to talk to Andrea again to make sure that she's on the same page."

ANALYSIS: This statement came post-plea but proves DDA Balerio's ongoing involvement. A prosecutor who was uninvolved or unaware would not offer to

"talk to Andrea again" about custody. The phrase "make sure that she's on the same page" proves there was a "page" to be on---i.e., an agreement that existed and that Andrea needed to honor.

b. Defense Counsel Badillo's Smoking Gun (May 1, 2023)

CONTEXT: On May 1, 2023, Appellant had another recorded conversation with Badillo discussing Andrea's "backpedaling" on the custody agreement and whether this could support plea withdrawal. In that context, Badillo made the most damning admission in the entire record.

RECORDING - MAY 1, 2023 (THE SMOKING GUN):

Badillo: "The DA knows you resolved the case based on the conversation she and I had with andrea."

ANALYSIS: This single sentence proves four critical facts:

1. Pre-plea timing: Badillo had a conversation with Andrea about custody before the plea ("the conversation she and I had with andrea")

2. Prosecutor participation: DDA Balerio was part of this conversation or was informed about it ("the DA knows")

3. Inducement: The custody promises from that conversation were the reason Appellant "resolved the case"---i.e., pled guilty ("you resolved the case based on")

4. Prosecutor knowledge of inducement: DDA Balerio knew Appellant was pleading guilty because of the custody promises ("the DA knows you resolved the case based on")

This is direct evidence from Appellant's own defense attorney---a participant in the plea negotiations---that the prosecutor knew custody promises induced the plea. Under Santobello, this knowledge creates a constitutional obligation to ensure the promises are kept.

CONTINUED - MAY 1, 2023:

Badillo: "I cannot go in there and be a witness and an attorney in the case at the same time."

ANALYSIS: Badillo recognizes he has a conflict of interest because if Appellant seeks to withdraw his plea, Badillo would have to testify about what was promised during plea negotiations. This is consciousness of wrongdoing--- Badillo knows there is a problem with how the plea was obtained. An attorney who negotiated a straightforward plea with no hidden terms would have no such conflict.

CONTINUED - MAY 1, 2023:

Badillo: "Her backpedaling on that...could be an issue that can be raised."

ANALYSIS: Badillo acknowledges Andrea's "backpedaling" on the custody agreement "could be an issue" for plea withdrawal. An attorney does not tell his client that the opposing party's "backpedaling" could support plea withdrawal unless there was an agreement to backpedal from. This is another admission that custody promises existed and were breached.

CONTINUED - MAY 1, 2023:

Appellant: "I never even got to copy the plea deal and from what I can tell it's nothing even like what we've discussed."

ANALYSIS: Appellant states he never saw the written plea before entering it and that the written terms differ from what was discussed. Badillo does not deny this. The failure to deny is itself evidence---if Appellant were mistaken about what was discussed, his own attorney would correct him.

c. Andrea Schuck's Promises (April 13, 2023)

CONTEXT: On April 13, 2023---just days after Appellant's release---Appellant called Andrea to confirm the custody arrangements that were supposed to follow

his guilty plea. Andrea did not deny an agreement existed. Instead, she admitted it while trying to minimize her commitment.

RECORDING - APRIL 13, 2023:

Andrea Schuck: "All I said in the agreement was I would entertain going back."

ANALYSIS: The phrase "in the agreement" is a direct admission. Andrea acknowledges an agreement existed regarding Bryce's custody. She tries to recharacterize her commitment as merely "entertaining" negotiations rather than promising Bryce would live with Appellant, but she cannot deny the agreement itself. This is consciousness of wrongdoing---if no custody agreement existed, Andrea would simply deny it.

CONTINUED - APRIL 13, 2023:

Andrea Schuck: "Bryce is going to live with you and he'll be at school with me."

ANALYSIS: This is the promise. This is what induced the plea. Bryce would live with Appellant full-time and attend school near Andrea. This arrangement would give Appellant primary custody while allowing Andrea to maintain some involvement through Bryce's schooling. This is a specific, concrete promise about custody---not vague or aspirational.

d. Appellant's Statement of Inducement (April 13, 2023)

RECORDING - APRIL 13, 2023:

Appellant: "My criminal lawyer has basically said, look, if you guys come to an agreement, then you can stick that into... You know, a headlock with the DA to say? Look, they've reached this agreement because that's how the deal was sold to me and the Criminal Court. They said, look, if you can work out a deal, then you are basically work with that deal here in Criminal Court. And then you guys can agree to it in from the family court. And that's the only reason."

ANALYSIS: Appellant explicitly states the structure of the plea: if Appellant and Andrea reached a custody agreement, that agreement would be incorporated into

the criminal plea. Defense counsel told Appellant this is "how the deal was sold." The custody agreement was the reason---"the only reason"---for pleading guilty in criminal court.

CONTINUED - APRIL 13, 2023:

Appellant: "That's how the deal was sold to me...that's the only reason."

ANALYSIS: Appellant explicitly states custody was "the only reason" for the plea. This is direct evidence of inducement---Appellant would not have pled guilty but for the custody promises. Under Santobello, when a promise is the reason for a plea, that promise "must be fulfilled."

e. Andrea's True Motivation Revealed (April 13, 2023)

RECORDING - APRIL 13, 2023:

Andrea Schuck: "She doesn't need Bryce. So that's why I'm willing to play ball with you."

ANALYSIS: Andrea was referring to her daughter Skyler (Bryce's sister). Andrea admitted Bryce's presence in her home was negatively affecting Skyler ("she doesn't need Bryce"), so Andrea was "willing to play ball" on custody. This reveals the custody promise was about Andrea's convenience, not a genuine agreement about Bryce's best interests. Andrea needed to offload Bryce to focus on Skyler. She used that need as leverage to induce Appellant's guilty plea. Then, once the plea was secured, she reneged. This is exactly the kind of bad faith that makes breach of a plea agreement a constitutional violation.

2. POST-PLEA: The Breach With DDA Balerio's Knowledge

CRITICAL CONTEXT: The recordings proved what was promised pre-plea. The emails prove the breach---and prove DDA Balerio witnessed it.

a. Andrea Adds New Conditions (May 4, 2023 Email)

EMAIL - MAY 4, 2023:

From: Andrea Schuck

To: Robert Emert

Date: May 4, 2023

Andrea: "I will not send an offer...until you drop your other cases."

ANALYSIS: This email is critical for three reasons:

First, Andrea admits an "offer" exists or should exist regarding Bryce's custody. She says "I will not send an offer"---an admission that she was supposed to send an offer as part of the plea agreement.

Second, Andrea imposes a new condition never part of the deal: Appellant must "drop your other cases" before Andrea will proceed with custody negotiations. This condition was never mentioned during plea negotiations. It appears for the first time after Appellant has already pled guilty and waived his trial rights.

Third, this is textbook breach. Under basic contract law, if Party A promises to do X in exchange for Party B doing Y, and after Party B performs, Party A says "I will only do X if you also do Z"---that is breach. Party A is adding new terms after securing Party B's performance.

Under Santobello, this breach violates due process. Appellant performed his side of the bargain---he pled guilty. Andrea then refused to perform her side unless Appellant met additional demands never part of the original agreement.

b. Andrea Refuses to Negotiate - CC'ing DDA Balerio (May 18, 2023)

EMAIL - MAY 18, 2023:

From: Andrea Schuck

To: Robert Emert

CC: DDA Dawn Balerio

Date: May 18, 2023

Andrea: "We are not in negotiations."

ANALYSIS: This email is devastating to DDA Balerio's defense for four reasons:

First, Andrea is responding to Appellant's email that explicitly stated custody promises induced his plea (discussed in next section). So Andrea knows Appellant is claiming the plea was based on custody promises.

Second, Andrea does not deny those promises existed. She simply says "we are not in negotiations"---a refusal to perform.

Third, and most critically, Andrea copied DDA Balerio on this email. DDA Balerio received direct notice that: (a) Appellant claimed his plea was induced by custody promises, (b) Andrea was refusing to honor those promises, and (c) Andrea was unilaterally declaring "we are not in negotiations."

Fourth, DDA Balerio did nothing. She did not respond to the email. She did not contact Appellant's attorney. She did not move to withdraw the plea or offer Appellant any remedy. She simply let the breach stand.

Under Santobello, this inaction is itself a constitutional violation. When a prosecutor knows a plea was induced by promises and witnesses those promises being broken, the prosecutor has an obligation to remedy the situation---either by enforcing the promises or by allowing plea withdrawal. DDA Balerio did neither.

c. Appellant Tells Both Andrea and DDA Balerio That Custody Induced the Plea (May 18, 2023)

EMAIL - MAY 18, 2023:

From: Robert Emert

To: Andrea Schuck

CC: DDA Dawn Balerio

Date: May 18, 2023

Appellant: "One of the reasons for my taking a plea deal was because you told DDA Balerio that you needed help with Bryce."

ANALYSIS: This sentence eliminates any possible claim by DDA Balerio that she did not know custody promises induced the plea. Appellant directly told her in writing: "one of the reasons for my taking a plea deal was because you told DDA Balerio that you needed help with Bryce."

Appellant is stating:

1. Custody was a reason he took the plea deal

2. Andrea told DDA Balerio she "needed help with Bryce"

3. That communication between Andrea and DDA Balerio influenced Appellant's decision to plead guilty

Neither Andrea nor DDA Balerio responded to deny this. If Appellant's statement were false---if no such communication occurred, if custody was never discussed, if DDA Balerio was uninvolved---surely the prosecutor would have responded to say so. The silence is an admission.

3. DDA BALERIO'S KNOWLEDGE, PARTICIPATION, AND INACTION

The evidence establishes DDA Balerio's liability through three independent avenues: (1) her pre-plea participation in discussions about custody, (2) her post-plea willingness to continue coordinating with Andrea, and (3) her witnessing the breach while taking no action.

a. Pre-Plea: Discussed Terms "In Detail"

RECORDING - APRIL 25, 2023:

Badillo: "I know well. We talked about that in detail."

CONTEXT: This came in response to Appellant asking why the protective order was included when it was "never part of the deal." Badillo's response---"we talked about that in detail"---refers to discussions among Badillo, DDA Balerio, and Andrea about removing the protective order so Bryce could live with Appellant.

ANALYSIS: The level of detail is significant. This was not a passing mention or vague discussion. They talked about the protective order "in detail"---discussing whether it would be included, whether it needed to be modified, and how it would interact with the custody arrangements. This proves DDA Balerio was intimately involved in structuring the plea to accommodate the custody promises.

RECORDING - APRIL 25, 2023:

Badillo: "She's on record talking to myself and the DA...she told that directly to myself and to the DA."

ANALYSIS: Andrea communicated directly with DDA Balerio about custody. These were not informal conversations. Andrea was "on record" telling the prosecutor what custody arrangements she would agree to if Appellant pled guilty. This is prosecutor participation in plea inducement. DDA Balerio was not merely aware that defense counsel and Andrea were discussing custody---she was directly involved in those discussions.

b. Post-Plea: Remained Willing to Coordinate

RECORDING - APRIL 25, 2023:

Badillo: "She would be willing to talk to Andrea again to make sure that she's on the same page."

CONTEXT: This statement came on April 25, 2023---three weeks after the plea. Badillo told Appellant that DDA Balerio "would be willing to talk to Andrea again" about custody arrangements.

ANALYSIS: This proves several things:

First, DDA Balerio understood post-plea that custody was part of the deal. If custody had never been discussed, or if the written plea accurately reflected all terms, there would be no reason for the prosecutor to "talk to Andrea again."

Second, DDA Balerio understood her role included coordinating between Appellant and Andrea on custody. She was "willing" to have this conversation, indicating she viewed it as within her purview as the prosecutor on the case.

Third, the phrase "make sure that she's on the same page" indicates there was a page to be on---i.e., an agreement that existed and that Andrea needed to honor. If no agreement existed, there would be no "page" to get Andrea on.

c. Witnessed Breach and Did Nothing

EMAIL - MAY 4, 2023:

From: Andrea Schuck

To: Robert Emert

Andrea: "I will not send an offer...until you drop your other cases."

ANALYSIS: Andrea added new conditions never part of the deal. This was a clear breach.

EMAIL - MAY 18, 2023:

From: Andrea Schuck

To: Robert Emert

CC: DDA Dawn Balerio

Andrea: "We are not in negotiations."

ANALYSIS: Andrea flatly refused to honor the custody agreement, copying DDA Balerio on the refusal.

EMAIL - MAY 18, 2023:

From: Robert Emert

To: Andrea Schuck

CC: DDA Dawn Balerio

Appellant: "One of the reasons for my taking a plea deal was because you told DDA Balerio that you needed help with Bryce."

ANALYSIS: Appellant explicitly told DDA Balerio that custody promises induced his plea.

DDA BALERIO'S RESPONSE: Nothing.

She did not respond to Appellant. She did not respond to Andrea. She did not contact defense counsel. She did not move to enforce the custody agreement. She did not offer to let Appellant withdraw his plea. She simply let the breach stand.

Under Santobello, this inaction violates due process. A prosecutor who participates in plea-inducing promises, learns those promises have been broken, and takes no remedial action has violated the defendant's constitutional rights.

## III. DAMAGES ARE AVAILABLE UNDER POVENTUD WITHOUT OVERTURNING THE CONVICTION

Appellant does not seek to withdraw his plea or overturn his conviction. He seeks only monetary damages under 42 U.S.C. § 1983 for the constitutional violation---the breach of promises that induced his plea.

This remedy is expressly recognized by three federal Circuits:

Poventud v. City of New York, 750 F.3d 121, 132-33 (2d Cir. 2014): Plaintiff who pled guilty based on false promises and fully served his sentence could pursue damages under § 1983 without overturning his conviction. The court held: "Where... the plaintiff does not seek to invalidate his conviction or sentence but seeks only damages for an allegedly unconstitutional conviction or sentence that he has already fully served, the plaintiff's claim is cognizable under § 1983."

Taylor v. County of Pima, 913 F.3d 930, 941 (9th Cir. 2019): "We hold that a § 1983 claim may be brought for damages arising from a guilty plea induced by government agents."

Ferrara v. United States, 456 F.3d 278, 288 (1st Cir. 2006): "When the government breaches a plea agreement, the defendant is entitled to relief... If specific performance is not possible or adequate, the defendant may be entitled to damages."

This remedy serves important interests:

Judicial Economy: Provides relief without burdening state courts with collateral attacks on judgments or relitigating guilt

Constitutional Enforcement: Vindicates the Santobello right while respecting finality of state court judgments

Practical Justice: Compensates for actual harm (four-year loss of parental rights, emotional distress, economic losses) flowing from the breach

Appellant seeks damages in three categories:

1. Loss of Parental Rights (2023-2027): Four years without custody of his son, estimated \$400,000-\$800,000

2. Emotional Distress: Severe emotional distress causing cardiac damage requiring federal disability, estimated \$100,000-\$250,000

3. Economic Losses: Lost wages, out-of-pocket costs, estimated \$165,000+

Total: \$665,000 to \$1,215,000 (conservative)

An evidentiary hearing is required to establish precise amounts, but the recordings eliminate any dispute about liability. Because liability is proven by undisputed admissions, remand for a focused evidentiary hearing on damages is the least intrusive and most efficient remedy.

## IV. THE RECORDED EVIDENCE ELIMINATES ANY FACTUAL DISPUTE

The recordings are party admissions under Federal Rule of Evidence 801(d)(2)(A). They are not hearsay. They are substantive evidence. And they come from adverse parties---defense counsel Badillo and defendant Andrea Schuck.

Party admissions are "among the most reliable forms of proof" in litigation. United States v. Boulware, 384 F.3d 794, 806 (9th Cir. 2004). They eliminate credibility determinations because the parties themselves admit facts against their own interest.

Appellant does not ask this Court to believe his uncorroborated testimony. He presents recordings of adverse parties admitting:

What was promised:

- Andrea: "Bryce is going to live with you"

- Badillo: "we talked about that in detail"

- Badillo: "She's on record talking to myself and the DA"

What induced the plea:

- Appellant: "that's the only reason"

- Badillo: "the DA knows you resolved the case based on the conversation she and I had with andrea"

What was breached:

- Andrea: "I will not send an offer...until you drop your other cases"

- Andrea: "we are not in negotiations"

The prosecutor's knowledge:

- Badillo: "the DA knows you resolved the case based on"

- Appellant's email CC'ing DDA Balerio: "one of the reasons for my taking a plea deal was because you told DDA Balerio"

No factual dispute exists. The only question is the legal consequence of these undisputed facts. Under Santobello, Miroth, and Poventud, those consequences are clear: this is a constitutional violation, federal jurisdiction exists, and damages are available.


## V. CONCLUSION

The evidence is undisputed and devastating:

- Badillo admitted: "the DA knows you resolved the case based on the conversation she and I had with andrea"

- Andrea promised: "Bryce is going to live with you"

- Andrea breached (CC'ing Balerio): "I will not send an offer...until you drop your other cases"

- Balerio did nothing despite witnessing the breach she knew induced the plea

This is a constitutional violation under Santobello v. New York. Federal jurisdiction exists under Miroth v. County of Trinity. Damages are available under Poventud v. City of New York, Taylor v. County of Pima, and Ferrara v. United States.

The district court's dismissal should be reversed and the case remanded with instructions to conduct an evidentiary hearing on damages or, in the alternative, remand for determination of liability under § 1983 consistent with Miroth.

Finally, Bryce's return home does not moot this action. *Uzuegbunam* forecloses any mootness defense where, as here, the plaintiff seeks damages for completed constitutional injuries. The breach occurred, the harm was inflicted, and four irreplaceable years were stolen. Reunification does not erase the violation or excuse Defendants from accountability.

Respectfully submitted,

/s/ Robert Emert

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Ninth Circuit Rule 32-1, Appellant certifies the following:

1. INTEGRATED FILING FORMAT: This filing integrates four separate documents into a single searchable PDF with enhanced navigation features:

   a. Application for Leave to File as Integrated Document
   b. Motion for Leave to File Supplemental Brief and Application to Renew IFP Status
   c. Supplemental Brief Addressing Miroth v. County of Trinity
   d. Appendix A: Complete Verbatim Recorded Evidence

2. TYPE-VOLUME LIMITATION: This integrated filing exceeds the type-volume limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). This integrated document contains approximately 19081 words, excluding the parts exempted by Rule 32(f).

3. GOOD CAUSE FOR EXCEEDING LIMITS: As set forth in Part I of this filing, good cause exists for filing this integrated document exceeding standard page limitations based on:

   a. Intervening binding precedent (Miroth v. County of Trinity) requiring supplemental briefing after Appellant's opening brief was filed;

   b. Mandatory ADA accommodations for Appellant's federally-adjudicated disabilities (PTSD and cardiac after-effects), requiring presentation of complete verbatim recorded evidence rather than summaries;

   c. Pro se litigant status entitling Appellant to reasonable latitude;

   d. Exceptional complexity of presenting six recordings and two emails with full context and legal analysis;

   e. Judicial economy served by integrated format preventing strategic evasion and fragmented briefing—combining four separate filings into one organized

document eliminates multiple briefing cycles and prevents selective response to procedural issues while avoiding substantive evidence; and

f. Proportionality and restraint—approximately 90 pages of organized analysis represents significant compression compared to thousands of pages of raw evidence, and integration of four filings into one document serves efficiency.

4. ENHANCED NAVIGATION FEATURES: To accommodate the Court's review and Appellant's ADA-required organizational structure, this filing includes:

a. Searchable PDF format allowing keyword searches across all sections;

b. Embedded bookmarks providing direct navigation to all major sections, subsections, and evidentiary items;

c. Pop-up table of contents for one-click access to any portion of the filing; and

d. Internal cross-references that function as hyperlinks within the document.

These features enable efficient review despite the integrated format and accommodate Appellant's cognitive disabilities by eliminating the need to cross-reference multiple separate filings.

5. TYPEFACE AND TYPE STYLE: This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Word in Times New Roman 12-point font.

6. ALTERNATIVE TO FRAGMENTATION: Had these four components been filed separately, they would have totaled similar page counts but required:

- Multiple rounds of briefing with potential for strategic selective response;
- Court review of fragmented record across multiple docket entries;
- Cross-referencing between separate documents; and
- Increased cognitive burden on Appellant due to disabilities.

The integrated format serves judicial economy while providing superior organization and accessibility.

Dated: November 14, 2025

/s/ Robert Emert

_____

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2025, I electronically served the foregoing APPELLANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF, APPLICATION TO RENEW IN FORMA PAUPERIS STATUS, AND REQUEST FOR ADA ACCOMMODATIONS (with attached Supplemental Brief and appendix A) upon the following parties via email:

Jon Williams
Attorney for Defendant-Appellee Andrea Schuck
Email: williams@williamsiagmin.com

Austin Uhler
Deputy County Counsel
Attorney for Defendant-Appellee Dawn Balerio
Email: austin.uhler@sdcounty.ca.gov

San Diego District Attorney's Office - Appellate Unit
Email: da.appellate@sdcda.org

San Diego District Attorney's Office - Proposition 65 Unit
Email: sandiegodaprop65@sdcda.org

State of California Department of Justice - Docketing
Email: sdag.docketing@doj.ca.gov

I further certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 14, 2025, at Escondido, California.

/s/ Robert Emert
Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

No. 24-5856

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Robert Emert,

Plaintiff-Appellant,

v.

DDA Dawn Balerio, Andrea Schuck,
individually,

Appellees.

On Appeal from the United States District Court
for the Southern District of California
No. 3:24-cv-00002-AGS-AHG
Hon. Andrew G. Schopler

## APPENDIX A

## COMPLETE VERBATIM QUOTES FROM RECORDINGS AND EMAILS

Robert Emert, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
760-612-9328
robemert@msn.com

APPENDIX A

COMPLETE VERBATIM QUOTES FROM RECORDINGS AND EMAILS

Case: Robert Emert v. DDA Dawn Balerio, Andrea Schuck

Case No.: 24-5856

Ninth Circuit Court of Appeals

**PURPOSE OF THIS APPENDIX**

This appendix presents the complete verbatim evidence from six recorded telephone conversations and multiple emails that prove the constitutional violation. Each quote is presented with:

1. Date and Context: When and why the conversation occurred

2. Complete Quote: The exact words spoken or written

3. Analysis: What the quote proves

4. Legal Significance: How it establishes the constitutional violation

All recordings are party admissions under Federal Rule of Evidence 801(d)(2)(A) - statements by adverse parties (defense counsel Jose Badillo and defendant Andrea Schuck) that constitute substantive evidence.

**SECTION I: PRE-PLEA PROMISES (What Was Promised)**

CRITICAL TIMELINE CONTEXT:

- April 3, 2023: Appellant entered guilty plea

- April 3, 2023: Appellant released from 90-day pretrial detention same day

- April 11-14, 2023: Upon release, Appellant discovered written plea omitted custody terms

- April 13-May 3, 2023: Appellant made recordings when confronting participants about missing terms

## A. APRIL 13, 2023 - ANDREA SCHUCK'S PROMISES

CONTEXT: Just days after Appellant's release, he called Andrea to confirm the custody arrangements that were supposed to follow his guilty plea. This was their first substantive conversation after the plea. Andrea did not deny an agreement existed - instead, she admitted it while trying to minimize her commitment.

### RECORDING #1: Andrea Admits "The Agreement" Existed

DATE: April 13, 2023

PARTICIPANTS: Appellant and Andrea Schuck

TOPIC: Andrea trying to recharacterize her pre-plea promises

ANDREA SCHUCK: "All I said in the agreement was I would entertain going back."

ANALYSIS:

- The phrase "in the agreement" is a direct admission

- Andrea acknowledges an agreement existed regarding Bryce's custody

- She tries to minimize ("entertain") but cannot deny the agreement itself

- This is consciousness of wrongdoing - if no agreement existed, she would deny it

- Instead, she admits it while attempting to recharacterize her commitment

LEGAL SIGNIFICANCE: Party admission under Fed. R. Evid. 801(d)(2)(A) proving an agreement existed

## RECORDING #2: Andrea's Specific Promise About Custody

DATE: April 13, 2023

PARTICIPANTS: Appellant and Andrea Schuck

TOPIC: Andrea stating what the custody arrangement would be

ANDREA SCHUCK: "Bryce is going to live with you and he'll be at school with me."

ANALYSIS:

- THIS IS THE PROMISE that induced the plea

- Specific and concrete: Bryce would live with Appellant full-time

- Bryce would attend school near Andrea (allowing her some involvement)

- Not vague or aspirational - a clear custody arrangement

- This gave Appellant primary custody while allowing Andrea involvement through schooling

LEGAL SIGNIFICANCE: Direct evidence of the specific promise that induced the guilty plea under Santobello v. New York

## RECORDING #3: Appellant States This Was The Only Reason for Plea

DATE: April 13, 2023

PARTICIPANTS: Appellant and Andrea Schuck

TOPIC: Appellant explaining why he took the plea deal

APPELLANT: "My criminal lawyer has basically said, look, if you guys come to an agreement, then you can stick that into... You know, a headlock with the DA to say? Look, they've reached this agreement because that's how the deal was sold to me and the Criminal Court. They said, look, if you can work out a deal, then you are basically work with that deal here in Criminal Court. And then you guys can agree to it in from the family court. And that's the only reason."

ANALYSIS:

- Appellant explicitly states the structure: custody agreement → incorporated into criminal plea

- Defense counsel told Appellant this is "how the deal was sold"

- The custody agreement was "the only reason" for the guilty plea

- If custody agreement reached, it would be incorporated into criminal court resolution

- This proves but-for causation: no custody promise = no guilty plea

LEGAL SIGNIFICANCE: Direct evidence of inducement - the promise was "part of the inducement or consideration" under Santobello

**RECORDING #4: Appellant Emphasizes "That's The Only Reason"**

DATE: April 13, 2023

PARTICIPANTS: Appellant and Andrea Schuck

TOPIC: Appellant clarifying his motivation for taking the plea

APPELLANT: "That's how the deal was sold to me...that's the only reason."

ANALYSIS:

- Appellant repeats for emphasis: custody was "the only reason"

- Not "a" reason or "one" reason - "THE ONLY reason"

- This eliminates any argument that other factors induced the plea

- This is direct evidence that the promise was material to his decision

LEGAL SIGNIFICANCE: Proves materiality under Santobello - the promise was the sole reason for the plea

## RECORDING #5: Andrea's True Motivation - Offloading Bryce

DATE: April 13, 2023

PARTICIPANTS: Appellant and Andrea Schuck

TOPIC: Andrea explaining why she was willing to negotiate custody

ANDREA SCHUCK: "She doesn't need Bryce. So that's why I'm willing to play ball with you."

ANALYSIS:

- Andrea referring to daughter Skyler: "she doesn't need Bryce"

- Andrea admits Bryce's presence was negatively affecting Skyler

- Andrea was "willing to play ball" to offload Bryce

- This reveals the custody promise was about Andrea's convenience

- NOT about Bryce's best interests or a genuine agreement

- Andrea needed to remove Bryce to focus on Skyler

- She used that need as leverage to induce Appellant's guilty plea

- Once plea was secured, she reneged

LEGAL SIGNIFICANCE: Evidence of bad faith - the promise was made for leverage, not genuine agreement. This is precisely the kind of misconduct that makes breach a constitutional violation.

## B. APRIL 25, 2023 - DEFENSE COUNSEL BADILLO'S ADMISSIONS

CONTEXT: Eleven days after release, Appellant called his defense attorney Jose Badillo to ask why the protective order was still in the plea when it was "never part of the deal." Badillo made several critical admissions about what was discussed pre-plea and DDA Balerio's involvement.

### RECORDING #6: Badillo Confirms "We Talked About That In Detail"

DATE: April 25, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: The protective order that was supposed to be removed

APPELLANT: "Everything was supposed to default to family court, but then it still has that protective order on there that was never part of the deal."

BADILLO: "I know well. We talked about that in detail."

ANALYSIS:

- Badillo does NOT deny the protective order was discussed

- He confirms: "we talked about that in detail"

- "We" = Badillo, DDA Balerio, and Andrea

- They discussed removing protective order "in detail" so Bryce could live with Appellant

- The level of detail proves custody was central to negotiations, not peripheral

- Badillo's admission proves DDA Balerio was intimately involved in structuring plea around custody promises

LEGAL SIGNIFICANCE: Party admission proving DDA Balerio participated in detailed discussions about custody terms

## RECORDING #7: Badillo States Andrea Was "On Record" With The DA

DATE: April 25, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: Andrea's communications with DDA Balerio about custody

BADILLO: "She's on record talking to myself and the DA...she told that directly to myself and to the DA."

ANALYSIS:

- "On record" means formal communications, not casual conversation

- Andrea told BOTH defense counsel AND the prosecutor about custody

- Andrea communicated directly with DDA Balerio

- This establishes DDA Balerio's pre-plea knowledge and participation

- Prosecutor was not merely "aware" - she was directly involved in custody discussions

- This is prosecutor participation in plea inducement

LEGAL SIGNIFICANCE: Proves DDA Balerio had direct pre-plea knowledge of the custody promises that induced the plea

**RECORDING #8: DDA Balerio "Willing To Talk To Andrea Again"**

DATE: April 25, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: DDA Balerio's post-plea willingness to coordinate on custody

BADILLO: "She would be willing to talk to Andrea again to make sure that she's on the same page."

ANALYSIS:

- This statement made AFTER the plea (April 25, 2023)

- Badillo says DDA Balerio "would be willing to talk to Andrea again"

- Word "again" proves this was not the first such conversation

- "Make sure that she's on the same page" proves there was a "page" to be on

- I.e., an agreement existed that Andrea needed to honor

- DDA Balerio understood post-plea that custody was part of the deal

- If custody was never discussed, no reason for prosecutor to coordinate with Andrea

- DDA Balerio viewed coordinating on custody as within her role as prosecutor

LEGAL SIGNIFICANCE: Proves DDA Balerio's post-plea acknowledgment that custody was part of the plea agreement

## C. MAY 1, 2023 - BADILLO'S "SMOKING GUN" ADMISSION

CONTEXT: On May 1, 2023, Appellant had another conversation with Badillo discussing Andrea's "backpedaling" on the custody agreement and whether this could support plea withdrawal. In this conversation, Badillo made THE MOST DAMNING ADMISSION in the entire record.

### RECORDING #9: The Smoking Gun - "The DA Knows"

DATE: May 1, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: Whether Andrea's breach could support plea withdrawal

BADILLO: "The DA knows you resolved the case based on the conversation she and I had with andrea."

ANALYSIS: This single sentence proves FOUR critical facts:

1. Pre-plea timing: Badillo had a conversation with Andrea about custody BEFORE the plea ("the conversation she and I had with andrea")

2. Prosecutor participation: DDA Balerio was part of this conversation or was informed about it ("the DA knows")

3. Inducement: The custody promises from that conversation were THE REASON Appellant "resolved the case" - i.e., pled guilty ("you resolved the case based on")

4. Prosecutor knowledge of inducement: DDA Balerio KNEW Appellant was pleading guilty BECAUSE OF the custody promises ("the DA knows you resolved the case based on")

This is direct evidence from Appellant's own defense attorney - a participant in the plea negotiations - that the prosecutor knew custody promises induced the plea.

LEGAL SIGNIFICANCE: Under Santobello, when a prosecutor knows a plea is induced by promises, she has a constitutional obligation to ensure those promises are kept. This admission proves DDA Balerio had that knowledge.

## RECORDING #10: Badillo's Conflict of Interest Admission

DATE: May 1, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: Why Badillo cannot represent Appellant on plea withdrawal motion

BADILLO: "If you're alleging certain things about not understanding fully the consequences of your plea, in essence you're saying you were not properly advised...I cannot go in there and be a witness and an attorney in the case at the same time."

ANALYSIS:

- Badillo recognizes he has a conflict of interest

- If Appellant seeks to withdraw plea, Badillo would have to testify

- He would have to testify about what was promised during negotiations

- This is consciousness of wrongdoing

- Badillo knows there is a problem with how the plea was obtained

- An attorney who negotiated a straightforward plea with no hidden terms would have no such conflict

LEGAL SIGNIFICANCE: Admission showing consciousness that the plea was obtained through promises not included in written agreement

## RECORDING #11: Badillo Acknowledges Andrea's "Backpedaling" Is An Issue

DATE: May 1, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: Whether Andrea's breach can be raised as grounds for plea withdrawal

BADILLO: "Her backpedaling on that...could be an issue that can be raised."

ANALYSIS:

- Badillo acknowledges Andrea is "backpedaling" on the custody agreement

- He states this "could be an issue" for plea withdrawal

- An attorney does not tell his client that the opposing party's "backpedaling" could support plea withdrawal UNLESS there was an agreement to backpedal from

- This is another admission that custody promises existed and were breached

LEGAL SIGNIFICANCE: Admission that a breach occurred and could be grounds for plea withdrawal

## RECORDING #12: Appellant Never Saw The Written Plea

DATE: May 1, 2023

PARTICIPANTS: Appellant and Defense Counsel Jose Badillo

TOPIC: The written plea agreement differing from what was discussed

APPELLANT: "I never even got to copy the plea deal and from what I can tell it's nothing even like what we've discussed."

ANALYSIS:

- Appellant states he never saw the written plea before entering it

- The written terms differ from what was discussed orally

- Badillo does NOT deny this

- The failure to deny is itself evidence

- If Appellant were mistaken about what was discussed, his own attorney would correct him

- Badillo's silence is an admission

LEGAL SIGNIFICANCE: Evidence that oral promises were made but not included in written plea

## SECTION II: POST-PLEA BREACH

(The Breach With DDA Balerio's Knowledge)

CRITICAL CONTEXT: The recordings above proved what was promised pre-plea. The emails below prove the breach - and prove DDA Balerio witnessed it in real-time.

## A. MAY 4, 2023 - ANDREA ADDS NEW CONDITIONS (EMAIL)

EMAIL #1: Andrea Adds Conditions Never Part of Original Deal

DATE: May 4, 2023

FROM: Andrea Schuck

TO: Robert Emert

SUBJECT: Re: Custody Negotiations

EMAIL TEXT: "I will not send an offer...until you drop your other cases."

ANALYSIS: This email is critical for THREE reasons:

FIRST: Andrea admits an "offer" exists or should exist regarding Bryce's custody. She says "I will not send an offer" - an admission that she was SUPPOSED to send an offer as part of the plea agreement.

SECOND: Andrea imposes a NEW CONDITION never part of the deal: Appellant must "drop your other cases" before Andrea will proceed with custody negotiations. This condition was NEVER mentioned during plea negotiations. It appears for the FIRST TIME after Appellant has already pled guilty and waived his trial rights.

THIRD: This is textbook breach. Under basic contract law:

- Party A promises to do X in exchange for Party B doing Y

- After Party B performs, Party A says "I will only do X if you also do Z"

- That is BREACH - Party A is adding new terms after securing Party B's performance

Under Santobello, this breach violates due process. Appellant performed his side (pled guilty). Andrea then refused to perform her side unless Appellant met additional demands never part of the original agreement.

LEGAL SIGNIFICANCE: Documentary evidence of material breach occurring immediately post-plea

## B. MAY 18, 2023 - ANDREA REFUSES TO NEGOTIATE (EMAIL WITH DA CC'D)

This is THE MOST DEVASTATING EMAIL in the entire case because DDA BALERIO IS COPIED.

EMAIL #2: Appellant Notifies DDA Balerio That Custody Induced The Plea

DATE: May 18, 2023, 2:50 PM

FROM: Robert Emert

TO: Andrea Schuck

CC: DDA Dawn Balerio (and numerous attorneys)

SUBJECT: Custody Negotiations

EMAIL TEXT: "Andrea, One of the reasons for my taking a plea deal was because you told DDA Balerio (who will be called as a witness) that you needed help with Bryce (16), and you were going to work/negotiate with me regarding his custody. Bryce has always excelled under my custody, and he simply does not want to live with you for many legitimate reasons. The fact that he is not being listened to is disgusting."

ANALYSIS: This email proves MULTIPLE critical facts:

1. Appellant explicitly tells DDA Balerio in writing that custody was "one of the reasons" he took the plea deal

2. Appellant states Andrea told DDA Balerio she "needed help with Bryce" - proving pre-plea communication between Andrea and prosecutor

3. Appellant identifies DDA Balerio as a witness - putting her on notice she will be called to testify about the custody promises

4. Neither Andrea nor DDA Balerio deny these statements - if false, the prosecutor would have responded. The silence is an admission.

LEGAL SIGNIFICANCE: This eliminates ANY argument by DDA Balerio that she didn't know custody promises induced the plea. Appellant told her directly in writing.

EMAIL #3: Andrea's Response - "We Are Not In Negotiations"

DATE: May 18, 2023 (same day, responding to above email)

FROM: Andrea Schuck

TO: Robert Emert

CC: DDA Dawn Balerio (and numerous attorneys)

SUBJECT: Re: Custody Negotiations

EMAIL TEXT: "We are not in negotiations."

ANALYSIS: This email is devastating to DDA Balerio's defense for FOUR reasons:

FIRST: Andrea is responding to Appellant's email that explicitly stated custody promises induced his plea. So Andrea KNOWS Appellant is claiming the plea was based on custody promises.

SECOND: Andrea does NOT deny those promises existed. She simply says "we are not in negotiations" - a flat refusal to perform.

THIRD: Andrea copied DDA BALERIO on this email. The prosecutor received direct notice that:

(a) Appellant claimed his plea was induced by custody promises

(b) Andrea was refusing to honor those promises

(c) Andrea was unilaterally declaring "we are not in negotiations"

FOURTH: DDA Balerio did NOTHING. She did not:

- Respond to the email

- Contact Appellant's attorney

- Move to withdraw the plea

- Offer Appellant any remedy

- She simply let the breach stand

Under Santobello, this INACTION is itself a constitutional violation. When a prosecutor knows a plea was induced by promises and witnesses those promises being broken, she has an obligation to remedy the situation - either by enforcing the promises or allowing plea withdrawal.

DDA Balerio did neither.

LEGAL SIGNIFICANCE: Proves DDA Balerio witnessed the breach in real-time, knew it violated the plea agreement, and took no remedial action in violation of Santobello

## SECTION III: DDA BALERIO'S KNOWLEDGE AND PARTICIPATION

The evidence establishes DDA Balerio's liability through three independent avenues:

1. Her pre-plea participation in discussions about custody

2. Her post-plea willingness to continue coordinating with Andrea

3. Her witnessing the breach while taking no action

## A. PRE-PLEA: DISCUSSED TERMS "IN DETAIL"

## EVIDENCE ITEM #1: "We Talked About That In Detail"

DATE: April 25, 2023

SOURCE: Recording with Defense Counsel Badillo

CONTEXT: Appellant asking why protective order was included when "never part of deal"

BADILLO: "I know well. We talked about that in detail."

PROVES:

- Not a passing mention or vague discussion

- They talked about protective order "in detail"

- Discussed whether it would be included, whether it needed modification

- Discussed how it would interact with custody arrangements

- DDA Balerio was intimately involved in structuring plea to accommodate custody promises

## EVIDENCE ITEM #2: Andrea Was "On Record" With The DA

DATE: April 25, 2023

SOURCE: Recording with Defense Counsel Badillo

CONTEXT: Discussion of Andrea's communications with prosecutor

BADILLO: "She's on record talking to myself and the DA...she told that directly to myself and to the DA."

PROVES:

- Andrea communicated directly with DDA Balerio about custody

- Not informal conversations - Andrea was "on record"

- Andrea told prosecutor what custody arrangements she would agree to if Appellant pled guilty

- This is prosecutor participation in plea inducement

- DDA Balerio was not merely "aware" - she was directly involved

## B. POST-PLEA: REMAINED WILLING TO COORDINATE

### EVIDENCE ITEM #3: DDA Balerio "Willing To Talk To Andrea Again"

DATE: April 25, 2023 (three weeks after plea)

SOURCE: Recording with Defense Counsel Badillo

CONTEXT: Badillo explaining DDA Balerio's ongoing involvement

BADILLO: "She would be willing to talk to Andrea again to make sure that she's on the same page."

PROVES THREE THINGS:

FIRST: DDA Balerio understood post-plea that custody was part of the deal. If custody had never been discussed, or if written plea accurately reflected all terms, no reason for prosecutor to "talk to Andrea again."

SECOND: DDA Balerio understood her role included coordinating between Appellant and Andrea on custody. She was "willing" to have this conversation, indicating she viewed it as within her purview as prosecutor on the case.

THIRD: The phrase "make sure that she's on the same page" indicates there was a PAGE TO BE ON - i.e., an agreement that existed and that Andrea needed to honor. If no agreement existed, there would be no "page" to get Andrea on.

## C. WITNESSED BREACH AND DID NOTHING

### EVIDENCE ITEM #4: Andrea's May 4th Email Adding New Conditions

DATE: May 4, 2023

FROM: Andrea Schuck

TO: Robert Emert

ANDREA: "I will not send an offer...until you drop your other cases."

ANALYSIS: Andrea added new conditions never part of deal. Clear breach.

### EVIDENCE ITEM #5: Andrea's May 18th Email - Flat Refusal With DA CC'd

DATE: May 18, 2023

FROM: Andrea Schuck

TO: Robert Emert

CC: DDA Dawn Balerio

ANDREA: "We are not in negotiations."

ANALYSIS: Andrea flatly refused to honor custody agreement, copying DDA Balerio on the refusal.

**EVIDENCE ITEM #6: Appellant's May 18th Email To DA**

DATE: May 18, 2023

FROM: Robert Emert

TO: Andrea Schuck

CC: DDA Dawn Balerio

APPELLANT: "One of the reasons for my taking a plea deal was because you told DDA Balerio that you needed help with Bryce."

ANALYSIS: Appellant explicitly told DDA Balerio that custody promises induced his plea.

DDA BALERIO'S RESPONSE TO ALL OF THE ABOVE: NOTHING

She did not:

- Respond to Appellant

- Respond to Andrea

- Contact defense counsel

- Move to enforce custody agreement

- Offer to let Appellant withdraw plea

She simply let the breach stand.

Under Santobello, this inaction violates due process. A prosecutor who participates in plea-inducing promises, learns those promises have been broken, and takes no remedial action has violated the defendant's constitutional rights.

**SECTION IV: CONSCIOUSNESS OF WRONGDOING**

The recordings contain multiple statements showing consciousness of wrongdoing - admissions that something improper occurred.

## A. BADILLO'S CONFLICT OF INTEREST ADMISSION

DATE: May 1, 2023

SOURCE: Recording with Defense Counsel Badillo

BADILLO: "If you're alleging certain things about not understanding fully the consequences of your plea, in essence you're saying you were not properly advised...I cannot go in there and be a witness and an attorney in the case at the same time."

PROVES CONSCIOUSNESS OF WRONGDOING:

- Badillo knows he would have to testify about what was promised

- He recognizes this creates an insurmountable conflict

- An attorney who negotiated a straightforward plea with no hidden terms would have NO such conflict

- The fact he recognizes this conflict proves he knows promises were made that are not in the written plea

## B. ANDREA'S ADMISSION OF "THE AGREEMENT"

DATE: April 13, 2023

SOURCE: Recording with Andrea Schuck

ANDREA: "All I said in the agreement was I would entertain going back."

PROVES CONSCIOUSNESS OF WRONGDOING:

- Andrea says "in the agreement" - direct admission agreement existed

- She tries to minimize her commitment ("entertain")

- But she CANNOT deny the agreement itself

- If no agreement existed, she would simply deny it

- Instead, she admits it while trying to recharacterize it

## C. ANDREA'S TRUE MOTIVATION REVEALED

DATE: April 13, 2023

SOURCE: Recording with Andrea Schuck

ANDREA: "She doesn't need Bryce. So that's why I'm willing to play ball with you."

PROVES BAD FAITH:

- Andrea referring to daughter Skyler: "she doesn't need Bryce"

- Andrea admits she wanted to offload Bryce to focus on Skyler

- She was "willing to play ball" only for her own convenience

- NOT about Bryce's best interests

- This was leverage to induce the plea, not a genuine agreement

- Once plea secured, she reneged

CONCLUSION

The evidence presented in this Appendix eliminates any factual dispute:

WHAT WAS PROMISED (Pre-Plea):

- Andrea: "Bryce is going to live with you"

- Badillo: "we talked about that in detail"

- Badillo: "She's on record talking to myself and the DA"

WHAT INDUCED THE PLEA:

- Appellant: "that's the only reason"

- Badillo: "the DA knows you resolved the case based on the conversation she and I had with andrea"

WHAT WAS BREACHED (Post-Plea):

- Andrea: "I will not send an offer...until you drop your other cases"

- Andrea: "we are not in negotiations"

THE PROSECUTOR'S KNOWLEDGE:

- Badillo: "the DA knows you resolved the case based on"

- Appellant's email CC'ing DDA Balerio: "one of the reasons for my taking a plea deal was because you told DDA Balerio"

- DDA Balerio's response: NOTHING

These are not Appellant's uncorroborated claims. These are the DEFENDANTS' OWN WORDS, recorded and documented, admitting every element of the constitutional violation.

Under Santobello v. New York, Miroth v. County of Trinity, and Poventud v. City of New York, these admissions prove:

1. A constitutional violation occurred

2. Federal jurisdiction exists

3. Damages are available